**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO: _____**

**IN RE:**

**APPLICATION OF
ORO NEGRO PRIMUS PTE. LTD.,
ORO NEGRO LAURUS PTE. LTD.,
ORO NEGRO FORTIUS PTE. LTD.,
ORO NEGRO DECUS PTE. LTD.,
ORO NEGRO IMPETUS PTE. LTD., and
ORO NEGRO DRILLING PTE. LTD.
FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782**

**Petitioners.**

_____/

### *EX PARTE* APPLICATION FOR AN ORDER
### TO TAKE DISCOVERY PURSUANT TO  28 U.S.C. § 1782

This is an *ex parte* application pursuant to Title 28, United States Code, Section 1782 to

obtain testimony and the production of documents from individuals and companies located in the

Southern District of Florida in aid of three criminal proceedings and one bankruptcy proceeding

pending in Mexico.  The Petitioners are six Singaporean companies named Oro Negro Primus Pte.

Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd., and

Oro Negro Impetus Pte. Ltd., (collectively, the "Rig Owners"), and their parent corporation Oro

Negro Drilling Pte. Ltd. (together the "Petitioners").

Petitioners are seeking discovery from the following six Respondents located in the

Southern District of Florida: (1) Gonzalo Gil White ("Gil White"), (2) Jose Antonio Cañedo White

("Cañedo White"), (3) Carlos Enrique Williamson Nasi ("Williamson Nasi"),[1] (4) Miguel Angel

Villegas Vargas ("Villegas Vargas"), (5) Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn

---

[1] Williamson Nasi passed away on January 2, 2022.  The subpoena is directed to Maria Clara Lloreda, as Personal Representative of the Estate of Williamson Nasi, who may have relevant documents and communications.

Emanuel"), and (6) Axis Capital Management, Inc. ("Axis Capital").  In support of this application, Petitioners have attached the sworn declarations of: (1) Daniel Alejandro Díaz Alvarez, counsel for the Petitioners in the Mexican bankruptcy proceeding,[2] and (2) José Luis Bribiesca Rocha, counsel for the Petitioners in pursuing this discovery for the Mexican criminal proceedings.[3]

## INTRODUCTION

The purpose of this application is to gather evidence relating to the improper diversion of at least USD $27 million that Petitioners contend should have remained in the Petitioners' accounts or in the bankruptcy estate in Mexico for the benefit of the creditors like the Petitioners.[4]  The Mexican bankruptcy and criminal proceedings arise out of a failed business venture started by Gil White, Cañedo White, Williamson Nasi, and Villegas Vargas (collectively the "Individual Respondents"), among others, to operate five oil drilling rigs for Pemex, the Mexican state-owned oil company.[5]  Each of the five rigs was owned by one of the five Rig Owners.[6]  The purchase of the oil rigs was financed by $900 million in bonds that were acquired by international investors ("Bondholders"), and the Bondholders in turn received a security interest in the shares of the Rig Owners and Oro Negro Drilling, which in turn owned the oil rigs.[7]

The Individual Respondents were responsible for placing the entire business in bankruptcy in Mexico in September 2017, and the Bondholders immediately executed on their security interest in the shares of the Rig Owners and Oro Negro Drilling by removing and replacing Respondent Gil White and his associates as directors of the Rig Owners and Oro Negro Drilling on September 25, 2017.[8]  Respondent Gil White aggressively fought the seizure by the Bondholders in courts in

---

[2] Declaration of Daniel Alejandro Díaz Alvarez ("Díaz Decl.") at Exhibit A.
[3] Declaration of José Luis Bribiesca Rocha ("Bribiesca Decl.") at Exhibit B.
[4] Ex. B (Bribiesca Decl. ¶ 74).
[5] Ex. A (Díaz Decl. ¶¶ 20 – 21, 23 – 27); Ex. B (Bribiesca Decl. ¶¶ 15, 20, 22 – 26).
[6] Ex. A (Díaz Decl. ¶ 24); Ex. B (Bribiesca Decl. ¶ 23).
[7] Ex. A (Díaz Decl. ¶¶ 31, 33); Ex. B (Bribiesca Decl. ¶¶ 30, 32).
[8] Ex. A (Díaz Decl. ¶¶ 39 – 41); Ex. B (Bribiesca Decl. ¶¶ 38 – 41).

Mexico,[9] the United States,[10] and Singapore.[11]  As a result, this process took years to make it through the courts, until a final ruling issued in January 2024 in Singapore confirmed that the replacement of Respondent Gil White and his associates on September 25, 2017 by the Bondholders was valid and legal, and Gil White and his associates did not subsequently have any authority to act on behalf of the Petitioners.[12]  That decision from Singapore is presently being domesticated in Mexico.[13]

In the interim, Petitioners have identified at least **USD $19,269,000.00** that was improperly transferred out of Petitioner Oro Negro Drilling's bank account at Scotiabank Inverlat de México S.A. by Respondent Gil White on October 6, 2017—after he had been replaced as a director and representative—to an account at the same bank in the name of an affiliate company, Perforadora Oro Negro S. de R.L. de C.V. ("Perforadora").[14]  At least **USD $8,488,666.73** of that amount was subsequently transferred from Perforadora to Respondent Quinn Emanuel in three separate transfers:

(1) April 19, 2018 for **USD $1,000,000.00**;

(2) May 3, 2018 for **USD $1,488,648.73**; and

(3) June 25, 2018 for **USD $6,000,018.00**.[15]

These funds were evidently used by Quinn Emanuel to fund years of litigation attacking the Bondholders to benefit Gil White and to fund a separate NAFTA arbitration against Mexico, not to benefit the Rig Owners or Oro Negro Drilling.  In fact, the most recent lawsuit brought by Quinn Emanuel against the Bondholders in Miami-Dade County was voluntarily dismissed by

---

[9] Ex. A (Díaz Decl. ¶¶ 13, 42, 45 – 58); Ex. B (Bribiesca Decl. ¶¶ 38 – 43).
[10] *See infra* Factual Background, Section IV.
[11] Ex. A (Díaz Decl. ¶¶ 42, 63 – 66); *see also* Exhibit H (Singapore Court Judgments).
[12] *See* Ex. H (Singapore Court Judgments); Ex. A (Díaz Decl. ¶¶ 63 – 65).
[13] Ex. A (Díaz Decl. ¶ 66).
[14] Ex. B (Bribiesca Decl. ¶ 74).
[15] *Id*.

Quinn Emanuel following the firm's disqualification by Judge Thomas Rebull because Quinn Emanuel sued one of its own present clients.[16]  In effect, Quinn Emanuel has been using millions of dollars of the Bondholders' own funds to sue them.

Exacerbating its conflicts of interest, Quinn Emanuel purported to act as counsel to the Rig Owners and Oro Negro Drilling and opened a bankruptcy adversary proceeding on their behalf in 2021 in the Southern District of New York.[17] In that case, Quinn Emanuel sued the Bondholders on behalf of the Rig Owners for removing Gil White as a director and seizing the rigs after Gil White defaulted on the bond agreements by putting the companies into bankruptcy.[18] Once again, Quinn Emanuel eventually voluntarily dismissed the case.

In addition, Petitioners are also seeking evidence relating to the diversion of over **USD $8 million** by Respondent Gil White that was supposed to be used to pay value added tax in Mexico but was instead transferred to a bank account in the United States controlled by Gil White.[19]  In fact, Alonso Del Val Echeverria ("Del Val Echeverria"), one of Gil White's co-conspirators and the former Chief Legal Officer of Integradora from 2013 until the end of March 2019, became a cooperating witness for the prosecution in Mexico and he testified that Gil White diverted the funds, stating:

> **I am aware that PERFORADORA Oro Negro S. de R.L. de C.V., from the bankruptcy file 345/2017 in the index of the Second District Court of Civil Matters in Mexico City, in November last year [2018], requested an amount close to 250 million pesos from the trust accounts to pay Value Added Tax due.  However, on instructions from GONZALO GIL WHITE, these resources were not used to be paid to the federal treasury but were used for other purposes." [20]**

---

[16] *See* Composite Exhibit C.
[17] *See* Exhibit D (Rig Owner's Adversary Complaint).
[18] *Id.*
[19] Ex. A (Díaz Decl. ¶¶ 13, 59 – 62, 67); Ex. B (Bribiesca Decl. ¶¶ 63 – 67, 81).
[20] Bribiesca Decl., at Exhibit 3, pg. 108-109 (Alonso del Val Declaration).

Del Val Echeverria explained that the funds were transferred **"[t]o an account of PERFORADORA Oro Negro S. de R.L. de C.V., in the United States of America, apparently of the US BANK."** [21]

Finally, Respondent Axis Capital Management, Inc. ("Axis Capital") is a Florida corporation located in Miami-Dade County.[22]  Respondents Gil White and Cañedo White are its directors and officers.[23]  Axis Capital was potentially involved in investing and managing funds that were invested in the Oro Negro Group and may be in possession of relevant documents, communications, and bank statements.[24]

In addition to being at issue in the bankruptcy proceeding, the misappropriation of at least USD $27 million is presently under criminal investigation in Mexico,[25] and the Mexican courts issued arrest warrants for the Individual Respondents and others involved.[26]  Following the issuance of the arrest warrants, the Individual Respondents all fled to the United States to place themselves outside of the jurisdiction of the courts, and they are presently living in Miami-Dade County.[27]  As a result, Petitioners, as bankruptcy creditors and crime victims, respectfully request that the Court grant the discovery requested and permit the Petitioners to obtain the evidence for the proceedings pending in Mexico.  As described in detail below, the Petitioners respectfully submit they meet the standard for the Court to allow the subpoenas attached as Exhibit F to be served on the Respondents.

---

[21] *Id.* at 109.
[22] *See* Exhibit E, Axis Capital Annual Report.
[23] *Id.*
[24] Ex. A (Díaz Decl. ¶ 21); Ex. B (Bribiesca Decl. ¶ 20).
[25] Ex. B (Bribiesca Decl. ¶ 74).
[26] *Id.* ¶¶ 13, 44 – 45, 52 – 54, 61, 67 – 71, 75 – 76, 80.
[27] *Id.* ¶¶ 14, 54.

## SUMMARY OF THE LEGAL BASIS FOR THE PETITION

Title 28, United States Code, Section 1782 authorizes U.S. district courts to order discovery from persons and companies found within the judicial district for use in foreign litigation.[28]   First, as complainants in the three ongoing Mexican criminal proceedings and creditors in the Mexican bankruptcy proceeding, the Petitioners are "interested persons."  Second, Petitioners seek both testimonial and documentary evidence concerning the Individual Respondents' alleged misappropriation of over $27 million of funds, including potential fraud on the bankruptcy court and the estate, topics highly relevant to those proceedings.[29]   Third, Petitioners seek the requested discovery "for use in" the ongoing Mexican criminal proceedings and the Mexican bankruptcy proceeding.  Fourth, Petitioners seek discovery from the Respondents, who all reside and may be found in Miami-Dade County within the Southern District of Florida.[30]

In addition, the four discretionary factors outlined in the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004) weigh in favor of granting Petitioners' discovery requests.[31]   First, the Respondents fall into two categories: non-parties to the Mexican proceedings or parties who have refused to appear and participate in the Mexican proceedings because they have placed themselves beyond the jurisdictional reach of the

---

[28] Section 1782's four statutory requirements are that:  "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or  be found in the district of the district court ruling on the application for assistance."  *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (interpreting 28 U.S.C. § 1782).

