UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 24-CV-21926-ALTMAN/Sanchez

IN RE:

APPLICATION OF
ORO NEGRO PRIMUS PTE. LTD.,
ORO NEGRO LAURUS PTE. LTD.,
ORO NEGRO FORTIUS PTE. LTD.,
ORO NEGRO DECUS PTE. LTD.,
ORO NEGRO IMPETUS PTE. LTD., and
ORO NEGRO DRILLING PTE. LTD.
FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

　　　　Petitioners.

_____/

**PETITIONERS' MOTION TO CONTINUE BRIEFING SCHEDULE AND FOR LEAVE
TO TAKE EXPEDITED DISCOVERY AND FILE A MOTION TO DISQUALIFY**

*"Quinn Emanuel also does not intend to disclose its engagement agreements . . . unless the
Court rules in Petitioners' favor on the merits of that request."*

— E-mail from D. Needham, Quinn Emanuel, July 23, 2024

Quinn Emanuel denies that the Petitioners are its former clients, writing that, "Quinn

Emanuel has not conceded that Petitioners are a former client of the firm or that there is a

conflict." *See* Exhibit C, Email Communications Between D. Fridman and D. Needham.  This is a

180 from Quinn Emanuel's position at the status conference on June 18, 2024, where it stated,

"We did file a complaint in that case, and . . . we were taking the position that we represented the

petitioners." *See* Exhibit B, Transcript of Zoom Status Conference Hearing, at 11. Quinn

Emanuel has also refused to provide Petitioners with any engagement letters the Petitioners

signed with Quinn Emanuel before the law firm filed a bankruptcy adversary proceeding on their

behalf in 2021. *See* Ex. C. Although the Court gave Quinn Emanuel thirty days to analyze its conflicts issues, Quinn Emanuel cannot confirm whether it has a signed engagement letter with the Petitioners and will not do so unless ordered by the Court. *Id.*

Petitioners' concern with Quinn Emanuel's proposal to use Gelber Schachter & Greenberg, P.A. ("GSGPA") as conflicts counsel to represent the other Respondents is that Quinn Emanuel will not agree to put up an ethical wall between itself and GSGPA to prevent the sharing of confidential information about the Petitioners and to avoid the appearance of impropriety, which could result in GSGPA aiding and abetting Quinn Emanuel's conflict of interest and making it subject to disqualification itself. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) (disqualification was appropriate where the firm with actual knowledge of client confidences actively helped the other firm in advancing the lawsuit, such as by sending one of its associates to the other firm's office for six-and-a-half hours to assist in reviewing and revising a pleading). Quinn Emanuel and GSGPA refused a proposal by the Petitioners to simply wall off GSGPA and allow it to operate as independent counsel. As a result, Petitioners have no choice but to seek leave of court to conduct expedited discovery relating to Quinn Emanuel's representation as counsel to the Petitioners so that it may gather all the relevant facts to support a motion for disqualification.

Because there was a change in control of Petitioners' board of directors—which has been conclusively upheld by the Singaporean courts—Quinn Emanuel is in possession of all the records relating to its prior representation of the Petitioners. Before filing a motion for disqualification, Petitioners require the following discovery from Quinn Emanuel on an expedited basis:

- Engagement letters with the Petitioners, Respondents, and Oro Negro parents, subsidiaries, and affiliates.

- Whether Petitioners are a current or former client.

- Receipts of retainers and payments for legal services, including billing statements describing the work done.

- Ethical analysis and due diligence relating to representing the Petitioners.

- Identification of the individual(s) instructing or directing Quinn Emanuel's representation of the Petitioners, including communications with such individuals.

- Receipt of information relied on to represent the Petitioners in the adversary proceeding, including information received from directors and whether such information is confidential.

- Communications with other lawyers or law firms relating to Quinn Emanuel's representation of the Petitioners, including lawyers in Mexico.

As described below, these requests are targeted to cover the relevant facts Petitioners require to support a motion to disqualify Quinn Emanuel.