[29] Ex. A (Díaz Decl. ¶¶ 6, 62, 67); Ex. B (Bribiesca Decl. ¶¶ 62, 74, 77).

[30] Ex. B (Bribiesca Decl. ¶ 14); *see also* Ex. E (Axis Capital Annual Report); Exhibit G (Quinn Emanuel Annual Report).

[31] The four discretionary factors are:  "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency  abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'"  *In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

Mexican courts.[32]  Second, the Mexican prosecutors and courts involved in these proceedings are receptive to accepting evidence obtained from the United States using this procedure.[33]  Third, Petitioners' application is not an attempt to circumvent the Mexican courts' proof-gathering requirements.   Finally, Petitioners' requests are tailored to only seek discovery that is relevant to the three Mexican criminal proceedings and the Mexican bankruptcy proceeding.[34]

In addition, since Quinn Emanuel purported to act as counsel for the Rig Owners and Oro Negro Drilling in separate litigation, *see* Exhibit D, and evidently received $8 million that was improperly taken from Petitioner Oro Negro Drilling, the law firm has a separate duty to provide the documents requested by its former client to its former client's new counsel.  *See* R. Regulating Fla. Bar 4-1.16 (d); *see also Fla. Bar v. Wells*, 602 So. 2d 1236, 1238 (Fla. 1992) (finding counsel guilty of violating the Florida Rules of Professional Ethics by not returning her file after terminating him as her counsel).   For these reasons, Petitioners respectfully request that their application for discovery pursuant to Section 1782 be granted.

## FACTUAL BACKGROUND

## I.      BACKGROUND ON THE PETITIONERS AND RESPONDENTS.

All four proceedings arise out of the same core set of facts.  In 2012, Gil White, Cañedo White, and Williamson Nasi formed "Oro Negro," a group of companies located in Mexico, the United States, and Singapore, with the purpose of providing services relating to the oil drilling industry in Mexico.[35]   The group "Oro Negro" was under the control and/or direction of Integradora de Servicios Petroleros Oro Negro S.A.P.I. de C.V. ("Integradora"), the ultimate parent company.[36]  Gil White was a shareholder, member of the Board of Directors, and Chief Executive

---

[32] Ex. B (Bribiesca Decl. ¶ 14).
[33] Ex. A (Díaz Decl. ¶¶ 7, 15 – 19); Ex. B (Bribiesca Decl. ¶¶ 7 – 9).
[34] Ex. A (Díaz Decl. ¶ 67); Ex. B (Bribiesca Decl. ¶ 81); *see also* Ex. F (Subpoenas).
[35] Ex. A (Díaz Decl. ¶ 20); Ex. B (Bribiesca Decl. ¶ 15).
[36] Ex. A (Díaz Decl. ¶ 21); Ex. B (Bribiesca Decl. ¶ 20).

Officer of Integradora from its inception in 2012 and until its bankruptcy in June 2019.[37]  Within this same period, Cañedo White was a shareholder and president of the Board of Directors.[38]  Williamson Nasi, in addition to being a shareholder, was a member of the Board of Directors.[39]  Villegas Vargas was the Chief Financial Officer of Integradora.[40]

Before its bankruptcy, Integradora was an indirect owner of five oil drilling rigs that were acquired between 2012 and 2015 through five special purpose vehicles ("SPVs") established in Singapore: Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd. and Oro Negro Impetus Pte. Ltd.[41]  The Rig Owners were owned directly by Oro Negro Drilling Pte. Ltd. ("Oro Negro Drilling"), which was a Singapore company and subsidiary of Integradora.[42]  Integradora owned 100% of the shares of Oro Negro Drilling, which owned 100% of the shares of the Rig Owners.[43]  Each Rig Owner was an owner of one the five rigs.[44]  Oro Negro Drilling was the issuer of the bonds used to purchase the rigs as part of a bond agreement.[45]  Individual Respondents Gil White and Williamson Nasi were directors of the Rig Owners and Oro Negro Drilling.[46]

Perforadora Oro Negro S. de R.L. de C.V. ("Perforadora") was a subsidiary of Integradora, in charge of operations of the rigs.[47]  Integradora owned 66.67% of the share capital of Perforadora and Operadora Oro Negro S. de R.L. de C.V., another company owned by Integradora, owned the remaining 33.33%.[48]  Gil White was the sole managing director of Perforadora and had the

[37] Ex. A (Díaz Decl. ¶ 22); Ex. B (Bribiesca Decl. ¶ 21).
[38] Ex. A (Díaz Decl. ¶ 22); Ex. B (Bribiesca Decl. ¶ 21).
[39] Ex. A (Díaz Decl. ¶ 22); Ex. B (Bribiesca Decl. ¶ 21).
[40] Ex. A (Díaz Decl. ¶ 22); Ex. B (Bribiesca Decl. ¶ 21).
[41] Ex. A (Díaz Decl. ¶ 23); Ex. B (Bribiesca Decl. ¶ 22).
[42] Ex. A (Díaz Decl. ¶ 24); Ex. B (Bribiesca Decl. ¶ 23).
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] Ex. A (Díaz Decl. ¶ 41).
[47] Ex. A (Díaz Decl. ¶ 25); Ex. B (Bribiesca Decl. ¶ 24).
[48] Ex. A (Díaz Decl. ¶ 26); Ex. B (Bribiesca Decl. ¶ 25).

authority to manage and control the company.[49]  Cañedo White, Williamson Nasi, and Del Val Echeverria were attorneys-in-fact of Perforadora.[50]

The Oro Negro group of companies generated income through four lease agreements signed between April 2013 and January 2014.[51]  Under these agreements, Perforadora granted Pemex Exploración y Producción—a subsidiary of the Mexican state-owned oil company Pemex—a right to use the rigs and a crew for their operation and maintenance in exchange for a monthly fee.[52]  In 2015, Perforadora and Pemex entered into a fifth lease agreement in December 2015 (collectively, the "Pemex Contracts").[53]  The Oro Negro group funded the purchase of the rigs, in part, by issuing bonds.[54]  The bonds were issued in 2014 by Oro Negro Drilling and one of the Rig Owners, Oro Negro Impetus Pte. Ltd., and totaled approximately USD $900 million.[55] The bonds were acquired by the Bondholders.[56]  Subsequently, the bonds were consolidated leaving Oro Negro Drilling as the sole issuer.[57]  The bonds were governed by a bond agreement between Oro Negro Drilling and Nordic Trustee A.S. ("Nordic Trustee"), a Norwegian financial services company that acted as a representative of the Bondholders (the "Bond Agreement").[58]  The Bond Agreement appointed Nordic Trustee as the bond trustee.[59]  Its main role was to monitor the compliance by Oro Negro Drilling of its obligations and to ensure the rights of the Bondholders under the Bond Agreement.[60]

---

[49] *Id.*
[50] *Id.*
[51] Ex. A (Díaz Decl. ¶ 29); Ex. B (Bribiesca Decl. ¶ 28, 29).
[52] *Id.*
[53] *Id.*
[54] Ex. A (Díaz Decl. ¶ 31); Ex. B (Bribiesca Decl. ¶ 30).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

To ensure the regular performance of the promised bond payments, the Bond Agreement provided for the creation of a trust, the Fideicomiso Irrevocable de Administración y Fuente de Pago [*Irrevocable Trust Agreement of Administration and Source of Payment*] F/1695 ("Mexican Trust").[61]  The Bond Agreement required that all payments from Pemex to Perforadora under the Pemex Contracts be made directly to a trust account of the Mexican Trust, with Deutsche Bank México, S. A. Institución de Banca Múltiple, División Fiduciaria serving as the trustee ("Mexican Trustee").[62]  Nordic Trustee was named as the primary beneficiary of the Mexican Trust and the Rig Owners were named as secondary beneficiaries.[63]

## II.     ON SEPTEMBER 11, 2017, GIL WHITE PLACED PERFORADORA IN BANKRUPTCY WITHOUT NOTIFYING NORDIC TRUSTEE OR THE BONDHOLDERS.

In 2015, Pemex required a temporary modification of the terms of the Pemex Contracts, alleging it was due to the drop in the price of oil.[64]  It suspended its payments and the operation of two of the rigs, and it reduced the daily rate that was paid for the other three rigs.[65]  Perforadora and the Bondholders accepted these modifications, and the Bond Agreement was modified to provide debt relief consistent with the reduction of the rates.[66]  In March 2017, Pemex again sought to renegotiate to make the modified daily rates permanent.[67]  The Bondholders worked towards a modification of the Bond Agreement to restructure the bond payments in light of Pemex's renegotiation.[68]

---

[61] Ex. A (Díaz Decl. ¶ 32); Ex. B (Bribiesca Decl. ¶ 31).
[62] *Id.*
[63] *Id.*
[64] Ex. A (Díaz Decl. ¶ 37); Ex. B (Bribiesca Decl. ¶ 36).
[65] *Id.*
[66] *Id.*
[67] Ex. A (Díaz Decl. ¶ 38); Ex. B (Bribiesca Decl. ¶ 37).
[68] *Id.*

Instead of working on the modification with the Bondholders, on September 11, 2017, Gil White caused Perforadora to file a request for a declaration of bankruptcy in Mexico, also known as the Mexican "Concurso" proceeding.[69] The bankruptcy request was filed in the Second District Court for Civil Matters in Mexico City, Mexico under file number 345/2017.[70] Perforadora did not inform Pemex, Nordic Trustee, or the Bondholders of the bankruptcy filing; [71] they learned about the bankruptcy through a news report on September 21, 2017.[72]

### III.   ON SEPTEMBER 25, 2017, NORDIC TRUSTEE AND THE BONDHOLDERS REPLACED GIL WHITE AND HIS ASSOCIATES AS DIRECTORS OF THE PETITIONERS, AN ACT THAT WAS UPHELD BY THE SUPREME COURT OF SINGAPORE IN JANUARY 2024.