## FACTUAL BACKGROUND

**A.  Quinn Emanuel Filed an Adversary Proceeding in the Southern District of New York as Counsel to the Petitioners on March 9, 2021.**

The Petitioners are six Singaporean companies named Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd., and Oro Negro Impetus Pte. Ltd., (collectively, the "Rig Owners"), and their parent corporation Oro Negro Drilling Pte. Ltd. (together the "Petitioners").  On March 9, 2021, Quinn Emanuel filed an adversary proceeding in the United States Bankruptcy Court in the Southern District of New

York, as counsel to the Rig Owners and Oro Negro Drilling, alleging claims for conversion and unjust enrichment against the bondholders in the Oro Negro project. *See* Exhibit A, Oro Negro Bankruptcy Adversary Complaint.  The signature block was signed by lawyer Juan Morillo as counsel for the Petitioners:

> Respectfully submitted,
>
> QUINN EMANUEL URQUHART &
> SULLIVAN, LLP
>
> _____
> Juan P. Morillo (*pro hac vice*)
> Serafina Concannon
> 1300 I Street, NW, Suite 900
> Washington, D.C. 20005
> Telephone:  (202) 538-8000
> Facsimile:  (202) 538-8100
> Email:  juanmorillo@quinnemanuel.com
> Email:  serafinaconcannon@quinnemanuel.com
>
> Eric D. Winston (*pro hac vice*)
> 865 S. Figueroa St., 10th Floor
> Los Angeles, California  90017
> Telephone:  (213) 443-3000
> Facsimile:  (212) 443-3100
> Email:  ericwinston@quinnemanuel.com
>
> *Attorneys for Oro Negro Primus Pte., Ltd.; Oro*
> *Negro Laurus Pte., Ltd.; Oro Negro Fortius Pte.,*
> *Ltd.; Oro Negro Decus Pte., Ltd.; Oro Negro Impetus*
> *Pte., Ltd.; and Oro Negro Drilling Pte. Ltd.*

As the case caption and the signature block shows, this case was filed by Quinn Emanuel in the name of the Rig Owners and Oro Negro Drilling—the same companies as the Petitioners in this case.

The Section 1782 petition seeks discovery for use in pending Mexican criminal and bankruptcy cases being pursued by the Petitioners in Mexico. The discovery sought includes information about the factual basis for this adversary complaint Quinn Emanuel filed in the New York bankruptcy case, including: (1) communications with the Respondents relating to the adversary complaint, and (2) documents and communications relied upon in preparing specific allegations in the adversary complaint. *See* Composite Exhibit F of Pet'rs' Ex Parte Appl. for An

Order to Take Disc. Pursuant to 28 USC § 1782 (DE # 1) (the "Petition").  There should be no dispute that this Section 1782 petition is substantially related to the adversary proceeding in which Quinn Emanuel represented the Petitioners—except that Quinn Emanuel apparently disputes it now.

**B.      Quinn Emanuel Agreed at the Status Conference that it Represented the Petitioners When it Filed the Adversary Complaint in 2021.**

At the June 18, 2024 status conference, Petitioners raised their concerns about Quinn Emanuel's conflicts of interest in representing both itself and the other Respondents in this proceeding against its current or recently-former clients, the Petitioners. *See* Ex. B, Tr. at 7-9. The Court questioned Quinn Emanuel about whether it represented the Petitioners as recently as 2023 and Quinn Emanuel initially agreed:

> THE COURT: '23, okay, so very recently. And what -- would you say that -- let me just ask you then directly, Mr. Needham, would you say that you agree with Mr. Fridman that as of 2023 at least, Quinn Emanuel's representing the petitioners in that New York litigation?
>
> MR. NEEDHAM: We did file a complaint in that case, and -- sorry, I'm just trying to tab back to the Zoom -- and we were taking the position that we represented the petitioners, based on decisions in Mexico that were in favor of the company retaining control of the rig owners, and the bondholders took a different position, because they have decisions that are favorable to them in Singapore.
>
> …
>
> THE COURT: It does look like it was filed by Quinn Emanuel in March of 2021. I don't suppose there's any dispute about that.
>
> MR. HUMPHREY: No, Your Honor.

*Id.* at 11-12.

The Court issued an Order (DE # 18) requiring Quinn Emanuel to determine whether the Respondents would be represented by independent counsel and to update the court on the status of all conflict issues by July 18, 2024.

**C.     Quinn Emanuel Refused to Create an Ethical Wall with Conflicts Counsel, Is Contesting that Petitioners are a Former Client, and Refused to Provide an Engagement Letter.**

After the status conference, Quinn Emanuel waited until the day that its status report was due—July 18, 2024—to contact the Petitioners with a short, cryptic e-mail asking to know "by the end of the day" whether our "clients will consent to the other Respondents retaining conflicts counsel while our firm represents itself in response to Petitioners' discovery application." *See* Ex. C, at 8.