The filing of the bankruptcy by Perforadora was an event of default under the Bond Agreement.[73] As a result of the default, on September 25, 2017, Nordic Trustee declared Oro Negro Drilling in breach of the Bond Agreement, took control of Oro Negro Drilling and the Rig Owners, and removed and replaced Respondent Gil White, and his associates, Williamson Nasi, Del Val Echeverria, and Anita Chew Peck Hwa, as directors of the Rig Owners and Oro Negro Drilling.[74] Despite his replacement as a director, on September 29, 2017, Gil White directed the filing of a request for a declaration of bankruptcy in Mexico for Oro Negro Drilling and the Rig Owners, as well as Integradora.[75]

Between September 2017 and May 2019, Gil White, Cañedo White, Williamson Nasi, and Villegas Vargas, acting as purported representatives of the Oro Negro group, fought the seizure of the companies by Nordic Trustee and the Bondholders.[76] In May 2019, the bankruptcy judge

---

[69] Ex. A (Díaz Decl. ¶ 39); Ex. B (Bribiesca Decl. ¶ 38).
[70] Ex. A (Díaz Decl. ¶ 46); Ex. B (Bribiesca Decl. ¶ 38).
[71] Ex. A (Díaz Decl. ¶ 40).
[72] *Id.*
[73] Ex. A (Díaz Decl. ¶ 41); Ex. B (Bribiesca Decl. ¶ 40).
[74] Ex. A (Díaz Decl. ¶¶ 39 – 41); Ex. B (Bribiesca Decl. ¶¶ 38 – 41).
[75] Ex. A (Díaz Decl. ¶ 48).
[76] Ex. A (Díaz Decl. ¶¶ 39 – 42, 49 – 54); Ex. B (Bribiesca Decl. ¶ 43).

issued an order for the rigs to be returned to the Rig Owners.[77] On June 13, 2019, the bankruptcy judge declared Perforadora and Integradora bankrupt.[78] In September 2019, the Bondholders took possession of the rigs, and they foreclosed on them.[79] As of today, the bankruptcy proceedings of Perforadora and Integradora are in the asset liquidation stage and the reorganization proceedings of Oro Negro Drilling and the Rig Owners remain at an initial stage.[80]

Because they are Singaporean companies, the Rig Owners and Oro Negro Drilling brought an action in Singapore to declare that the removal of Gil White and his associates as directors of the Petitioners in September 2017 was legal and valid and that Gil White and his associates had no authority to have placed the Rig Owners and Oro Negro Drilling into bankruptcy after they were removed.[81] In his declaration, Mr. Díaz describes the final, non-appealable rulings made by the courts in Singapore. On January 17, 2024, the Supreme Court of Singapore issued a final order affirming the lower court's order, which held that:

(i)  the resolutions passed by the sole shareholder of Oro Negro Drilling (Integradora) and the Rig Owners (Oro Negro Drilling) were not valid to authorize any director to conduct a bankruptcy proceeding such as the Mexican bankruptcy petitions;

(ii)  the only directors of the Rig Owners and Oro Negro Drilling were those appointed by Nordic Trustee (on behalf of the Bondholders) as permitted by the Bond Agreement;

(iii)  neither Gil White nor Integradora had the authority or authorization of the Rig Owners and Oro Negro Drilling to commence, continue or maintain any bankruptcy proceeding in Mexico or anywhere in the world, or to instruct any agent to commence, continue or maintain any such proceeding on behalf of the Rig Owners and Oro Negro Drilling, and a court order has been entered enjoining such conduct in the future; [and]

(iv)  the Rig Owners and Oro Negro Drilling are entitled to damages, the amount of which will be determined at a later date, for the defendants' breach

---

[77] Ex. A (Díaz Decl. ¶ 45); Ex. B (Bribiesca Decl. ¶¶ 38 – 41).
[78] Ex. A (Díaz Decl. ¶ 56).
[79] Id. ¶ 45.
[80] Id. ¶¶ 57 – 58.
[81] Id. ¶¶ 63 – 64.

of the implied contract providing for intercompany proceedings in furtherance of bankruptcy proceedings such as the Mexican bankruptcy proceedings.[82]

At this point, Mexican bankruptcy counsel is working on domesticating this judgement in Mexico from the Court in Singapore.[83]  The decision shows that the $19 million in funds that Gil White transferred out of Oro Negro Drilling was done without authority because it was after he was removed as a director by the Bondholders.

## IV.   PETITIONERS FILED CRIMINAL COMPLAINTS AGAINST GIL WHITE AND HIS ASSOCIATES IN MEXICO AND THE COURT ISSUED ARREST WARRANTS.

García González y Barradas ("GGyB") represents the Rig Owners as complainants in two of the three criminal proceedings pending in Mexico.[84] GGyB also represents Oro Negro Drilling as a complainant in the third criminal proceeding pending in Mexico.[85]  The Rig Owners and Oro Negro Drilling have the status of *querellantes* in the criminal proceedings who filed *querellas*, which are akin to criminal complaints.[86]  In Mexico, a crime victim has the right to initiate a criminal investigation against another party and to be an active participant in the investigation and court proceedings in addition to the participation of the public prosecutor, including proposing investigative acts and presenting evidence.[87]

### A.   Mexican Criminal Case # 1 – Abuse of Trust and Fraudulent Administration.

On September 14, 2018, the Rig Owners filed a *querella* against Perforadora, the Mexican Trustee, and any other defendants who may be liable, before the Central Investigation Prosecutor's Office Financial Crimes Unit of the Attorney General's Office of Mexico City.[88]  The Rig Owners

---

[82] Ex. A (Díaz Decl. ¶ 64); *see also* Ex. H (Singapore Court Judgments, at pg. 78 – 81).
[83] Ex. A (Díaz Decl. ¶ 66).
[84] Ex. B (Bribiesca Decl. at pg. 1).
[85] *Id.*
[86] Ex. B (Bribiesca Decl. ¶¶ 5 – 6, 9, 11).
[87] *Id.* ¶¶ 5 – 6, 9.
[88] *Id.* ¶ 46.

alleged in the complaint that from 2014 to 2015, Gil White and others acting at his instructions, including Del Val Echeverria, Williamson Nasi, Cañedo White, and Villegas Vargas, were involved in the crimes of abuse of trust and fraudulent administration of the trust funds by using fictitious shell companies and other methods to misappropriate and divert over **USD $50 million** of funds in the Mexican Trust accounts to themselves.[89]

The Public Prosecutor's office investigated and determined that two crimes may have been committed; therefore, on July 16, 2019, the Mexican criminal court overseeing the investigation issued arrest warrants against Gil White, Del Val Echeverria, Williamson Nasi, Cañedo White, and Villegas Vargas for their probable participation in the crimes.[90]  The Public Prosecutor sought another arrest warrant based on evidence that since 2014 these individuals had been transferring funds—at least MXN $91 million—from Perforadora to an affiliate named ON Costa Afuera, which in turn transferred the funds to a company called "Elementos Visionarios S.A. de C.V.", a company that the Mexican government has classified as a sham company.[91]  As a result of the investigation by the Public Prosecutor, on December 15, 2020, the same Mexican criminal court issued new arrest warrants against Gil White, Williamson Nasi, Villegas Vargas, and Cynthia Ann Delong Synder ("Delong"), who was the Head of Human Resources and Administration of Integradora between 2014 until the bankruptcy in June 2019.[92]

B.      **Mexican Criminal Case # 2 – Misappropriation of $8 Million in VAT Funds.**

On September 25, 2019, the Rig Owners presented a second *querella* to the prosecutor against Gil White and others acting at his direction relating to the use of funds released by the Mexican bankruptcy court to pay the value added tax ("VAT" or "IVA").[93]  Documents and

---

[89] *Id.* ¶¶ 47 – 51.
[90] *Id.* ¶¶ 52 – 53.
[91] *Id.* ¶¶ 44 n.13, 57 – 61.
[92] *Id.*
[93] Ex. B (Bribiesca Decl. ¶ 62).

testimony from cooperator Del Val Echeverria show that the majority of the VAT funds released by the court were diverted by Gil White.[94]  On September 10 and 11, 2018, Perforadora asked for MXN 251,197,387.97 to be released by the Mexican Trustee to pay the VAT.[95]  The bankruptcy court judge authorized the transfer of the funds requested from Perforadora;[96] however, only MXN 90,984,388 was used to pay the VAT,[97] the rest totaling MXN $160,212,999.97—equivalent to more than USD $8 million—was diverted into the United States by Gil White and others.[98]

In fact, Mexican bankruptcy counsel has identified a US-based account at US Bank for Perforadora, where the bank statements[99] for that account show that on September 27, 2018, USD $8 million of the remaining VAT funds were deposited into that account without the authorization of the *Concurso* judge overseeing the bankruptcy case:[100]



00-.M-PJ-PC-272-05   02692005   26920
0176616-00-03180-05                    Page 5 of 5

ACCOUNT NUMBER: ▮▮▮▮
ESCROW AGREEMENT BY AND AMONG
PERFORADORA ORO NEGRO.S. DE R.L.
DE C.V. AND U.S. BANK NATIONAL
ASSOCIATION
ESCROW ACCOUNT

This statement is for the period from
September 25, 2018 to September 30, 2018

**TRANSACTION DETAIL**

| Date Posted | Description | Income Cash | Principal Cash | Tax Cost |
|---|---|---|---|---|
|  | Beginning Balance 09/25/2018 | $.00 | $.00 | $0.00 |

---

[94] Bribiesca Decl., at Exhibit 3, pg. 108-109 (Alonso del Val Declaration).
[95] Ex. B (Bribiesca Decl. ¶ 63).
[96] *Id.* ¶ 64.
[97] Ex. A (Díaz Decl. ¶¶ 13, 59).
[98] Ex. B (Bribiesca Decl. ¶¶ 65 – 66).
[99] Ex. A (Díaz Decl., at Exhibit 5).
[100] Ex. A (Díaz Decl. ¶¶ 59 – 61).

| Date | Description | | |
|---|---|---|---|
| 09/27/18 | Cash Receipt<br>Receipt Of Funds<br>Fed Ref #977616 Rar353 Fr Operadora Oro Negro<br>Perforadora Oro Negro Deposit<br>Obi=apertura De Cuenta Bnf=perforadora Oro Negro S<br>De RI De Cv Javier Barro Sierra 540 T1 Of 103 Alv<br>Raraina | 4,975.00 | |
| 09/27/18 | Cash Receipt<br>Receipt Of Funds<br>Fed Ref #982895 Rar353 Fr Perforadora Oro Negro<br>Perforadorra Oro Negro Deposit<br>Obi=/Acc/270918 Pon A Pon USD Rtb 18092 70079 Bnf=<br>Perforadora Oro Negro S De RI De Cv Javier Barro S<br>Raraina | 6,056,278.18 | |
| 09/27/18 | Cash Receipt<br>Receipt Of Funds<br>Fed Ref #982894 Rar353 Fr Perforadora Oro Negro<br>Perforadora Oro Negro Deposit<br>Obi=/Acc/2Do Traspaso Pon Sb A Pon USA 092718 Rtb<br>1809270256 Bnf=perforadora Oro Negro S De RI De Cv<br>Raraina | 2,034,078.00 | |
| 09/27/18 | Purchased 8,095,331.18 Units Of<br>US Bank Mmkt 5 - Ct<br>Trade Date 9/27/18<br>Rar353<br>9AMMF05B2 | - 8,095,331.18 | 8,095,331.18 |
| **Ending Balance 09/30/2018** | | $0.00     $0.00 | $8,095,331.18 |

The US Bank statements then show the $8 million was transferred out by Gil White and others acting at his direction to various unknown entities in Mexico, including many transfers in large round numbers. These transfers were not authorized by the bankruptcy court[101] and appear to be an effort to conceal the destination of the funds by routing them outside of Mexico, through a United States bank, and then having the funds return to Mexico to other individuals and entities. In other words, there is indicia of money laundering.