Counsel for the Petitioners responded the same day with seven important questions that needed to be answered about Quinn Emanuel's proposal as follows:

1.  We asked you during the hearing: Do you consider the Petitioners, Oro Negro Rig Owners and Oro Negro Drilling, to be Quinn Emanuel's current or former clients?  It is an important distinction because different rules of professional conduct apply to each situation.

2.  We asked you during the hearing:  Do you have an engagement letter between Quinn Emanuel and the Petitioners, Oro Negro Rig Owners and Oro Negro Drilling, for the adversary proceeding you filed as their counsel in the New York Bankruptcy case?  If not, please confirm you do not have it.  If so, please send me the engagement letter or any other engagement letter you contend covers that relationship between the Petitioners and Quinn Emanuel.

3.  Do you agree that Quinn Emanuel has a conflict of interest in representing the Respondents in light of its current or recently former representation of the Petitioners?

4.  Can you share the ethics opinion you received from independent counsel with

us?

5. Would the other non-Quinn Emanuel Respondents be represented by a single conflicts counsel or will they each have their own separate counsel, as the judge indicated was his preference?

6. You have asked whether we agree that Quinn Emanuel can represent itself. After the hearing last month, I asked you to send me legal authority are you relying on to support your position that Quinn Emanuel can represent itself in this matter.  Please send your authority and we will review it to give you our position.

7. What role would Quinn Emanuel play going forward with conflicts counsel for the Respondents?  Is Quinn Emanuel agreeing to an order finding that it is conflicted out and will be walled off from sharing information, ghost writing documents, and participating behind the scenes to assist conflicts counsel for the other Respondents?  Is your proposed use of conflicts counsel just for appearances or are you committing to being walled off from discussing the matter or coordinating with conflicts counsel?

*Id.* at 7. After sending these questions, counsel held a meet and confer call on July 18, 2024, before Respondents filed their court-ordered status report. During that call, Mr. Needham confirmed that Quinn Emanuel considered Petitioners to at least be former clients, although he could not pinpoint the date on which Petitioners ceased to be clients. Quinn Emanuel did not agree to put up an ethical wall between itself and conflicts counsel.

On July 22, 2024, Petitioners sent to Quinn Emanuel a proposal to resolve the conflicts issues backed up with supporting case law showing that conflicts can be imputed to conflicts counsel where, in the absence of an ethical wall, it works closely with conflicted counsel and confidential information is shared between them. *Id.* at 3-4. Petitioners' counsel proposed the following:

1. GSGPA represents all the Respondents, except for Quinn Emanuel, as independent counsel.

2. GSGPA agrees to be walled off from Quinn Emanuel and does not receive any information from Quinn Emanuel.

3. To the extent that Quinn Emanuel has in its possession documents and electronically stored information that belong to the Respondents, then GSGPA can receive those materials, as long as work product is not shared—such as document tags, lawyer comments, or memoranda analyzing the documents.

4. Quinn Emanuel will not be involved in preparing the Respondents for their depositions.

5. Quinn Emanuel will not be involved in responding to the document request subpoenas.

6. Quinn Emanuel will not ghost-write portions of the briefs for the Respondents, share research, or coordinate behind the scenes with GSGPA.

7. Quinn Emanuel will not assist GSGPA in any way to advance the Respondents' defense of the Section 1782 Petition.

*See id.* at 4-5.

In its response on July 23, 2024, Quinn Emanuel's position changed, and Mr. Needham wrote in an e-mail, "Quinn Emanuel has not conceded that Petitioners are a former client of the firm or that there is a conflict." *Id.* at 2. Quinn Emanuel refused to be walled off from conflicts counsel at GSGPA, insisting that the firm has no confidential information about the Petitioners "as a result of its alleged prior representation." *Id.* Finally, Quinn Emanuel refused to produce any engagement agreements unless ordered by the Court. *Id.*

Since the parties have been unable to agree to basic information that should not be in dispute, such as whether the Petitioners are a current or former client of Quinn Emanuel or whether an engagement letter exists, Petitioners need discovery in the form of documents and testimony focused on the issues surrounding Quinn Emanuel's conflicts of interest and disqualification.