Perforadora's former attorney-in-fact, Del Val Echeverria, confirmed irregularities in the transfers in his interview with the prosecutors. On August 22, 2019, Del Val Echeverria entered into a cooperation agreement with the prosecutor, and he provided information implicating the other co-defendants in the fraud.[102] During his interview with Mexican prosecutors under his cooperation agreement, he stated, "**In November last year, [Perforadora] requested an amount of almost 250 million pesos from the assets of the Trust to pay the Added Value Tax owed to**

---

[101] Ex. A (Díaz Decl. ¶¶ 13, 61).
[102] Bribiesca Decl., at Exhibit 3 (Declaration of Alonso del Val Echeverria).

the federal treasury; however, by instructions of GONZALO GIL WHITE, these resources were not paid in full to the tax authority but were used for other purposes.".[103] Del Val Echeverria confirmed that the funds were sent to "**an account of Perforadora Oro Negro S. de R.L. de C.V. in the United States of America, apparently of the US BANK.**"[104]

For example, bank account statements obtained through the bankruptcy proceeding show that Gil White and one of his employees acting under his direction transferred over $1 million from the U.S. based accounts to his personal lawyers at Zinser-Esponda Abogados:[105]

| 10/30/18 | Cash Disbursement<br>Paid To US Bank DDA ▮▮▮▮<br>ACH Transfer To Checking Acct<br>SAR353 Intl Wire To Zinser-Esponda Abogados<br>Per Section 4(A) Of Escrow Agreement<br>Dir Dtd 10/24/18 Exec By Gonzalo Gil White<br>All Principal<br>Sareine | - 633,886.06 |
| 11/21/18 | Cash Disbursement<br>Paid To US Bank DDA ▮▮▮▮<br>ACH Transfer To Checking Acct<br>SAR353 Intl Wire To Zinser-Esponda Abogados<br>Per Section 4(A) Of Escrow Agreement<br>Dir Dtd 11/20/18 Exec By L Palacios Carrillo<br>All Principal<br>Sareine | - 400,000.00 |

There was also a payment to Servicios JA & RV SA de CV for $678,122.85,[106] which is unexplained, and potentially an example of a sham company:

| 11/07/18 | Cash Disbursement<br>Paid To US Bank DDA ▮▮▮▮<br>ACH Transfer To Checking Acct<br>SAR353 Intl Wire To Servicios Ja & Rv Sa De Cv<br>Per Section 4(A) Of Escrow Agreement<br>Dir Dtd 11/7/18 Exec By L Palacios Carrillo<br>All Principal<br>Sareine | - 678,122.85 |

---

[103] Bribiesca Decl., at Exhibit 3, pg. 108-109. (Declaration of Alonso del Val Echeverria).
[104] *Id.* at 109
[105] Díaz Decl., Exhibit 5.1, at pg. 286, 298 (Perforadora US Bank Statements)
[106] *Id.* at pg. 296.

An investigative article in Mexico raised concerns about this company being involved in fraud.[107]  There are dozens of other transfers that require explanation through this discovery process.  The Public Prosecutor requested that arrest warrants be issued, and on November 10, 2021, the Mexican criminal court issued arrest warrants against Gil White, Villegas Vargas, and Delong for their involvement in this conduct.[108]

### C.   Mexican Criminal Case # 3 – Misappropriation of $19 Million from Oro Negro Drilling that was Used to Pay Quinn Emanuel.

On May 3, 2019, Oro Negro Drilling presented a third *querella* to the prosecutor against Gil White, Williamson Nasi, Villegas Vargas, and Delong to investigate their abuse of trust against Oro Negro Drilling.[109]  This complaint is based on an allegation that the individuals diverted USD $19,269,000 from Oro Negro Drilling at Scotiabank Inverlat de Mexico to the account of Perforadora without the permission of the bankruptcy court or from the new administration of Oro Negro Drilling.[110]

On October 6, 2017, after the declaration of default of the Bond Agreement, Gil White, Williamson Nasi, and/or Villegas Vargas misused their signature authority over Oro Negro Drilling's bank accounts to transfer at least USD $19,269,000 from Oro Negro Drilling's account in Scotiabank Inverlat Mexico to Perforadora's account at the same bank.[111]  These bank transfers were not authorized by the new management or directors of Oro Negro Drilling.[112]  Gil White

---

[107]    Available at:  https://www.yucatan.com.mx/merida/2020/02/11/hasta-magia-con-dinero-publico-extravios-y-apariciones-en-tecoh.html (last accessed May 14, 2024).  English translation available at: https://www-yucatan-com-mx.translate.goog/merida/2020/02/11/hasta-magia-con-dinero-publico-extravios-y-apariciones-en-tecoh.html?_x_tr_sl=es&_x_tr_tl=en&_x_tr_hl=es-419&_x_tr_pto=wapp
[108] Ex. B (Bribiesca Decl. ¶¶ 67 – 70).
[109] *Id.* ¶ 72.
[110] *Id.* ¶ 74.
[111] *Id.* ¶¶ 73 – 74, 77 – 79.
[112] Ex. B (Bribiesca Decl. ¶ 74).

admitted to the diversion of funds, but he attempted to justify that diversion with an alleged loan agreement.[113]

The funds from the unauthorized transfer were used to make improper payments, including USD $8,488,666.73 that were sent to Quinn Emanuel in three separate transfers in April, May, and June 2018.[114]   Some of these payments to Quinn Emanuel were identified in Perforadora's accounting by the receiver in the bankruptcy case in Mexico, which ultimately led to an ancillary proceeding pending in the bankruptcy case brought by separate creditor requesting that Quinn Emanuel be ordered to reimburse to the bankruptcy estate all the money it received.[115]   On August 20, 2020, the Public Prosecutor requested and the control judge issued arrest warrants against Gil White, Williamson Nasi, Villegas Vargas, and Delong for the crime of abuse of trust.[116]

Gil White, Cañedo White, and Villegas Vargas left Mexico when the first arrest warrants were issued and never returned, instead remaining in the United States in the Southern District of Florida.[117]   Williamson Nasi also remained in the United States, but he passed away on January 2, 2022, although the representative of his estate is in the Southern District of Florida[118] and may have access to relevant e-mails and documents.   The three investigations and arrest warrants remain open and pending in Mexico.[119]

---

[113] *Id.* ¶¶ 77 – 79.
[114] *Id.* ¶ 74.
[115] Ex. A (Díaz Decl. ¶¶ 14, 55).
[116] Ex. B (Bribiesca Decl. ¶¶ 75 – 76).
[117] *Id.* ¶¶ 14, 16 – 17, 19.
[118] *Id.* ¶ 18).
[119] *Id.* ¶¶ 10 – 13, 56, 61, 71, 80.

## V.       BACKGROUND ON THE U.S. PROCEEDINGS FILED BY GIL WHITE AND QUINN EMANUEL.

Gil White evidently used the USD $8 million he sent from Oro Negro Drilling to Quinn Emanuel through Perforadora to fund litigation in a United States bankruptcy court to impede the Bondholders exercising their rights following the default on the Bond Agreement caused by Gil White's bankruptcy filings on behalf of Perforadora, Integradora, the Rig Owners, and Oro Negro Drilling.  These proceedings included a case filed by Quinn Emanuel purportedly on behalf of the Rig Owners and Oro Negro Drilling against the Bondholders.[120]  It also included NAFTA litigation against Mexico, which did not involve the Petitioners.

### A.       Gil White Hired Quinn Emanuel to Pursue Litigation in the United States to Try to Circumvent the Mexican Proceedings.

Rather than contesting the proceedings pending in Mexico, Gil White hired legal counsel at Quinn Emanuel to pursue litigation against some of the Bondholders and the Rig Owners in the United States.[121]  Gil White accused the Bondholders of having participated in a conspiracy with Mexican authorities against Gil White.  Quinn Emanuel created a lengthy complaint that has been recycled multiple times through U.S. bankruptcy court adversary proceedings that were dismissed, a Florida state court case that was dismissed, and a newly filed New York state court case (the "Recycled Complaint").  Petitioners expect that the same, previously dismissed allegations and arguments will be brought into this matter by the Respondents.

### B.       Quinn Emanuel Filed a Chapter 15 Proceeding in SDNY in April 2018, and an Adversary Proceeding in March 2021 as Counsel Acting on Behalf of the Rig Owners and Oro Negro Drilling.

On April 20, 2018, the day after receiving a $1 million payment from the proceeds of the funds transferred from Oro Negro Drilling to Perforadora by Gill White, Quinn Emanuel filed a

---

[120] *See* Ex. D.
[121] Exhibit I (Quinn Emanuel Engagement Letters).

Chapter 15 proceeding in the United States Bankruptcy Court in the Southern District of New York on behalf of Perforadora to enforce the Mexican bankruptcy court's orders and obtain discovery against certain Bondholders.  *See* Verified Petition for Recognition of Foreign Main Proceeding and Granting Discretionary Relief, *In re Perforadora Oro Negro, S. De R.L. De C.V.*, No. 18-11094-scc (Bankr. S.D.N.Y. April 20, 2018) (ECF No. 2).  From there, Quinn Emanuel began filing the Recycled Complaint in multiple adversary proceedings against different combinations of Bondholder and Rig Owner entities as well as individuals involved with those entities.

On October 22, 2018, Del Val Echeverria filed an adversary proceeding in the Chapter 15 proceeding on behalf of Perforadora against AMA Capital Partners, LLC ("AMA") and the Rig Owners seeking to stop the Rig Owners from taking over the oil rigs after the Mexican criminal court issued a seizure order. *See* Complaint for Declaratory and Injunctive Relief, Specific Performance and Damages Under 11 U.S.C. § 362(k), *Alonso Del Val-Echeverria v. AMA Capital Partners, LLC et al.*, No. 18-01693-scc (Bankr. S.D.N.Y. Oct. 22, 2018) (ECF No. 1).  Ultimately, the adversary proceeding was voluntarily dismissed.  The oil rigs were finally turned over to the Rig Owners in September 2019.  This case was brought by Quinn Emanuel on behalf of Perforadora, which maintains an office in the Southern District of Florida.[122]

On June 6, 2019, Gil White, acting on behalf of himself individually and as representative of Perforadora, filed a second adversary proceeding against the Rig Owners and various bondholders, including AMA, which is the advisor to the Bondholders.  Once again, Gil White alleged claims of tortious interference and collusion against the Rig Owners and Bondholders accusing them of "collud[ing] to drive the company out of business." *See* Complaint, *Gonzalo Gil*

---

[122] *See* Exhibit G (2024 Quinn Emanuel Annual Report).

*White v. Alp Ercil et al*, No. 19-01294-mg (Bankr. S.D.N.Y. Jun. 6, 2019) (ECF No. 9).  Ultimately, the adversary proceeding was voluntarily dismissed.

On June 24, 2019, Gil White, acting on behalf of himself individually and as representative of Perforadora, filed a third adversary proceeding against Bondholder Contrarian Capital Management, LLC and Nordic Trustee for tortious interference and Mexican law claims using an essentially identical complaint to that filed against the Rig Owners and Bondholders earlier that month.  *See* Complaint, *Gonzalo Gil White v. Contrarian Capital Management, LLC, et al.*, No. 19-01301-mg (Bankr. S.D.N.Y. Jun. 24, 2019) (ECF No. 1).  Ultimately, the adversary proceeding was voluntarily dismissed and was refiled in New York.