<u>MEMORANDUM OF LAW</u>

**A. Petitioners Have the Burden of Proving Quinn Emanuel Should be Disqualified and GSGPA Should Be Subject to an Ethical Wall.**

"The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification." *Perez v. City of Hialeah*, 526 F. Supp. 3d 1304, 1312 (S.D. Fla. 2020) (internal quotation marks omitted) (*quoting Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 751 (11th Cir. 2006) (*citing In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003))). While "a party is presumptively entitled to the counsel of his choice, that right may be overridden [ ] if [a] compelling reason[ ] exist[s]." *In re BellSouth*, 334 F.3d at 961 (internal quotation marks and citations omitted). In other words, one's right to the counsel of their choice does not equate to an absolute freedom of said choice: "[counsel] must not have a conflict of interest with another party." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983).

"Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear . . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." *Herrmann*, 199 F. App'x at 752. The pertinent part of S.D. Fla. Local Rule 11.1(c) provides that "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar." Consequently, Florida law states, "[a]n order involving the disqualification of counsel must be tested against the standards imposed by the Rules of Professional Conduct." *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, No. 11-24432, 2012 WL 1534488, at *1 (S.D. Fla. Apr. 30, 2012) (*quoting Morse v. Clark*, 890 So. 2d 496, 497 (Fla. 5th DCA 2004) (*citing City of Lauderdale Lakes v. Enter. Leasing Co.*, 654 So. 2d 645 (Fla. 4th DCA 1995))).

Assuming that the Petitioners are former clients of Quinn Emanuel, Florida Bar Rule 4-1.9 would govern the ethical obligations of the law firm:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known....

R. Regulating the Fla. Bar 4-1.9. In interpreting Rule 4-1.9, Florida courts have concluded that, to succeed on a motion for disqualification under the rule, the movant must establish: "(1) an attorney—client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *State Farm Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991) (*citing Ford v. Piper Aircraft Corp.*, 436 So. 2d 305, 305 (Fla. 5th DCA 1983); *Sears, Roebuck & Co. v. Stansbury*, 374 So. 2d 1051, 1051 (Fla. 5th DCA 1979)).

Absent an ethical wall, Quinn Emanuel's conflict of interest can also be imputed to GSGPA, which runs the risk of being conflicted itself by aiding and abetting Quinn Emanuel's ethical violations against the Petitioners. The seminal case on this situation is *Fund of Funds, Ltd.*, 567 F.2d at 225. In that case, the two law firms at issue were Morgan Lewis & Bockius and Milgrim Thomajan & Jacobs. *Id.* at 227. Morgan Lewis had a conflict in the litigation because both the plaintiff and defendant were its existing clients. *Id.* Although it represented neither party

in the litigation, the firm played an "instrumental role" in selecting Milgrim Thomajan—its co-counsel in a previous case, and a firm with which it "maintained a close working relationship"—to represent the plaintiff, and even helped Milgrim Thomajan in advancing the suit. *Id.* at 229–230, 234. The Second Circuit found that Milgrim Thomajan served as Morgan Lewis's "understudy" and as an "extension of Morgan Lewis's continuing involvement in the underlying action," allowing Morgan Lewis to violate its fiduciary duty to the defendant "by indirection." *Id.* at 227, 233, 234. Moreover, Milgrim Thomajan accepted the retainer to represent the plaintiff "knowing of the Morgan firm's ethical dilemma."  *Id.* at 234. The Second Circuit reversed the district court's denial of the plaintiff's motion to disqualify Milgrim Thomajan. *Id.* at 227.

Other courts across the country analyzing similar facts have concluded that co-counsel can be subject to disqualification where it receives information or coordinates closely with the conflicted law firm.  *See, e.g., Long v. Lally*, No. 04-2200, 2005 U.S. Dist. LEXIS 4849, at *22 (E.D. La. Mar. 18, 2005) (disqualifying counsel and co-counsel because main counsel represented the defendants in conjunction with a cruise ship venture, which had a substantial relationship between the instant lawsuit and the former representation, and counsel and co-counsel share information in at least one instance about the present case); *Patriot Sci. Corp. v. Moore*, 178 F. App'x 18, 22-23 (Fed. Cir. 2006) (disqualifying both the principal law firm and legal consultant because the legal consultant, as former counsel to the defendant, supplied information to the principal law firm had been obtained from prior representation in a lawsuit adverse to the defendant); *Sumpter v. Hungerford*, No. 12-717, 2013 U.S. Dist. LEXIS 71119, at *38-40 (E.D. La. May 20, 2013) (disqualifying principal firm because the confidential information exchanged from the individual lawyer was imputed to the other members of the firm, and disqualifying local

counsel because the individual lawyer's involvement with main counsel has tainted local counsel);

*Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 4:07-cv-137-SEB-WGH, 2010 U.S. Dist.