On September 26, 2019, Gil White, Cañedo White, Williamson Nasi, Villegas Vargas, and Perforadora, filed a fourth adversary proceeding alleging breach of a release agreement against certain Bondholders and Rig Owners.  *See* Complaint, *Gonzalo Gil White et al. v. Asia Research and Capital Management, Ltd., et al.*, No. 19-01360-mg (Bankr. S.D.N.Y. Sept. 26, 2019) (ECF No. 1).  Ultimately, the adversary proceeding was voluntarily dismissed and refiled as a New York case.

Finally, on March 9, 2021, Quinn Emanuel filed a fifth adversary proceeding, claiming to be representing the Rig Owners and Oro Negro Drilling against the Bondholders, including their advisor AMA, alleging claims for conversion and unjust enrichment, among other things. *See* Complaint, *Oro Negro Primus PTE., Ltd. et al v. Alterna Capital Partners, LLC, et al.*, No. 21-01091-mg (Bankr. S.D.N.Y. March 9, 2021) (ECF No. 1).  The signature block signed by lawyer Juan Morillo confirms that Quinn Emanuel was representing the Petitioners in this lawsuit and was likely being paid out of the proceeds of the improper $19 million transfer from Oro Negro Drilling:

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

_____

Juan P. Morillo (*pro hac vice*)
Serafina Concannon
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
Email: juanmorillo@quinnemanuel.com
Email: serafinaconcannon@quinnemanuel.com

Eric D. Winston (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (212) 443-3100
Email: ericwinston@quinnemanuel.com

*Attorneys for Oro Negro Primus Pte., Ltd.; Oro
Negro Laurus Pte., Ltd.; Oro Negro Fortius Pte.,
Ltd.; Oro Negro Decus Pte., Ltd.; Oro Negro Impetus
Pte., Ltd.; and Oro Negro Drilling Pte. Ltd.*

This case was filed by Quinn Emanuel in the name of the Rig Owners and Oro Negro Drilling,

without consent of the appointed directors. Discovery will be needed to investigate Quinn

Emanuel's authority to file this proceeding, including the factual basis it relied on to file the

complaint, the source of funds used to pay for its legal fees, and the due diligence it conducted on

the funds. As the former lawyers to the Petitioners, Quinn Emanuel is obligated to turn over its

files from its representation. Like many of the prior cases, the adversary proceeding was also

voluntarily dismissed.

> C.  **Gil White Filed a NAFTA Arbitration in October 2019 against Mexico and
> Made Misrepresentations about the Use of the VAT Funds.**

Gil White also pursued, through his attorneys at Quinn Emanuel, an arbitration under

NAFTA against the government of Mexico, accusing the government of bribery and corruption.

Statement of Claim (Alicia Grace et. al. v. United Mexico States), ICSID Case No. UNCT/18/4

(October 7, 2019):

https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C7653/DS15172_En.pdf

(last accessed on May 16, 2024).

Neither the Petitioners nor the Bondholders are involved in the NAFTA proceeding; however, Gil White did file a statement in the NAFTA case where he repeated his demonstrably false contention that the majority of the funds received by Perforadora on September 27, 2018 were used to pay VAT:

> 143. After numerous Concurso Court orders and facing contempt, in early September 2018, Pemex finally paid into the Mexican Trust approximately USD 96 million that it owed Perforadora for services provided until October 3, 2017. On September 10, 2018, Perforadora instructed Deutsche México to immediately disburse to it approximately USD 27 million of the USD 96 million, which comprised value added tax ("VAT") on Perforadora's invoices to Pemex and expenses that Perforadora incurred in providing the services to Pemex underlying the USD 96 million payment.  **On September 27, 2018, Deutsche México disbursed approximately USD 13 million to Perforadora, most of which Perforadora had to use to pay VAT.**

*Id.* (Gil Statement, CWS-1, ¶ 94) (emphasis added).

Both the bank records and the Del Val Echeverria prosecution interview show that Gil White diverted over $8 million of the funds received for VAT payments on September 27, 2018, to the United States to then pay unknown entities in Mexico and elsewhere, including apparent shell companies.[123]  As a result, **most** of the money was **not** used to pay VAT.  One focus of the discovery sought through this petition will be on the ultimate disposition of the $8 million diverted by Gil White under the guise of VAT payments.  Petitioners are seeking Gil's statement filed in the NAFTA proceeding, together with relevant communications and his deposition.  There is a long list of entities to which Gil White disbursed the misappropriated funds, and Petitioners are seeking information about each one from Gil White.[124] This will aid the Mexican bankruptcy court in

---

[123] Bribiesca Decl., at Exhibit 3, pg. 108-109 (Declaration of Alonso del Val Echeverria).
[124] Ex. A (Díaz Decl., at Exhibit 5).

potentially clawing back funds that were improperly disbursed in contravention of the Court's orders, and it will also support at least one of the criminal investigations pending in Mexico over the misappropriation of the VAT funds.

    **D.**    **Gil White and Quinn Emanuel Filed the Recycled Complaint in Florida State Court on July 23, 2023, but Quinn Emanuel Got Disqualified and Dismissed the Case.**

Undeterred, Quinn Emanuel filed a lawsuit in Florida state court on July 23, 2023, on behalf of Gil White, Cañedo White, and Maria Clara Lloreda, in her capacity as the personal representative of the Estate of Williamson-Nasi, against certain Bondholders and their advisors, including AMA, accusing them of participating in government bribery and a conspiracy with Mexican authorities against their clients, and alleging claims of abuse of process, intentional infliction of emotional distress, civil conspiracy, and alternative claims of intentional torts and negligent torts under Mexican law. *See Jose Antonio Cañedo-White et al. v. Alterna Capital Partners, LLC et al.,* Case No. 2023-019612-CA-01 (Fla. 11th Cir. Ct. Jul. 23, 2023) (DE 3).   After filing this case, AMA moved to disqualify Quinn Emanuel as counsel, and the Florida court granted AMA's motion after concluding that Quinn Emanuel had established an attorney-client relationship with AMA in another unrelated proceeding.   *Id.* at DE 25, 42.[125]   After receiving this adverse ruling, Quinn Emanuel, rather than withdraw as counsel, voluntarily dismissed the lawsuit on November 21, 2023.

    **E.**    **After Dismissing the Florida case, Gil White and Quinn Emanuel Re-Filed the Recycled Complaint in New York State Court.**

Within 24-hours of Quinn Emanuel filing its notice of voluntary dismissal in Florida, it refiled the case in New York and later supplemented the claim with the Recycled Complaint containing virtually identical claims to those filed in Florida and the Adversary Proceedings, and

---

[125] *See* Ex. C.

without disclosing to the New York court that the firm had already been disqualified in Florida. *See* Complaint, *Gil-White, Gonzalo et al. vs. Alterna Capital Partners, LLC et al.*, Index No. 655864/2023 (Sup Ct, NY County 2023) (DE 4).  As a result, AMA filed a Motion For Order To Show Cause in Florida based on Quinn Emanuel's attempts to circumvent and disregard the Florida court's order, which is still pending resolution. *See Jose Antonio Cañedo-White et al. v. Alterna Capital Partners, LLC et al.,* Case No. 2023-019612-CA-01 (Fla. 11th Cir. Ct. Jul. 23, 2023) (DE 60).

There is also a second pending Motion for Order to Show Cause in the New York court based on Quinn Emanuel's attempts to disregard the Florida court's order disqualifying them as counsel in the litigation.  *See* Mem. of Law in Supp. of Defs. AMA Capital Partners, LLC and Paul Leand, Jr.'s Mot. to Disqualify Pls.' Counsel, *Gil-White, Gonzalo et al. vs. Alterna Capital Partners, LLC et al.*, Index No. 655864/2023 (Sup Ct, NY County 2023) (DE 6). Additionally, there is a pending motion in the New York case to dismiss the complaint on the following grounds: lack of personal jurisdiction, forum non conveniens, res judicata, failure to state a claim, and the act of state doctrine. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl., *Gil-White, Gonzalo et al. vs. Alterna Capital Partners, LLC et al.*, Index No. 655864/2023 (Sup Ct, NY County 2023) (DE 67).

F. **Despite all the Collateral Litigation Generated by Gil White and Quinn Emanuel in U.S. Courts, No Discovery Has Been Taken of the Respondents in the U.S.**

Despite all these U.S. proceedings initiated and subsequently dismissed by Gil White, the Rig Owners, Oro Negro Drilling, and the Bondholders did not seek discovery in those cases because their position has been that the cases all belong in Mexico.  As a result, Petitioners require the assistance of this Court to obtain discovery in furtherance of the Mexican proceedings.

## THE DISCOVERY REQUESTED IN THIS PETITION

Based on the sworn declarations, court documents, the statement of cooperator Del Val Echeverria, and the documentary evidence obtained to date, Respondents are in possession of relevant evidence related to the operation of the five rigs and to the potential misappropriation of at least USD $27 million in funds. The relevant documents, communications, and testimony sought fall under the following categories:[126]

1) Documents and communications, including e-mails and text messages, relating to the Individual Respondents' management and operation of Integradora, Perforadora, the Rig Owners, and Oro Negro Drilling, including the disposition of all funds;

2) Testimony and documents, including communications, relating to the receipt and disposition of the **USD $8 million** in VAT funds;

3) Testimony and documents, including communications, relating to the receipt and disposition of the **USD $19 million** in funds transferred from Oro Negro Drilling in October 2017;

4) Testimony and documents, including communications, relating to Quinn Emanuel's receipt of over **USD $8 million** funds it received from Oro Negro Drilling through Perforadora, including all documents showing the due diligence Quinn Emanuel conducted on the source of funds and analysis on whether it was authorized to accept those funds;

5) Documents, communications, and testimony relating to the use of fictitious shell companies and other methods to misappropriate and divert over **USD $50 million** of funds in the Mexican Trust accounts, including the quantity and purpose of transfers of

---

[126] Ex. A (Díaz Decl. ¶ 67); Ex. B (Bribiesca Decl. ¶ 81).

at least MXN $91 million from Perforadora to an affiliate named ON Costa Afuera and to Elementos Visionarios S.A. de C.V;

6) Testimony and documents, including communications, about the entities identified in the US Bank Statements attached as Exhibit 5 to the Declaration of Daniel Díaz.

7) All bank statements in the possession, custody, and control of the Respondents relating to Perforadora, Integradora, the Rig Owners, and Oro Negro Drilling;

8) All bank statements in the possession, custody, and control of the Respondents relating to the receipt, directly or indirectly, of the $27 million in funds described in this petition by any of the Respondents or companies or individuals affiliated with them;

9) Documents, communications, and testimony supporting the factual basis for the Adversary Complaint Quinn Emanuel filed on behalf of the Rig Owners and Oro Negro Drilling, attached as Exhibit D, with a particular emphasis on the allegations relating to the *Concurso* proceeding and the criminal proceedings referenced in paragraphs 147 to 189;

10) Quin Emanuel's files for all matters in which it represented the Rig Owners, Oro Negro Drilling, or any of their current or former directors, including Gonzalo Gil White, including all communications and billing records; and

11) All documents and communications relating to any consultants or experts hired by Quinn Emanuel to assist in any matters in which it represented the Rig Owners, Oro Negro Drilling, or any of their current or former directors, including Gonzalo Gil White, including forensic accountants and private investigators such as Black Cube.