LEXIS 32173, at *46 (S.D. Ind. Mar. 31, 2010) (disqualifying co-counsel by virtue of their status

as co-counsel to main counsel because co-counsel had access, actual or potential, to confidential

information main counsel had obtained in its former representation of defendant); *j2 Commc'ns*

*Inc. v. Captaris Inc.*, No. CV 09-04150 DDP (AJWx), 2012 U.S. Dist. LEXIS 179670, at *27-28

(C.D. Cal. Dec. 19, 2012) (C.D. Cal. Dec. 19, 2012) (disqualifying in-house counsel along with

tainted main counsel because there is an irrebuttable presumption that confidential information

was exchanged between in-house counsel and tainted main counsel relating to the pending patent

lawsuit); *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 74, 36 Cal. Rptr. 3d 922, 925

(2005) (disqualifying plaintiff's firm after it and the tainted outside counsel "briefly discussed the

case" and met with plaintiffs "a few times."); *In re Cal. Canners & Growers*, 74 B.R. 336, 348-50

(Bankr. N.D. Cal. 1987) (concluding that "participation in [another attorney's] breach is itself a

legally sufficient basis to disqualify" co-counsel).  It is important to remember that the individual

Respondents are not a uniform, monolithic group because only Gil White and Williamson Nasi

were former directors of the Petitioners. Some of them had other roles in other companies and

could not have been part of any group covering the Petitioners' attorney client privilege. The

discovery sought will help clarify these facts.

      As explained in more detail in the following sections, discovery is necessary because

Quinn Emanuel is in possession of the documents and testimony needed by the Petitioners to

meet its burden of proof.

### B.  Quinn Emanuel Has All the Documents Relevant to its Conflicts of Interest.

This case is unusual because the current management of the Petitioners does not have access to documents and information relating to Quinn Emanuel's representation of the companies. This case involves a change of control in the board of directors of the corporate entities that Quinn Emanuel recently represented. The prior board of directors of the Petitioners included only two of the Respondents—Gil White and Williamson Nasi, who passed away.[1] A final ruling issued in January 2024 in Singapore confirmed that the change in control of the board of directors was legal and valid, and it is presently being domesticated in Mexico.[2]

As a result of this change in control, the ownership of the attorney client privilege passed to the new, current board of directors. The authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). "The right to assert the attorney client privilege is an incident of control of the corporation and remains with the corporation as it undergoes mergers, takeovers, and name changes." *NCL Corp. v. Lone Star Bldg. Ctrs., Inc.*, 144 B.R. 170, 174 (S.D. Fla. 1992) (*citing Weintraub*).  In *Weintraub*, the Supreme Court held that a bankruptcy trustee had the power to assert or waive attorney client privilege and explained that in cases where a client is a corporation, when there is a change in control of the corporation, ownership of the privilege passes to the new management and does not remain with the former corporate management. The Supreme Court noted that "[d]isplaced managers may not assert

---

[1] Exhibit A of Petition (Daniel Díaz Decl. ¶ 41) (DE # 1).
[2] *See* Exhibit H of Petition (Singapore Court Judgments) (DE # 1); Exhibit A of Petition (Díaz Decl. ¶¶ 63 – 66) (DE # 1).

the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Id.*

Because there was a change in control of the Petitioners, the current board was never provided with any documents or information relating to Quinn Emanuel's prior representation of the companies. Presumably, that information remains in the hands of Quinn Emanuel. Accordingly, the Court should order Quinn Emanuel to turn over relevant documents and provide testimony that will enable the Petitioners to demonstrate that the law firm's conflicts of interest support its disqualification.