Subpoenas detailing the documents, communications, and testimony sought by Petitioners as to each Respondent are attached as Exhibit F. Petitioners also seek from each corporate

Respondent a Rule 30(b)(6) deposition of a company representative with knowledge of the topics in the 30(b)(6) request, including the categories of documents described above.

## LEGAL ARGUMENT

This Court has the authority to grant Petitioners' application pursuant to 28 U.S.C. § 1782 for assistance in obtaining evidence for use in connection with the Mexican Proceedings.  Section 1782 provides in pertinent part that **"[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations . . ."** 28 U.S.C. § 1782(a).  As shown below, Petitioners' application meets the statutory requirements for obtaining discovery under Section 1782.  Section 1782 requires that the application:   (1) is made by "any interested person" involved in international proceedings; (2) seeks testimonial or documentary evidence; (3) seeks evidence for use in a proceeding in a foreign or international tribunal; and (4) seeks discovery from a person residing in or found in the district of the district court ruling on the application.  *See Intel Corp.,* 542 U.S. at 246 (identifying these factors); *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (same); *see also* 28 U.S.C. § 1782(a).

In addition, the four discretionary factors identified by the United States Supreme Court in *Intel Corp.*, 542 U.S. at 249, all weigh in favor of granting Petitioners' request. Respondents are not parties to all the Mexican Proceedings.  The Mexican Courts are not opposed to this form of discovery.[127]   Petitioners are not concealing an attempt to circumvent the requirements of the Mexican Courts.  The discovery sought is both highly relevant to the matters in dispute and tailored to avoid imposing any undue burden or intrusion on the Respondents.

---

[127] Ex. A (Díaz Decl. ¶¶ 7, 15 – 19); Ex. B (Bribiesca Decl. ¶¶ 7 – 9).

I. **PETITIONERS' APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782.**

Section 1782 authorizes federal district courts to assist foreign litigants and other interested parties in gathering evidence for use in a proceeding before a foreign or international tribunal. *See Intel Corp.*, 542 U.S. at 247. The statute provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  The Eleventh Circuit has held that the requirements of Section 1782 are met when the following are shown: "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person;' (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing;' (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal;' and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (cited by *In re England/Bahamas*, No. 20-MC-61696-SMITH/VALLE, 2021 U.S. Dist. LEXIS 142293, at *2 (S.D. Fla. July 30, 2021)). Petitioners' application satisfies all four requirements.

### A.      Petitioners Are Interested Persons Under 28 U.S.C. § 1782.

First, the Petitioners' status as complainants in the three Mexican criminal proceedings[128]

and as creditors in the Mexican bankruptcy *Concurso* proceeding[129] makes them the quintessential

example of an "interested person" under Section 1782.    *In re Vedam*, No. 8:22-mc-26-SDM-

MRM, 2022 U.S. Dist. LEXIS 219637, at *6 (M.D. Fla. Nov. 3, 2022) (finding Petitioners involved

in bankruptcy proceeding "possess[] a 'reasonable interest' in obtaining judicial assistance from

this Court . . .").   Indeed, parties to a dispute are the most common example of the "interested

persons" who may invoke Section 1782.  *See In re Alianza Fiduciaria S.A.*, No. 13-81002-MC-

MARRA/MATTHEWMAN, 2013 U.S. Dist. LEXIS 171529, at *7 (S.D. Fla. Oct. 24, 2013)

(quoting *Intel Corp.*, 542 U.S. at 256) (internal brackets and quotations omitted).   Since the

Petitioners are parties to both the three criminal proceedings and the bankruptcy proceeding, they

are interested persons.

 "Interested party" is not limited to present parties, it can also include entities that are

potential parties investigating claims they may assert in the future.  *See In re MTS Bank*, No. 17-

21545-MC-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 107147, at *14 (S.D. Fla. June 27,

2018) (noting that the applicant meets the "any interested person" standard even where the

applicant had not yet been approved as a creditor-party in the litigation before the Russian

Bankruptcy Court); *In re Petrus Advisers Invs. Fund, L.P.*, No. 22-cv-22437-BLOOM/OTAZO-

REYES, 2023 U.S. Dist. LEXIS 39723, at *9 (S.D. Fla. Mar. 9, 2023) (recognizing that minority

shareholders investigating corporate operations abroad as "interested persons"); *Furstenberg Fin.*

---

[128] Ex. B (Bribiesca Decl. ¶ 11) ("[T]he Petitioners are plaintiffs and/or complainants in three separate criminal proceedings in Mexico brought against some of the parties to this Application, including Gonzalo Gil White ("Gil White"), José Antonio Cañedo White ("Cañedo White"), Carlos Enrique Williamson Nasi ("Williamson Nasi"), and Miguel Ángel Villegas Vargas ("Villegas Vargas")").
[129] Ex. A (Díaz Decl. ¶¶ 10) ("The Petitioners are creditors recognized as such in the aforementioned bankruptcy proceeding.  As creditors, the Petitioners are considered as parties acting before court in their own name. . .and may intervene in all stages of the proceeding and present evidence in support of their claims. . . .").

*SAS v. Litai Assets LLC*, 877 F.3d 1031, 1034 (11th Cir. 2017) (recognizing that the Petitioners were "interested persons" because they planned to file a criminal complaint).  As a result, there is no dispute that Petitioners are "interested persons."

### B.    Petitioners Seek Testimonial and Documentary Evidence.

As shown in the riders to the subpoenas attached as Exhibit F, Petitioners seek both testimonial and documentary evidence for use in the criminal proceedings relating to allegations of fraud and misappropriation by Gil White, Del Val Echeverria, Williamson Nasi, Cañedo White, and Villegas Vargas when they controlled Perforadora, Integradora, Oro Negro Drilling, and the Rig Owners.  Petitioners also seek both testimonial and documentary evidence for use in the Mexican *Concurso* proceeding to investigate potential fraud on the bankruptcy court and estate.[130] Evidence such as e-mails, text messages, bank records, financial records, and wire transfer instructions from Gil White, Williamson Nasi, Cañedo White, Villegas Vargas, and Axis Capital, regarding the operations and management of Perforadora, Integradora, the Rig Owners, Oro Negro Drilling, and other affiliated entities, and deposition testimony regarding the same will be highly relevant to the three Mexican criminal proceedings investigating allegations of fraud and misappropriation of at least $27 million in funds, as well as Petitioners' investigation of potential fraud on the bankruptcy court and the bankruptcy estate.[131]

Communications between Gil White, Williamson Nasi, Cañedo White, Villegas Vargas, and other members of the executive board with Quinn Emanuel relating to payments Quinn Emanuel received from Perforadora traceable to the Rig Owners and/or Oro Negro Drilling will be highly relevant to Petitioners as creditors in the bankruptcy proceeding and as *querellantes* in the three Mexican criminal proceedings investigating allegations of fraud, misappropriation, and breach of

---

[130] *See* Ex. F; Ex. A (Díaz Decl. ¶¶ 6, 10 – 15, 55, 59 – 62); Ex. B (Bribiesca Decl. ¶¶ 7 – 9,  44 – 80).
[131] Ex. A (Díaz Decl. ¶ 67); Ex. B (Bribiesca Decl. ¶ 81).

trust against White, Williamson Nasi, Cañedo White, Villegas Vargas.[132]   As part of its representation of the Rig Owners, Oro Negro Drilling, Perforadora, and Integradora, Quinn Emanuel surely collected volumes of relevant documents, including e-mails and text messages. Quinn Emanuel cannot claim that such documents are privileged because, "Documents which are given by a client to an attorney in the course of seeking legal advice are privileged in the hands of the attorney **only if they were privileged in the hands of the client**." *Tober v. Sanchez*, 417 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 1982) (emphasis added); *Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 667 (Fla. Dist. Ct. App. 2003) (same).  For instance, "information and/or financial documents . . . regarding [a judgment debtor's] assets is not privileged" simply "by transferring them to an attorney." *Greenberg Traurig Hoffman Lipoff Rosen & Quentel v. Bolton*, 706 So. 2d 97, 98 (Fla. Dist. Ct. App. 1998); *Goldberg v. Ross*, 421 So. 2d 669, 669 (Fla. Dist. Ct. App. 1982) (permitting discovery of "judgment debtor's trust fund records held by his attorney" because "[d]ocuments which are not privileged in the hands of the client cannot be shielded by transferring them to the attorney"); *Sweetapple, Broeker & Varkas, P.L. v. Simmons*, 151 So. 3d 42, 43 (Fla. Dist. Ct. App. 2014) (same). Quinn Emanuel cannot assert privilege for records that were never privileged in the first place.

Moreover, as former counsel to Petitioners that received at least $8 million of funds traceable to them,[133] Quinn Emanuel cannot withhold documents that it collected and obtained in the course of its representation of the Petitioners because any privilege that might exist belongs to the new management of the Petitioners, not the former management. In *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 & n.5 (1985) the Supreme Court held that a

---

[132] *See Supra* Sections IV.A (Mexican Criminal Case # 1), IV.B (Mexican Criminal Case # 2), and IV.3 (Mexican Criminal Case # 3).
[133] *See* Section IV.A (Mexican Criminal Case # 3).

bankruptcy trustee had the power to assert or waive attorney client privilege and explained that in cases where a client is a corporation, when there is a change in control of the corporation, ownership of the privilege passes to the new management and does not remain with the former corporate management.   The Court noted that "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Id.* Thus, Quinn Emanuel cannot assert privilege on behalf of the former directors, Gil White and Williamson Nasi, for documents and communications they exchanged because the privilege currently belongs to the new managers of the Petitioners.