### C.  The Discovery Petitioners Seek is Relevant to Quinn Emanuel's Conflicts of Interest.

Quinn Emanuel should be ordered to respond to a portion of the subpoena for documents and the 30(b)(6) deposition topics included in the Section 1782 petition and attached to this motion as Exhibit D. Petitioners incorporated into their document subpoena and 30(b)(6) deposition topics several requests directed at Quinn Emanuel's representation of the Petitioners in the bankruptcy adversary proceeding. Those requests fall into the following categories:

- Engagement letters with the Petitioners, Respondents, and Oro Negro parents, subsidiaries, and affiliates (Doc. Requests: 1, 4;  30(b)(6) Topics: 12, 15).

- Whether Petitioners are a current or former client (30(b)(6) Topics: 1, 11).

- Receipt of retainers and payments for legal services, including billing statements describing the work done (Doc. Requests: 9, 13, 27, 29, 35;  30(b)(6) Topics: 11, 13, 19, 20, 31, 33, 37).

- Ethical analysis and due diligence relating to representing the Petitioners (Doc. Requests: 10;  30(b)(6) Topics: 21)

- Identification of the individual(s) instructing or directing Quinn Emanuel's representation of the Petitioners, including communications with such individuals (Doc. Requests: 5, 7;  30(b)(6) Topics: 16, 17)

- Receipt of information relied on to represent the Petitioners in the adversary proceeding, including information received from directors and whether such information is confidential: (Doc. Requests: 6, 15, 17, 18, 19, 20, 21, 22, 23, 24, 29, 38, 40 30(b)(6) Topics: 2, 5, 23, 25, 26, 27, 28, 29, 30, 38 (as it relates to the Petitioners))

- Communications with other lawyers or law firms relating to Quinn Emanuel's representation of the Petitioners, including lawyers in Mexico (Doc. Requests: 8; 30(b)(6) Topics: 18)

This list of document requests and corporate representative deposition topics covers the main elements needed to show an attorney-client relationship and the possession of confidential information by Quinn Emanuel. Petitioners request that the Court order Quinn Emanuel to respond to these enumerated requests.

To show why this information is important, the Court can consider examples of Quinn Emanuel's engagement letters that it produced in other proceedings. Two of Quinn Emanuel's engagement letters were filled by the Petitioners with the Section 1782 petition as Exhibit I (DE # 1). *See* Exhibit E. The first letter dated August 30, 2017 is an engagement letter between Quinn Emanuel and Integradora de Servicios Petroleros Oro Negro, which was formerly the corporate parent of the Petitioners. The second letter dated April 11, 2018 is an engagement between Quinn Emanuel and both Integradora and Perforadora Oro Negro in connection with the New York bankruptcy proceeding.

None of the engagement letters apply to or mention the Petitioners. To the contrary, Quinn Emanuel was clear in both letters that it did not represent any individuals or subsidiaries, writing, "Our engagement is on behalf of Oro Negro only.[3] In representing Oro Negro, we will not be representing any officer, director, employee, owner, founder, member, shareholder or partner of, or any other person affiliated with Oro Negro; or any subsidiary, parent or other affiliate of Oro Negro." *See* Ex. E, at 1. In fact, Quinn Emanuel specifically raised the issue of potential conflicts of interest in representing other individuals or companies in its engagement letter, writing, "If any of these persons or entities think that they may require counsel, we would be happy to discuss with them whether we might be able to represent them as well, but any such representation would need to be covered by a separate engagement letter, and would depend on a review by us and disclosure to all concerned of the conflicts of interest that would arise in connection with such representation, and on appropriate consents being obtained from Oro Negro and from those seeking such additional representation." *Id.* at 1-2.

Quinn Emanuel's engagement letters are extremely detailed and specifically define the identities of its clients and which individuals and entities are not clients. The letters also provide a warning about conflicts of interest and a procedure to address them. The fact that Quinn Emanuel has refused to produce a letter of its engagement by the Petitioners is odd. Quinn Emanuel should also produce engagement letters for each of the Respondents because the two letters clearly show that the individual directors were not considered clients.

---

[3] "Oro Negro" is defined as Integradora in the first letter and both Inegradora and Perforadora in the second letter.