### C.     The Discovery is for Use in a Proceeding Before a Foreign Tribunal.

The affidavits and attachments from Mr. Díaz and Mr. Bribiesca, which include orders issued by the courts overseeing the pending proceedings, clearly establish the existence of pending proceedings in Mexico and show that the discovery Petitioners seek will be used in the proceedings.[134]  Petitioners will use the requested discovery in: (1) the three Mexican criminal proceedings, where the requested discovery will help investigate allegations of fraud and misappropriation of at least $27 million dollars in assets against Gil White, Del Val Echeverria, Williamson Nasi, Cañedo White, and Villegas Vargas,[135] and (2) in the Mexican *Concurso*, to allow Petitioners to investigate and pursue claims against Gil White, Del Val Echeverria, Williamson Nasi, Cañedo White, and Villegas Vargas for fraud on the bankruptcy court and the bankruptcy estate.[136]

---

[134] Petitioners' burden for showing the requested discovery's use is "*de minimis*," as "district courts . . . should generally refrain from . . . determin[ing] [whether] the evidence would actually, or even probably, be admissible in the foreign proceeding."  *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010).  Instead, "courts should . . . leave it to the foreign tribunal to decide what use it wants to make of the evidence obtained." *Id.*

[135] Ex. B (Bribiesca Decl. ¶¶ 44 – 80); *see also Supra Sections IV.A (Mexican Criminal Case # 1), IV.B (Mexican Criminal Case # 2), and IV.3 (Mexican Criminal Case # 3).*

[136] Ex. A (Díaz Decl. ¶¶ 8, 12 – 14, 39, 46 – 62); *see also Supra Section II.*

While Petitioners have established that there are four pending proceedings before a foreign tribunal, the Eleventh Circuit has affirmed the granting of Section 1782 petitions even where no proceeding was pending.  In *Fursteng*, the recipient of a subpoena issued pursuant to Section 1782 argued that the district court erred when it found that the discovery sought was for use in a foreign "proceeding" because there was no pending civil proceeding in a foreign jurisdiction. *Furstenberg*, 877 F.3d at 1034.  The Eleventh Circuit held that:

> The district court did not err by concluding the discovery sought was "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. **[The] [a]pplicants intend[ed] to file a criminal complaint with a claim for damages in Luxembourg. The complaint [would] trigger a criminal investigation by the judge**. Such investigations [were] proceedings within the meaning of § 1782. *Id.* (authorizing the production of evidence "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation").

*Id.* at 1034-35 (footnote omitted; emphasis added).  In this case, Petitioners are participating as parties to an active criminal investigation being conducted by the Public Prosecutor under the supervision of a control judge that has already issued multiple arrest warrants.

In fact, the Eleventh Circuit has ordered discovery for use in a foreign "proceeding" even when the underlying court proceeding was closed:

> The "for use" requirement under § 1782 "is not limited to proceedings that are pending or imminent;" instead, the foreign "proceeding for which discovery is sought need only be 'within reasonable contemplation.'" In re Clerici, 481 F.3d at 1333 (quoting Intel, 542 U.S. at 259, 124 S.Ct. 2466). That the Ecuador Family Court has denied Pons' requests to reopen the ten-day period based on something other than Article 408 is different from whether it would reopen the period based on Article 408. Even though the initial inventory period is closed, the point of the district court's finding about Article 408 is that it could require a new inventory. An Article 408 proceeding is a foreign one in which the evidence could be used. The district court did not abuse its discretion in finding that the "for use" requirement was satisfied.

*Pons v. MAKE Registered Agents, LLC*, 835 F. App'x 465, 470 (11th Cir. 2020).

Petitioners have more than satisfied these requirements given the existence of not just one, but four total pending Mexican proceedings, with the potential for additional proceedings based on the evidence obtained in discovery pursuant to Petitioners' Section 1782 application.

In addition, the "use" prong of Section 1782 is clearly satisfied where, as here, the requested evidence will be used in the Mexican proceedings by the Petitioners.  As shown in the affidavits of Mexican criminal counsel and Mexican bankruptcy counsel, the evidence obtained through this Section 1782 procedure would be accepted and considered by the prosecutors and the courts in Mexico.[137] *See In re Alianza Fiduciaria S.A.*, 2013 U.S. Dist. LEXIS 171529, at *1-3 (finding Petitioners satisfied the "use" factor where Petitioners sought information and documents "regarding how [Colombian] property has been bought and sold, statements that identify the owners of said property, [and] the identity of others who have information about the ownership of the [Colombian] property" for submission to Colombian tribunals); *see also In re Ferrer*, No. 18-20226-CIV-O'SULLIVAN, 2018 U.S. Dist. LEXIS 111172, at *12 (S.D. Fla. July 3, 2018) (finding that the Petitioners satisfied the "for use" factor because the Petitioners had the ability "to inject the requested information into a foreign proceeding" and the "requested discovery is 'something that will be employed as some advantage or serve some use in the proceeding.'").

Accordingly, this Court should grant Petitioners' Section 1782 application because the discovery sought is "for use" in a foreign proceeding, and there is no question that the Mexican courts will accept the discovery obtained in the United States through this process.

---

[137] Ex. A (Díaz Decl. ¶¶ 6, 7, 15, 19) & Ex. B (Bribiesca Decl. ¶¶ 7 – 9).

**D.       The Respondents Reside or Are Found in the Southern District of Florida.**

Petitioners seek discovery from Respondents, who reside in or have offices in Miami-Dade County, within the Southern District of Florida.[138]   Quinn Emanuel filed a Complaint in Miami-Dade County Circuit Court on July 14, 2023 on behalf of three of the Respondents and alleged that Respondents Gil White, Cañedo White, and Maria Clara Lloreda, the Personal Representative of the Estate of Williamson Nasi, all reside in Miami, Florida.[139]   Villegas Vargas also has a Miami address.   Both Quinn Emanuel and Axis Capital are registered to do business in Florida and maintain an office and agent for service of process in Miami-Dade County.   Here are the addresses and relevant details showing how each Respondent is found in or resides in the Southern District of Florida:

- **Gonzalo Gil White** – Addresses: 781 Crandon Blvd., Apt. 126 and 206, Key Biscayne, Florida, 33149;

- **Jose Antonio Cañedo White** – Addresses: 360 Ocean Drive #406S, Key Biscayne, Florida, 33149 and 960 Harbor Drive, Key Biscayne, Florida 33149;

- **Carlos Enrique Williamson Nasi** – Until his death, he was residing at the following address with his wife, Maria Clara Lloreda Williamson at 881 Ocean Drive, Unit 16H, Key Biscayne, Florida, 33149, where she currently resides. Records also show an address of 171 Cape Florida Drive, Key Biscayne, Florida 33149;

- **Miguel Angel Villegas Vargas** – Address: 55 Ocean Lane Drive, Apt. 3021, Key Biscayne, Florida, 33149;

- **Axis Capital Management, Inc.** is a Florida corporation located at 2121 Ponce de Leon Boulevard, Suite 1050, Coral Gables, Florida 33134;[140] and

---

[138] Ex. B (Bribiesca Decl. ¶¶ 16 –19); *see also* Ex. E (Axis Capital Annual Report); Exhibit G (Quinn Emanuel Annual Report).

[139] *See* Jose Antonio Cañedo-White et al. v. Alterna Capital Partners, LLC et al., Case No. 2023-019612-CA-01 (Fla. 11th Cir. Ct. Jul. 23, 2023) (DE 3); *see also* Composite Exhibit C.

[140] *See* Axis Capital Management, Inc. Sunbiz 2024 Annual Report at Exhibit E.

- **Quinn Emanuel Urquhart & Sullivan, LLP** is a California limited partnership that is registered to conduct business in the state of Florida with a registered agent, John O'Sullivan, in the district and a principal place of business in Miami located in 2601 South Bayshore Drive, Suite 1550, Miami Florida 33133.[141]

> **2024 FOREIGN LIMITED PARTNERSHIP ANNUAL REPORT**
> DOCUMENT# B21000000012
> **Entity Name:** QUINN EMANUEL URQUHART & SULLIVAN, LLP
> **Current Principal  Place of Business:**
> 2601 SOUTH BAYSHORE DR
> SUITE 1550
> MIAMI,  FL  33133
>
> **FILED**
> **Mar 02, 2024**
> **Secretary of State**
> **8655895794CC**

In addition, Quinn Emanuel maintains an office in Miami[142] and does business in Miami with 19 lawyers, including Francis Suarez, the Mayor of the City of Miami.[143]   Finally, Quinn Emanuel practices law in Miami-Dade County, including serving as counsel to three of the Respondents in recently-dismissed litigation against some of the Bondholders.[144]   Under these circumstances, there is no dispute that Quinn Emanuel is "found in" the Southern District of Florida.[145]

Accordingly, this Court has jurisdiction over Gil White, Maria Clara Lloreda as Personal Representative of the Estate of Williamson Nasi, Cañedo White, Villegas Vargas, Axis Capital, and Quinn Emanuel to order them to produce the requested discovery.   *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.").

---

[141] *See* Quinn Emanuel Sunbiz 2024 Annual Report at Exhibit G.

[142] *See* https://www.quinnemanuel.com/offices/miami/ (last accessed May 16, 2024).

[143] *See* Quinn Emanuel Miami Office Attorney Listing https://www.quinnemanuel.com/attorneys#byCountry=1757&byChar=all&byProfileType=&bySearch=&byOffice= 23993&byPracticeArea=&byLawClerk=&byAdp=&currentPage=1  (last accessed May 16, 2024).

[144] *See* Composite Exhibit C.

[145] *In re Kurbatova*, No. 18-mc-81554, 2019 U.S. Dist. LEXIS 84030 (S.D. Fla. May 17, 2019) (finding that Credit Suisse was "found in" the Southern District of Florida for purposes of Section 1782 even though it claimed not to have a physical office in the district but it maintained a registered agent to accept service of process in the district) (citing with approval *In re Edelman*, 295 F.3d 171 (2d Cir. 2002) (finding that physical presence in the jurisdiction is sufficient under Section 1782)); *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (finding the company was "found in" in the district for purposes of 1782 when the company both had an office and did business in the district); *In re Super Vitaminas, S.A.*, 2017 U.S. Dist. LEXIS 191845, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (finding that an office within the district satisfies the requirement; *In re TPK Touch Sols. (Xiamen) Inc.*, 2016 U.S. Dist. LEXIS 159681, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding subpoenaed party was "found" within the district because it maintained an in-district office).

## II.     THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF THE SECTION 1782 APPLICATION.

Petitioners' application also satisfies the discretionary factors outlined in the Supreme Court's decision in *Intel*. These factors are: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "whether the request is otherwise unduly intrusive or burdensome." *In re Clerici*, 481 F.3d at 1334 (11th Cir. 2007) (quoting *Intel*, 542 U.S. at 264–65) (internal quotations omitted).

### A.     The Respondents' Residency in the U.S., Where Mexican Courts Have No Jurisdiction, Weighs in Favor of the Section 1782 Application.

There are two classes of Respondents in this case: non-parties in the Mexican proceedings and parties who have refused to appear and participate in the proceedings by remaining outside the Court's jurisdiction. Axis Capital and Quinn Emanuel are non-parties to the Mexican criminal proceedings and bankruptcy proceedings[146] and any evidence in their possession is beyond the jurisdictional reach of the Mexican criminal and bankruptcy courts.[147] While foreign courts have jurisdiction over those appearing before it and can itself order them to produce evidence in most instances, non-parties "may be outside the foreign tribunal's jurisdictional reach" and "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*,

---

[146] Quinn Emanuel has been named as a party by a separate creditor, Puerto Real Service, S.S., in an ancillary bankruptcy proceeding in Mexico over the firm's unauthorized receipt of funds belonging to the bankruptcy estate. *See* Ex. A (Díaz Decl. ¶ 14, 55). The Petitioners are not parties to that proceeding and the proceeding is presently suspended pending the outcome of a letter rogatory to Quinn Emanuel. *Id.* Quinn Emanuel is not a party to the criminal proceedings.

[147] Ex. A (Díaz Decl. ¶ 16) & Ex. B (Bribiesca Decl. ¶ 9).