The other categories of documents listed above are similarly relevant. Quinn Emanuel argued in its e-mail opposing an ethical wall between itself and GSGPA that it does not have confidential information about the Petitioners. This is hard to believe since the adversary complaint it filed on Petitioners' behalf appears to be based on documents and information Quinn Emanuel developed to support its allegations and comply with Rule 11. Since Petitioners do not have access to this information because of the change in control and Quinn Emanuel has placed its possession of confidential information at issue, Quinn Emanuel should produce the documents to the Petitioners.

**D. The Court Should Order Expedited Discovery.**

Quinn Emanuel appeared in this case on June 13, 2024 (DE # 12). The Court gave Quinn Emanuel 30 days after the June 18, 2024 status conference to resolve its conflicts issues, but Quinn Emanuel chose to adopt a half measure and to withhold relevant information from the Petitioners. To avoid excessive delay of this proceeding, Petitioners request that the Court order Quinn Emanuel to respond to the discovery proposed in this motion on an expedited basis and provide documents within 20 days and make their 30(b)(6) witness available for deposition within 10 days after the production of documents is completed.

Courts have both the authority and broad discretion to manage the timing of discovery, including shortening of discovery periods.  *See Gayle v. Meade*, No. 20-CV-21553-COOKE/GOODMAN, 2020 U.S. Dist. LEXIS 145406, at *8 (S.D. Fla. July 13, 2020); *see also Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001) (stating that district courts have ". . . broad discretion over the management of pre-trial activities, including discovery and scheduling."); *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015)

(noting that "[c]ontrol of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable.") (internal citation omitted).  The district court can order expedited discovery, including on motions for disqualification, upon a showing of good cause where the need for such expedited discovery outweighs the prejudice of the responding party.  *See, e.g.*, *Itmar Med. Ltd. v. NV*, No. 20-60719-CIV-DIMITROULEAS/SNOW, 2021 U.S. Dist. LEXIS 269338, at *6-7 (S.D. Fla. Sep. 29, 2021) (allowing expedited discovery by defendants in response to a motion for disqualification); *Loc. Access, LLC v. Peerless Network, Inc.*, No. 6:17-cv-236-Orl-40TBS, 2019 U.S. Dist. LEXIS 30821, at *4 (M.D. Fla. Feb. 27, 2019) (allowing discovery in support of a motion to disqualify against a law firm).

Courts consider the following factors to determine whether "good cause" has been shown: "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made." *Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-cv-202-Ftm-29SPC, 2013 U.S. Dist. LEXIS 66949, at *2 (M.D. Fla. May 10, 2013). Under these facts, the factors weigh in favor of expedited discovery.[4]

---

[4] Outside the context of expedited discovery, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). In assessing whether discovery sought is relevant and proportional, courts must consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

First, as this Court noted at the June 18, 2024 status conference, the issue of disqualification is a threshold issue that must be resolved before moving on to the merits of the 1782 application. *See* Ex. B, Tr. at 22.  A resolution of this issue will also determine whether Quinn Emanuel must be walled off from conflicts counsel at GSGPA. As a result, a prompt resolution of these issues will facilitate the Court and the parties reaching the merits of the Section 1782 petition.

Second, although there is no pending preliminary injunction, the discovery sought is limited only to the issues relating to the attorney-client relationship between Quinn Emanuel and the Petitioners and the matters that the Petitioners would need to prove to support disqualification.

Third, the discovery sought is not burdensome, and to the extent that Quinn Emanuel claims such a burden, it is one that is self-inflicted.  Counsel for Quinn Emanuel has backtracked after admitting to this Court at the June 18th status conference that it ". . . [was] taking the position that [it] represented the petitioners" and later retracting that position.  *See* Ex. B, Tr. at 11.  Indeed, Petitioners attempted to resolve this issue by proposing that Quinn Emanuel simply abide by an ethical wall between itself and GSGPA, but Quinn Emanuel refused and doubled down by denying that Petitioners were clients and refusing to provide an engagement letter.

Finally, no discovery has been taken in this case because of the pending disqualification issues. Until the threshold issue of disqualification is resolved, the merits of Petitioner's 1782 application will not be considered.  For all of these reasons, Petitioners have established good cause for seeking expedited discovery and a reasonable amount of time thereafter to file a formal motion to disqualify Quinn Emanuel.

### E.  The Court Should Continue the Section 1782 Briefing Schedule and Give the Petitioners a Reasonable Amount of Time to Brief Disqualification After the Discovery is Completed.