542 U.S. at 244.  Because neither Axis Capital nor Quinn Emanuel are parties to the Mexican proceedings involving the Petitioners, any discovery sought from these parties is beyond the jurisdictional reach of the Mexican courts.  Mr. Bribiesca confirmed that for the Mexican criminal proceedings, "[t]he documents and testimonies requested and which the Petitioners seek to have admitted as evidence in the criminal proceedings in which they are involved as complainants are beyond the reach of the Mexican courts, and therefore the only way to obtain them is through the Application"[148]  Similarly, Mr. Díaz confirmed that for the Mexican bankruptcy proceeding, "[t]he requested documents are beyond the reach of the Mexican courts, particularly the bankruptcy judge, and therefore, are not accessible without the aid of Section 1782."[149]

Gil White, Cañedo White, the Estate of Williamson Nasi, and Villegas Vargas are not parties to the Mexican bankruptcy proceeding.  Gil White, Cañedo White, Williamson Nasi, and Villegas Vargas are named in some of the criminal cases pending in Mexico, but they have not appeared in person in Mexico to answer the charges against them, choosing instead to remain in the United States.  Generally, "[a] foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence."  *See In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264).  Thus, Section 1782 discovery is typically less necessary when the requested evidence is held by a party to the foreign proceeding.  *Id.*  However, Gil White, Maria Clara Lloreda as Personal Representative of the Estate of Williamson Nasi, Cañedo White, and Villegas Vargas are located in the United States, not Mexico.  Indeed, upon learning about the pending Mexican criminal investigation against him, Gil White immediately fled to the United States.[150]

---

[148] Ex. B (Bribiesca Decl. ¶ 9).
[149] Ex. A (Díaz Decl. ¶ 16).
[150] Ex. B (Bribiesca Decl. ¶ 14).

Their residence in the United States creates an exception to this general principle.  Indeed, the Eleventh Circuit noted that when the evidence-holder "has left [the foreign jurisdiction] and the [foreign] [c]ourt cannot enforce its order against [him] directly while [he] is in the United States," the weight favors granting Section 1782 discovery. *Id.* at 1334–35.  In this case, a Mexican court has no jurisdiction to obtain documents and files, including emails, from individuals and companies that are located outside of Mexico.[151]  Accordingly, the residency of these individuals and companies in the United States, where Mexican courts have no jurisdiction over them, weigh in favor of Petitioner's requested discovery.  *See id.* (holding that this factor favored Petitioners pursuing Section 1782 discovery from a party in a Panama proceeding living in the United States); *see also In re Colombo Agroindústria S.A.*, 2023 U.S. Dist. LEXIS 134693, at *9 (S.D. Fla. July 24, 2023) (finding the *Intel* factors weigh in favor of granting assistance because the party to the Brazilian criminal case was living in the United States and the Brazilian court could not enforce its order against the party that resided in the United States).

B.    **The Mexican Criminal and Bankruptcy Courts Are Receptive to U.S. Judicial Assistance.**

Short of ". . . authoritative proof that a foreign tribunal would reject evidence obtained with the aid of a §1782[,]" federal courts have declined to find that foreign courts would not be receptive to discovery requests in Section 1782 cases.  *In re MTS Bank*,  2018 U.S. Dist. LEXIS 107147, at *18 (noting that a mere ". . .suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity"); *see also In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *5 (N.D. Cal. Nov. 2, 2016) ("The Court is unaware of any authoritative source suggesting the Arbitrazh Courts

---

[151] *See* Ex. B (Bribiesca Decl. ¶ 9).

would be unreceptive to the discovery RFB seeks").  Indeed, there is no threshold requirement that the evidence sought would be discoverable under the law governing the foreign proceeding. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. July 13, 2012).

Based on the sworn declarations submitted by criminal and bankruptcy attorneys in Mexico, both Mexican criminal and bankruptcy courts will accept evidence lawfully gathered abroad including by foreign courts or through foreign litigation. [152]  Mr. Díaz states, "The judge in the bankruptcy proceeding and the pending and ongoing ancillary proceedings may, under Mexican law, receive evidence obtained in the United States through this Section 1782 application, and may accept evidence obtained abroad, in the absence of any prohibition under Mexican law."[153]  Mr. Bribiesca also confirms that the criminal courts will accept the evidence, stating, "… although the prosecutors in charge of the investigation in Mexico would receive and be able to consider the evidence obtained in the United States, in order for it to be legal and evaluated by the Mexican courts, it will necessarily have to be obtained through the Application."[154]

Indeed, there are numerous cases demonstrating the receptivity of Mexican courts to U.S. court assistance in discovery. *See, e.g.*, *Bush v. Cardtronics, Inc.*, No. H-20-2642, 2020 U.S. Dist. LEXIS 197092, at *4 (S.D. Tex. Oct. 23, 2020); *Grupo Mex. Sab de CV*, No. 3:14-MC-00073-G-BH, 2014 U.S. Dist. LEXIS 198210, at *3 (N.D. Tex. Oct. 17, 2014); *In re Grupo Qumma, S.A.*, No. M 8-85, 2005 U.S. Dist. LEXIS 6898, at *3 (S.D.N.Y. Apr. 21, 2005).  In other words, the Mexican criminal and bankruptcy courts would accept relevant discovery regarding the Individual Respondents' alleged fraud and misappropriation of at least $27 million because the Mexican criminal proceeding is actively investigating these acts, and the Mexican *Concurso* court would

---

[152] Ex. A (Díaz Decl. ¶¶ 6, 7, 15) & Ex. B (Bribiesca Decl. ¶¶ 7 – 9).
[153] Ex. A (Díaz Decl. ¶ 7).
[154] Ex. B (Bribiesca Decl. ¶ 9).

find relevant any evidence relating to the funds dispersed in the bankruptcy proceeding to date, including whether such a dispersal came as a result of fraud to the Mexican *Concurso* court and the bankruptcy estate.[155]  The discovery is even more necessary because the Individual Respondents are fugitives in Mexico and have refused to appear for both the criminal and bankruptcy proceedings there.[156]

## C.  Petitioners' Application Does Not Circumvent Mexican Criminal and Bankruptcy Courts.

The Petitioners' application for discovery does not "attempt to circumvent" evidentiary restrictions of Mexican criminal courts, Mexican bankruptcy courts, or of the United States.  *See In re Clerici*, 481 F.3d at 1334 (noting this discretionary factor).   Rather, Petitioners are simply requesting U.S. judicial assistance in obtaining discovery that the Mexican criminal court and Mexican *Concurso* court would consider relevant and necessary in the active proceedings.[157]

Indeed, as Mexican criminal counsel explained in his affidavit, the evidence collected abroad must necessarily be obtained through this Application because the evidence must be obtained in conformity with the rules of the foreign jurisdiction, that is, the Federal Rules of Civil Procedure.[158]  Mr. Bribiesca stated that, "[i]t is considered that the 'only' parameter that a complainant has is that the evidence that they intend to present to the Public Prosecutor's Office (or to the trial), is in his possession or has been legally obtained by him. . . [T]he Mexican law (CNPP) does not limit the place where the evidence to be presented was obtained or collected, that is, if it was obtained in Mexico or abroad, but how it was obtained or collected, that is, if it was obtained in legally and without violation of rights -mainly privacy rights-, understood as legal, through the procedure of the place (country) where it was obtained. . . .Thus, the application of

---

[155] Ex. A (Díaz Decl. ¶ 6, 59 – 62); Ex. B (Bribiesca Decl. ¶¶ 44 – 80)
[156] Ex. A (Díaz Decl. ¶ 39); Ex. B (Bribiesca Decl. ¶¶ 14, 54).
[157] Ex. A (Díaz Decl. ¶¶ 6, 7, 15 – 19); Ex. B (Bribiesca Decl. ¶¶ 7 – 9).
[158] Ex. B (Bribiesca Decl. ¶¶ 7 – 9).

Title 28, United States Code, Section 1782 (the 'Application'), to obtain evidence in the Southern District of Florida is relevant."[159] As a result, Petitioners' request is not an attempt to preempt or contradict a foreign tribunal's decision because a Mexican criminal court would accept the discovery obtained in the United States from parties that are now outside of the Mexican criminal court's jurisdiction.[160]

The same is true in the context of the Mexican *Concurso* proceeding, which similarly requires that evidence submitted to it be lawfully obtained abroad.[161]  Mr. Díaz confirmed that, "[a]lthough there is no provision in Mexican law that expressly provides for the admissibility of evidence obtained abroad, the Code of Commerce establishes as a general rule that all evidence that may contribute to ascertaining the truth is admissible, provided that it has been obtained in a lawful manner and is not contrary to public policy. . . . Judicial precedents establish that evidence obtained abroad has validity or evidentiary value in Mexico, as long as it is proven that such evidence was obtained in accordance with the procedural rules of the country of origin …"[162]

### D.  The Petitioners' Application Seeks Only Relevant Evidence in Accordance with the Federal Rules of Civil Procedure.

Finally, Petitioners' application is tailored to seek only relevant evidence.  "[O]nce the [S]ection 1782 factors are met . . . the federal discovery rules . . . contain the relevant practices and procedures for the taking of testimony and the production of documents." *Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d at 1272 (quotation and citation omitted); *see also Vict., LLC*, 791 F. App'x at 815 (same).  Under a section 1782 discovery order, "[p]ursuant to Rule 26(b)(1)

---

[159] Ex. B (Bribiesca Decl. ¶¶ 7 – 8).
[160] Moreover, the Eleventh Circuit has held that "even when requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for §1782 discovery." *Halliwel Assets, Inc. v. Hornbeam Corp. (In re in re Bracha Found.)*, 663 F. App'x 755, 765 (11th Cir. 2016).
[161] Ex. A (Díaz Decl. ¶¶ 17, 19).
[162] *Id.*

of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents." *Id.* (quotation, brackets and citation omitted). The requests seek exactly that from the Respondents—nonprivileged testimonial and documentary evidence relating to the Individual Respondents' alleged misappropriation of at least $27 million from their operation of oil drilling rigs in Mexico.[163]  Because Petitioners' application is consistent with the requirements of the Federal Rules of Civil Procedure, the application should be granted.

## **CONCLUSION**

Petitioners respectfully request that the Court grant the Section 1782 application and permit the subpoenas attached as Exhibit F to be served on the Respondents.

Dated: May 17, 2024                                   Respectfully submitted,

**FRIDMAN FELS & SOTO, PLLC**
150 Alhambra Circle
Suite 715
Coral Gables, Florida 33134

By: */s/ Daniel S. Fridman*
Daniel S. Fridman, Esq.
Fla. Bar No. 176478
Anel Viamontes, Esq.
Fla. Bar No. 1018250

**Counsel for Petitioners**
**Oro Negro Primus Pte. Ltd.,**
**Oro Negro Laurus Pte. Ltd.,**
**Oro Negro Fortius Pte. Ltd.,**
**Oro Negro Decus Pte. Ltd.,**
**Oro Negro Impetus Pte. Ltd., and**
**Oro Negro Drilling Pte. Ltd.**

---

[163] *See* Ex. A (Díaz Decl. ¶ 67); Ex. B (Bribiesca Decl. ¶ 81); *see also* Ex. F (Subpoenas).