The deadline for Respondents to submit their motion to quash/deny the subpoenas is August 19, 2024 (DE # 18). Petitioners respectfully request that the Court continue the deadlines so that the Petitioners can take the discovery requested in this motion. Petitioners request that the Court give them up to 20 days after the completion of discovery to brief a motion to disqualify.

### CONCLUSION

Quinn Emanuel represented the Petitioners in a substantially related matter as recently as 2023. Although it agreed to have the other Respondents represented by conflicts counsel from GSGPA, Quinn Emanuel refused to agree to an ethical wall between itself and GSGPA to avoid sharing information and compounding its ethical conflicts of interest. As a result, Petitioners need expedited discovery to obtain information about Quinn Emanuel's prior representation of the Petitioners, such as engagement letters, billing and payment records, and confidential information. Since Petitioners went through a change of control, Petitioners hold the attorney client privilege with Quinn Emanuel but do not have the documents that Quinn Emanuel has. Petitioners propose that Quinn Emanuel produce documents as identified in this motion within 20 days and produce a 30(b)(6) witness on the topics identified in this motion 10 days later. Petitioners request 20 days after the completion of discovery to submit its motion to disqualify. Finally, the Court should continue the briefing schedule on the Section 1782 petition until the disqualification issues are resolved.

Dated: July 30, 2024                                    Respectfully submitted,

**FRIDMAN FELS & SOTO, PLLC**
150 Alhambra Circle
Suite 715
Coral Gables, Florida 33134

*By: /s/ Daniel S. Fridman*
Daniel S. Fridman, Esq.
Fla. Bar No. 176478
Anel Viamontes, Esq.
Fla. Bar No. 1018250

**Counsel for Petitioners**
**Oro Negro Primus Pte. Ltd.,**
**Oro Negro Laurus Pte. Ltd.,**
**Oro Negro Fortius Pte. Ltd.,**
**Oro Negro Decus Pte. Ltd.,**
**Oro Negro Impetus Pte. Ltd., and**
**Oro Negro Drilling Pte. Ltd.**

<u>**CERTIFICATE OF GOOD FAITH CONFERRAL**</u>

I HEREBY CERTIFY that on July 18, 23, and 26, counsel for Petitioners conferred with counsel for the Respondents in a good faith attempt to resolve the issues surrounding Quinn Emanuel's conflicts of interest and disqualification.

On July 18, 2024, Quinn Emanuel contacted Petitioners inquiring if our "client's would consent to the other Respondents retaining conflicts counsel while our firm represents itself in response to Petitioners' discovery application." Counsel for Petitioners responded on the same day, raising questions relating to Quinn Emanuel's proposal, including whether conflicts counsel would be subject to an ethical wall from Quinn Emanuel. Following this exchange, on that same day, counsel held a meet and confer call. During that call, Daniel Fridman, counsel for Petitioners, proposed that Quinn Emanuel put up an ethical wall between itself and conflicts

counsel. David Needham, counsel for Quinn Emanuel, did not agree that Quinn Emanuel had to put up an ethical wall between itself and conflicts counsel.

On July 22, 2024, counsel for Petitioners sent a written proposal to Quinn Emanuel and Gelber Schachter & Greenberg, P.A. ("GSGPA") via e-mail outlining the terms that Petitioners would deem acceptable to resolve the issues surrounding Quinn Emanuel's conflicts of interest and disqualification. In response, on July 23, 2024, both Quinn Emanuel and GSGPA rejected the proposal. We conferred by e-mail with Quinn Emanuel and GSGPA on July 25, 2024 about filing this motion to continue the briefing schedule and to brief a motion to disqualify. Quinn Emanuel responded that it opposes any motion to disqualify and takes no position on the motion to continue. On July 30, 2024 at 8:18 am counsel for the Petitioners asked for Respondents' position on Petitioners seeking expedited discovery and offered to discuss it on a call. Respondents wrote back in the evening, "Dan, we're still conferring and will get back to you. If you have a motion you want to file before you have our position, you can do that and we will still try to resolve it consensually." Petitioners will promptly inform the Court if a resolution to the motion is reached.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 30, 2024, I electronically filed the above document with the Clerk of the Court using CM/ECF. I also certify that the document is being served this day on all counsel of record.

By: */s/ Daniel S. Fridman*
Daniel S. Fridman, Esq.