# EXHIBIT E

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8174**

WRITER'S EMAIL ADDRESS
juanmorillo@quinnemanuel.com

August 30, 2017

**ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT
PRIVILEGED & CONFIDENTIAL**

**VIA E-MAIL**

Integradora de Servicios Petroleros Oro Negro S.A.P.I. de C.V.
Javier Barros Sierra 540, Of. 103,
Park Plaza Torre 1, Col. Santa Fe
México D.F., C.P. 01210
Attn: Gonzalo Gil-White, Chief Executive Officer

Re:     Engagement Agreement

Estimado Gonzalo:

We are pleased to confirm your engagement of Quinn Emanuel Urquhart & Sullivan, LLP ("QEU&S") as counsel to represent Integradora de Servicios Petroleros Oro Negro S.A.P.I. de C.V. ("Oro Negro") in connection with ongoing and/or potential litigation against or initiated by the Mexican government, Petroleos Mexicanos ("Pemex"), and/or its subsidiaries and affiliates, and/or bondholders of Oro Negro and/or its subsidiaries, affiliates, employees or agents (the "Engagement"). The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services to Oro Negro in connection with the Engagement. We believe that a mutual understanding of these terms and conditions at the outset is fundamental to establishing a good working relationship. In this engagement letter, we sometimes refer to Oro Negro as "you" or "your" and to QEU&S as "we," "our" or "us."

*Client*

Our engagement is on behalf of Oro Negro only. In representing Oro Negro, we will not be representing any officer, director, employee, owner, founder, member, shareholder or partner of, or any other person affiliated with Oro Negro; or any subsidiary, parent or other affiliate of Oro Negro. If any of these persons or entities think that they may require counsel, we would be happy to discuss with them whether we might be able to represent them as well, but any such

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

representation would need to be covered by a separate engagement letter, and would depend on a review by us and disclosure to all concerned of the conflicts of interest that would arise in connection with any such concurrent representation, and on appropriate consents being obtained from Oro Negro and from those seeking such additional representation.

### *Scope of Engagement*

You have engaged QEU&S to represent you in connection with the Engagement. QEU&S's services will be limited to the representation of Oro Negro in the Engagement. Our services will not extend to other business, personal or legal affairs of Oro Negro, or to any other aspect of Oro Negro's activities. Our representation will conclude with the settlement of the case or entry of an award or judgment or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. Our engagement does not include the defense or prosecution of an appeal. If an appeal is appropriate and if we agree to represent Oro Negro's in the appeal, we reserve the right to enter into a separate agreement for that representation. QEU&S's receipt or use of confidential or other information from Oro Negro or others in the course of this representation does not mean that QEU&S will render any other advice or services either to Oro Negro or any other person or entity. Similarly, Oro Negro will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom Oro Negro may be dealing.

### *Insurance Coverage and Claims*

Oro Negro understands and agrees that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If Oro Negro has not done so already, Oro Negro should consider tendering this matter to Oro Negro's insurer(s), including [e.g., directors, officers, errors and omissions, professional liability, comprehensive general liability, workers' compensation, homeowner's liability, umbrella liability] carriers, in order to determine whether there is insurance coverage for any of the claims asserted.

### *Responsible Persons – Communications Between QEU&S and Oro Negro*

We will keep Oro Negro regularly and currently informed of the status of the Engagement and will consult with you whenever appropriate. Within QEU&S, I will be primarily responsible for the Engagement and will be actively involved in the preparation of the case and any trial. My office telephone number and e-mail address are (202) 538-8174 and juanmorillo@quinnemanuel.com. In the event that you need to reach me and I am unavailable, please leave a voicemail message for me. It is my policy that all calls will be returned promptly

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again.

### *Protection of Client Confidences -- High Tech Communication Devices*

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences. We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person. Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement. Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections. Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

**[NOTE:  If client is not an individual, also include the following, modified as appropriate:**

### *Oro Negro's Designee to Receive Communications*

We understand that you have designated Gonzalo Gil-White ("Mr. Gil") as the person who is primarily responsible for managing the Engagement within Oro Negro and that he is authorized to direct our activities and deal with us on any issues relating to the Engagement, including billing. Unless otherwise directed by Oro Negro, we shall fulfill our obligation to Oro Negro to keep Oro Negro informed as to the progress of the Engagement by communicating with Mr. Gil and by keeping Mr. Gil so informed, and it shall be the obligation of Mr. Gil to communicate with all others within Oro Negro regarding the progress of the Engagement.

### *Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "General Counsel"). The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients. Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters. QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm. It is possible that attorneys or staff working on matters for Oro Negro may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of Oro Negro. In



the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning Oro Negro's representation, and may receive legal advice related to QEU&S's work on Oro Negro's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place. By retaining QEU&S Oro Negro acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of Oro Negro and after such representation ends, and Oro Negro confirms that such communications are privileged and protected against disclosure to you.

### Responsibilities of Client

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments. In addition, it is essential that Oro Negro and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("ESI"), is an essential prerequisite to the development of a successful litigation strategy for every client. Because the duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and because the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you/your action being dismissed), we have prepared a written guideline explaining in detail these rules, their operation, and the consequences of failing to adhere to them. In the event Oro Negro has not already issued a litigation hold in this matter, we request that you immediately do so, consistent with the attached guidelines.

If you have any questions about the guidelines after you read them, please call us.

### No Guarantee of Result

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. We cannot and do not guarantee any particular course or outcome of the Engagement.

PRIVILEGED & CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

### Future Conflicts of Interest

Our firm has many lawyers and several offices.  We may currently or in the future represent one or more other clients in matters involving Oro Negro and we may represent the parties that are adverse to you in this matter in other unrelated matters.  We are undertaking this Engagement on condition that Oro Negro gives its express consent and agreement that we may represent other clients, including the parties adverse to you in this matter, in the future in other matters in which we do not represent Oro Negro even if the interests of the other clients are adverse to Oro Negro (including the appearance on behalf of another client adverse to Oro Negro in an unrelated negotiation, litigation or arbitration), provided that the other matter is not substantially related to our representation of Oro Negro and that in the course of representing Oro Negro we have not obtained confidential information from Oro Negro material to the representation of the other clients.

The above conflict waiver waives possible conflicts based on future facts and circumstances that cannot be known at this time.

The countersignature to this letter on behalf of Oro Negro also acknowledges that we have made disclosure to Oro Negro that, notwithstanding Oro Negro's consent to the conflict waiver set forth herein, it is possible that we might be required to withdraw or be disqualified from representing Oro Negro by reason of our representation of another client.

### Billing

Our fees are based on the amount of time we spend on this Engagement.  Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate.  These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect.  In addition, our associate rates are based on years out of law school, so annually their rates move up to the next higher class rate on our rate schedule.  These "class graduation" adjustments are not rate increases.  If one of our professionals performs multiple tasks for Oro Negro during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing."  You agree that we may block bill.

### Estimates

Oro Negro understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter.  From time to time during the course of our Engagement we may provide Oro Negro with estimates of costs and fees or projected budgets for our work going forward.  Ordinarily, we do not provide these projections unless Oro Negro specifically requests us to do so.  When we do provide them, we will make a good faith effort to estimate

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

what the future cost will be.  However, in no case can such projections be guarantees regarding what the actual cost will be.  The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation.  In all instances when we provide such projections, they should be viewed as guidance only.  The fees and costs which Oro Negro will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

### *Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing.  We pass along out-of-pocket costs and charges that we incur on our clients' behalf.  These typically include messenger charges, deposition videography and transcript charges and administrative charges.  Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.03/page), Viewpoint search and culling $50-$150/GB), EDD ($325-625/GB), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.28-$1.50/document), hosting ($25/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed.  Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on Oro Negro's behalf, and similar charges.  Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case.  These charges will be at cost. The costs listed are the current rates but may be subject to future adjustment.  You agree that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to Oro Negro for payment, which will also be due and payable upon receipt.  Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event Oro Negro has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, Oro Negro agrees that the terms of this Engagement Letter shall apply unless a copy of Oro Negro's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event Oro Negro's billing guidelines shall control.

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

We will submit bills on a monthly basis. All bills shall be paid promptly by Oro Negro. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due. Additionally, QEU&S reserves the right to void any discounts on rates, ancillary costs or otherwise, if invoices are not timely paid by Oro Negro. If Oro Negro has any question regarding, or wish to challenge any bill, Oro Negro shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge.

### Our Lien On Any Recovery You Obtain

Oro Negro hereby grants us a lien as security for the payment of fees and costs due and owing to us under this agreement. This lien will attach to any recovery Oro Negro may obtain, whether by arbitration award, judgment, settlement or otherwise, in connection with the Engagement, and we may use this lien to enforce our right of payment. This lien entitles us to be paid first and before any payment can be made to you. The lien allows us to compel payment of our unpaid fees, interest, costs, advances and expenses. The lien is intended to remain valid even if for any reason we no longer represent you in this matter. The lien could delay payments to Oro Negro or receipt by Oro Negro of some or all of any recovery Oro Negro may obtain as a result of our services until any dispute over the amounts to be paid to us is resolved. You also authorize us to make disclosure of the lien when such is necessary to enforce our rights and interests.

Oro Negro may seek the advice of an independent lawyer of your choice about this lien provision and its consequences. Oro Negro also has the right to ask us questions about our understanding of the lien. By signing this agreement Oro Negro acknowledges that Oro Negro has been advised of the terms of this lien agreement and of Oro Negro's right to consult independent counsel. Oro Negro also acknowledges that Oro Negro has been given a reasonable opportunity both to seek such advice and to ask us any questions that you may have prior to signing.

### Award of Costs and Fees

A court may sometimes order a payment of costs or attorneys' fees by one party to the other. If any fees or costs are paid to us, they will be credited against any amounts Oro Negro owes us, but Oro Negro will be obligated for any unpaid portion of our statements as they become due. Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award. Any fee or cost award received from another party will be credited to Oro Negro's account, unless it results in a credit balance. If it does, we will refund the balance to Oro Negro. If a court awards fees or costs against Oro Negro and in favor of an opposing party, Oro Negro will be responsible for payment of that amount separately from any amounts due to us.

PRIVILEGED & CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGE
ATTORNEY WORK PRODUCT

*Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn or Bill Urquhart in our Los Angeles office at (213) 443-3000, to discuss it. You may terminate this representation at any time, with or without cause. Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical. Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

*Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is the date on which we first performed services. The date at the beginning of this letter is for reference only. If this letter is not signed and returned for any reason, Oro Negro will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on Oro Negro's behalf.

QEU&S's representation of Oro Negro will be considered terminated at the earliest of (i) Oro Negro's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

*File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement. Oro Negro's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees. QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format. It is our practice to retain the permanent records of the matter, in accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended. If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

### *Other Litigation or Proceedings*

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving Oro Negro or related persons or entities, Oro Negro shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates). Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of Oro Negro in this matter (including unmeritorious disqualification proceedings), Oro Negro agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result. This paragraph is not intended to apply to any claim brought by or on behalf of Oro Negro alleging wrongdoing by QEU&S.

### *Arbitration*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, we believe that most, if not all, disputes can be resolved more expeditiously and with less expense by binding arbitration than in court. This provision will explain under what circumstances such disputes shall be subject to binding arbitration.

NEW YORK AGREEMENT TO ARBITRATE:

(a)    Any dispute between QEU&S and Oro Negro as to attorneys' fees and/or costs in connection with the Engagement shall be resolved as follows:

1.    By signing this Engagement Letter, Oro Negro acknowledges that it has been provided a copy of the official written instructions and procedures for the fee arbitration program under Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR § 137) (the "Section 137 Arbitration Program"), and the rules and procedures in effect in the First Department. Oro Negro understands that not all disputes as to attorneys' fees and/or costs may be subject to the Section 137 Arbitration Program.

2.    By signing this Engagement Letter, Oro Negro acknowledges that it has been advised that (1) it has the right to use the fee arbitration procedures of Part 137, which includes the right to reject the arbitrator(s) award by commencing an action on the merits (trial de novo) in a court of law; (2) in the absence of this agreement, it would have the right to choose whether or not to participate in this program; and (3) signing this Engagement Letter does not foreclose the parties' attempting to resolve this fee dispute at any time through voluntary mediation.

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

3.      By signing this Engagement Letter, Oro Negro acknowledges that it has had any questions answered concerning the applicability of the Section 137 Arbitration Program to any potential disputes.

4.      Oro Negro and QEU&S agree that they will resolve any fee dispute by arbitration before an arbitral forum outside of the Section 137 Arbitration Program, and that the arbitration shall be governed by the rules and procedures as outlined in ¶ (b) below.

Any other dispute arising in connection with the Engagement or with the provision of legal services by QEU&S including, without limitation, any claim for breach of contract, professional negligence or breach of a fiduciary duty, shall be resolved by confidential, binding arbitration as described in ¶ (b) below.

Oro Negro further acknowledges that this agreement to arbitrate results in a waiver of Oro Negro's right to a court or jury trial for any fee dispute and malpractice claim.  This also means that Oro Negro may be giving up its right to discovery and appeal, to compel witnesses and documents, to seek all available relief (except punitive damages which are provided for under state law), and to have the matter heard in a public forum.  If Oro Negro later refuses to submit to arbitration, Oro Negro may be ordered to do so.  Oro Negro acknowledges that, before signing this Engagement Letter and agreeing to binding arbitration, Oro Negro is entitled to, and has been given, a reasonable opportunity to seek the advice of independent counsel.

(b)      ARBITRATION PROCEDURES:

In the event of any dispute that is subject to arbitration pursuant to ¶ (a) above, the initiating party will provide a written demand for arbitration to the other party setting forth the basis of the initiating party's claim and the dollar amount of damages sought.

The parties further agree that, if arbitration is necessary, each arbitration will:

1.      Be heard and determined by a panel of three arbitrators (all of whom will be retired state or federal judges with at least five years judicial experience), with one selected by each party to the arbitration, and the third selected by the first two from the panel of arbitrators of JAMS (or its successor);

2.      Take place in the city in the United States where the QEU&S attorneys who spent the most time on the Engagement are located (the "applicable city");

3.      Be conducted in accordance with JAMS Streamlined Arbitration Rules and Procedures (or any successor rules and procedures), in effect at the time the initiating party delivers to the other party the demand for arbitration required hereunder;

4.      Require the arbitrators to enforce the terms of this agreement, and they will lack authority to do otherwise;

5.      Apply the laws of the jurisdiction in the United States where the applicable city is located.  The arbitration proceedings and the decision of the arbitrator will be confidential. Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator; and

6.      Be final and binding on both parties, will not be subject to de novo review, and that no appeal may be taken.  The ruling of the arbitrator(s) may be entered and enforced as a judgment by a court of competent jurisdiction.  The arbitration provisions of this Agreement may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses.

*Binding Agreement*

By signing below, Oro Negro agrees that Oro Negro has had enough time to review this letter, that we have advised you that Oro Negro has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which Oro Negro may wish to avail itself of such advice, and that Oro Negro is satisfied that it understands this letter.  Oro Negro also agrees that Oro Negro has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that Oro Negro has freely determined, without any duress, to sign and agree to these terms.

*Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction of the State of [_____], such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

*Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

If Oro Negro later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

I am enclosing two executed copies of this letter. If the foregoing accurately reflects our agreement, please confirm that by signing and returning one of the enclosed copies to me. Please do not hesitate to call me to discuss any questions you may have regarding this agreement. In conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

STATEMENT TO BE SIGNED BY CLIENT:

I have read the above Engagement Letter and understand and agree to its contents. The parties to this engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

Integradora de Servicios Petroleros Oro Negro S.A.P.I. de C.V.

By: _____

Name: _Alonso Del Val_____

Title: _Chief Legal Counsel_____

Date: _10/02/2017_____

Very truly yours,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Juan P. Morillo

**quinn emanuel**  trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8174**

WRITER'S EMAIL ADDRESS
**juanmorillo@quinnemanuel.com**

April 11, 2018

**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGE**
**ATTORNEY WORK PRODUCT**

**VIA E-MAIL**
**GGIL@AXISCAPITAL.COM.MX**
**ADELVAL@ORONEGRO.COM**

Integradora de Servicios Petroleros Oro Negro S.A.P.I. de C.V.
Perforadora Oro Negro, S. de R.L. de C.V.
Javier Barros Sierra 540
Of.103, Park Plaza Torre 1
Col. Santa Fe, Álvaro Obregón México D.F. 01210

Attention:
Gonzalo Gil-White, Chief Executive Officer
Alonso Del Val Echeverria, Chief Legal Counsel

Re:    Engagement Agreement

Estimados Gonzalo and Alonso:

We are pleased to confirm your engagement of Quinn Emanuel Urquhart & Sullivan, LLP ("QEU&S") as counsel to represent Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora Oro Negro") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora Oro Negro") (together "Oro Negro") in connection with actions under the U.S. Bankruptcy Code (the "Bankruptcy Code") (the "Engagement"). The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services to Oro Negro in connection with the Engagement. We believe that a mutual understanding of these terms and conditions at the outset is fundamental to establishing a good working relationship. In this engagement letter, we sometimes refer to Oro Negro as "you" or "your" and to QEU&S as "we," "our" or "us."

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Oro Negro:  Engagement Agreement<br>
April 11, 2018

### Client

Our engagement is on behalf of Oro Negro only.  In representing Oro Negro, we will not be representing any officer, director, employee, owner, founder, member, shareholder or partner of, or any other person affiliated with Oro Negro; or any subsidiary, parent or other affiliate of Oro Negro.  If any of these persons or entities think that they may require counsel, we would be happy to discuss with them whether we might be able to represent them as well, but any such representation would need to be covered by a separate engagement letter, and would depend on a review by us and disclosure to all concerned of the conflicts of interest that would arise in connection with any such concurrent representation, and on appropriate consents being obtained from Oro Negro and from those seeking such additional representation.

Each of Integradora Oro Negro or Perforadora Oro Negro hereby irrevocably appoints each of Gonzalo Gil-White ("Mr. Gil") and José Antonio Cañedo-White ("Mr. Cañedo") as its agents to deliver, jointly or individually, any instruction or notice in connection with this Engagement, including the retainer and the escrow.  QEU&S here irrevocably agrees to follow the instructions of each of Mr. Gil and Mr. Cañedo despite of any instruction in contrary of either Integradora Oro Negro or Perforadora Oro Negro, the board or management of Integradora Oro Negro or Perforadora Oro Negro or any other person whatsoever and to disregard the instructions delivered to us by any other person acting or pretending to act on behalf of Integradora Oro Negro, Perforadora Oro Negro or any other person whatsoever; provided that, in any event, our Client shall only be Oro Negro.

### Scope of Engagement

You have engaged QEU&S to represent you in connection with the Engagement.  QEU&S's services will be limited to the representation of Oro Negro in the Engagement.  Unless otherwise agreed, our services will not extend to other business, personal or legal affairs of Oro Negro, or to any other aspect of Oro Negro's activities.  Our representation will conclude with the settlement of the case or entry of an award or judgment or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter.  Our engagement does not include the defense or prosecution of an appeal.  If an appeal is appropriate and if we agree to represent Oro Negro's in the appeal, we reserve the right to enter into a separate agreement for that representation.  QEU&S's receipt or use of confidential or other information from Oro Negro or others in the course of this representation does not mean that QEU&S will render any other advice or services either to Oro Negro or any other person or entity.  Similarly, Oro Negro will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom Oro Negro may be dealing.

### Insurance Coverage and Claims

Oro Negro understands and agrees that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or

2

Oro Negro:  Engagement Agreement
April 11, 2018

to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement.  If Oro Negro has not done so already, Oro Negro should consider tendering this matter to Oro Negro's insurer(s), including carriers, in order to determine whether there is insurance coverage for any of the claims asserted.

### Responsible Persons – Communications Between QEU&S and Oro Negro

We will keep Oro Negro regularly and currently informed of the status of the Engagement and will consult with you whenever appropriate.  Within QEU&S, I will be primarily responsible for the Engagement.   My office telephone number and e-mail address are (202) 538-8174 and juanmorillo@quinnemanuel.com.  In the event that you need to reach me and I am unavailable, please leave a voicemail message for me.  It is my policy that all calls will be returned promptly and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again.

### Protection of Client Confidences – High Tech Communication Devices

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences.  We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person.  Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement. Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections.  Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

### Oro Negro's Designee to Receive Communications

We understand that you have designated Mr. Gil and Mr. Alonso del Val ("Mr. Del Val") as the persons who are primarily responsible for managing the Engagement within Oro Negro and that each of them is authorized to direct our activities and deal with us on any issues relating to the Engagement, including billing.  Unless otherwise directed by Oro Negro, we shall fulfill our obligation to Oro Negro to keep Oro Negro informed as to the progress of the Engagement by communicating with Mr. Gil and Mr. Del Val and by keeping Mr. Gil and Mr. Del Val so informed, and it shall be the obligation of Mr. Gil and Mr. del Val to communicate with all others within Oro Negro regarding the progress of the Engagement.

Oro Negro:  Engagement Agreement
April 11, 2018

*Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "General Counsel").  The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients.  Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters.  QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm.  It is possible that attorneys or staff working on matters for Oro Negro may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of Oro Negro. In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning Oro Negro's representation, and may receive legal advice related to QEU&S's work on Oro Negro's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place.  By retaining QEU&S Oro Negro acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of Oro Negro and after such representation ends, and Oro Negro confirms that such communications are privileged and protected against disclosure to you.

*Responsibilities of Client*

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments.  In addition, it is vital that Oro Negro and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel.  An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("ESI"), is an essential prerequisite to the development of a successful litigation strategy for every client.  Because the duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and because the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to your action being dismissed), we have prepared a written guideline explaining in detail these rules, their operation, and the consequences of failing to adhere to them.  In the event Oro Negro has not already issued a litigation hold in this matter, we request that you immediately do so, consistent with the attached guidelines.

If you have any questions about the guidelines after you read them, please call us.

Oro Negro:  Engagement Agreement
April 11, 2018

### No Guarantee of Result

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated.  You understand that any such statements are opinions and beliefs only and are not promises or guaranties.  We cannot and do not guarantee any particular course or outcome of the Engagement.

### Joint Representation

To save legal fees and to present a unified case, we are, at Integradora Oro Negro and Perforadora Oro Negro's request, representing both Integradora Oro Negro and Perforadora Oro Negro in this matter.  Based on the information Integradora Oro Negro and Perforadora Oro Negro  have given us, we are not aware of any conflict of interest that would preclude us from representing both parties (together, "Clients").

Each of the Clients has the right to retain separate counsel.  However, the Clients have agreed that joint representation by QEU&S is currently the most appropriate option for them.  In this regard, each Client acknowledges that it understands and accepts the following considerations and risks associated with a joint representation.  Each Client should discuss the following considerations and risks, and any other questions or concerns each Client may have, with each Client's own separate legal counsel, to make sure that each Client is comfortable with participating in this joint representation.

1.        Confidentiality and Privilege.  In a joint representation, each of the participating Clients is entitled to know what any of the other Clients has told us, as well as what we have learned from third parties in connection with the representation.  As among the jointly represented Clients, there is no privileged or confidential information concerning matters within the scope of the representation.  Each Client's communications to us in the course of the joint representation will generally be privileged as to third parties.  Although we are bound to protect the confidences of each Client from disclosure to third parties, such protection does not apply vis-à-vis the other jointly represented Clients.  In a joint representation such as this, all confidences are shared confidences because we owe a duty to keep each Client informed throughout the course of the representation.  In addition, as a general matter, each jointly represented Client is obliged to protect the confidences of the other jointly represented Clients from disclosure to third parties.  However, if a dispute were to arise between any of the jointly represented Clients, information communicated in the course of the joint representation would not be privileged or confidential in a proceeding to resolve the dispute.

2.        Conflicts and Possible Withdrawal by QEU&S or Client.  Joint representation requires that all participating Clients take common positions as to all issues.  As counsel to a group of jointly represented Clients, QEU&S cannot take inconsistent positions for different members of the group.  There is always the potential that the individual interests of one Client may not be the

5

Oro Negro:  Engagement Agreement
April 11, 2018

same as the interests of the other Clients.  This could result in the need for some or all of the Clients to retain new counsel.

Based on our present understanding of the facts and the issues in the Engagement, we do not now expect a divergence of interests to occur between the Clients, but it is possible that this could change.  If a divergence or conflict of interest were to arise between the Clients, we would not be able to continue representing any of them unless all the Clients consented.  Depending on the nature of the divergence or conflict, it might be possible for QEU&S to continue representing each Client, provided that each gave consent.  However, even with such consent, there could be circumstances that render it inappropriate for QEU&S to continue representing any of the Clients.

If, due to a divergence or conflict of interest, it were necessary for one of the Clients ("Client A") to be separately represented, the other ("Client B") could only continue to be represented by QEU&S if Client A consented.  Similarly, Client A could only continue to be represented by QEU&S if Client B consented.  In either case, the consent would have to include: (a) the former Client's agreement that all information provided by the former Client to QEU&S prior to its withdrawal from the representation of the former Client may be used in the representation of the continuing Client(s); and (b) each former Client's agreement that it will not seek to disqualify QEU&S from continuing to represent the continuing Client(s).

There is also the possibility that a Client may choose to withdraw from the joint representation under circumstances where there is not a divergence or conflict of interest that necessitates separate representation of the withdrawing Client.  This should not interfere with our ability to continue to represent the remaining Client(s).  Accordingly, each Client understands and agrees that in the event it withdraws from the joint representation under such circumstances, it hereby:  (a) consents to our continuing representation of the remaining Client(s); (b) agrees that all information provided to QEU&S prior to the Client's withdrawal from the joint representation may be used in the representation of the remaining Client(s); and (c) agrees that the Client will not seek to disqualify QEU&S from continuing to represent the remaining Client(s).

The countersignature to this letter on behalf of Oro Negro constitutes Oro Negro's agreement that we have made disclosure to Oro Negro that, notwithstanding Oro Negro's consent, it is possible that we might be required to withdraw or disqualify from representing Oro Negro by reason of our representation of another client and, further, that if in such circumstances, we do not continue this Engagement or are required to withdraw from the Engagement, Oro Negro may incur delay, prejudice or additional cost associated with acquainting new counsel with the Engagement.

### Future Conflicts of Interest

Our firm has many lawyers and several offices.  We may currently or in the future represent one or more other clients in matters involving Oro Negro and we may represent the parties that are adverse to you in this matter in other unrelated matters.  We are undertaking this Engagement on condition that Oro Negro gives its express consent and agreement that we may represent other clients, including the parties adverse to you in this matter, in the future in other matters in which

Oro Negro:  Engagement Agreement
April 11, 2018

we do not represent Oro Negro even if the interests of the other clients are adverse to Oro Negro (including the appearance on behalf of another client adverse to Oro Negro in an unrelated negotiation, litigation or arbitration), provided that the other matter is not substantially related to our representation of Oro Negro and that in the course of representing Oro Negro we have not obtained confidential information from Oro Negro material to the representation of the other clients.

The above conflict waiver waives possible conflicts based on future facts and circumstances that cannot be known at this time.

The countersignature to this letter on behalf of Oro Negro also acknowledges that we have made disclosure to Oro Negro that, notwithstanding Oro Negro's consent to the conflict waiver set forth herein, it is possible that we might be required to withdraw or be disqualified from representing Oro Negro by reason of our representation of another client.

### Billing

Our fees are based on the amount of time we spend on this Engagement.  Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2018, a class of 2017 graduate's rate will move up from a first-year associate rate to a second-year associate rate, and so on.  These "class graduation" adjustments are not rate increases, and Oro Negro acknowledges and agrees to these associate class adjustments by signing this letter.  If one of our professionals performs multiple tasks for Oro Negro during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing."  Oro Negro agrees that we may block bill.

### Estimates

Oro Negro understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter.  From time to time during the course of our Engagement we may provide Oro Negro with estimates of costs and fees or projected budgets for our work going forward.  Ordinarily, we do not provide these projections unless Oro Negro specifically requests us to do so.  When we do provide them, we will make a good faith effort to estimate what the future cost will be.  However, in no case can such projections be guarantees regarding what the actual cost will be.  The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation.  In all instances when we provide such projections, they should be viewed as guidance only.  The fees and costs which Oro Negro will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

Oro Negro:  Engagement Agreement
April 11, 2018

*Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing.  We pass along out-of-pocket costs and charges that we incur on our clients' behalf.  These typically include messenger charges, deposition videography and transcript charges and administrative charges.  Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.03/page), Viewpoint search and culling $50-$150/GB), EDD ($325-625/GB), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.28-$1.50/document), hosting ($25/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed.  Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on Oro Negro's behalf, and similar charges.  Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case.  These charges will be at cost.  The costs listed are the current rates but may be subject to future adjustment.  Oro Negro agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to Oro Negro for payment, which will also be due and payable upon receipt.  Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event Oro Negro has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, Oro Negro agrees that the terms of this Engagement Letter shall apply unless a copy of Oro Negro's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event Oro Negro's billing guidelines shall control.

We will submit bills on a monthly basis.  All bills shall be paid promptly by Oro Negro.  The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party.  We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due.  Additionally, QEU&S reserves the right to void any discounts on rates, ancillary costs or otherwise, if invoices are not timely paid by Oro Negro.  If Oro Negro has any question regarding, or wish to challenge any bill, Oro Negro shall notify us promptly of any such question

Oro Negro:  Engagement Agreement
April 11, 2018

or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge.

### Our Lien On Any Recovery You Obtain

Oro Negro hereby grants us a lien as security for the payment of fees and costs due and owing to us under this agreement.  This lien will attach to any recovery Oro Negro may obtain, whether by arbitration award, judgment, settlement or otherwise, in connection with the Engagement, and we may use this lien to enforce our right of payment.  This lien entitles us to be paid first and before any payment can be made to you.  The lien allows us to compel payment of our unpaid fees, interest, costs, advances and expenses.  The lien is intended to remain valid even if for any reason we no longer represent you in this matter.  The lien could delay payments to Oro Negro or receipt by Oro Negro of some or all of any recovery Oro Negro may obtain as a result of our services until any dispute over the amounts to be paid to us is resolved.  You also authorize us to make disclosure of the lien when such is necessary to enforce our rights and interests.

Oro Negro may seek the advice of an independent lawyer of your choice about this lien provision and its consequences.  Oro Negro also has the right to ask us questions about our understanding of the lien.  By signing this agreement Oro Negro acknowledges that Oro Negro has been advised of the terms of this lien agreement and of Oro Negro's right to consult independent counsel.  Oro Negro also acknowledges that Oro Negro has been given a reasonable opportunity both to seek such advice and to ask us any questions that you may have prior to signing.

### Award of Costs and Fees

A court may sometimes order a payment of costs or attorneys' fees by one party to the other.  If any fees or costs are paid to us, they will be credited against any amounts Oro Negro owes us, but Oro Negro will be obligated for any unpaid portion of our statements as they become due.  Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award.  Any fee or cost award received from another party will be credited to Oro Negro's account, unless it results in a credit balance.  If it does, we will refund the balance to Oro Negro.  If a court awards fees or costs against Oro Negro and in favor of an opposing party, Oro Negro will be responsible for payment of that amount separately from any amounts due to us.

### Retainer

Integradora Oro Negro and Perforadora Oro Negro have each agreed to transfer us up to $5,000,000 in one or several installments, as (i) a retainer toward our statements; and (ii) as escrow, the sum of which shall be kept in escrow by QEU&S to be applied pursuant to the instructions of Integradora Oro Negro or Perforadora Oro Negro to the payment of legal fees of Oro Negro's attorneys in any jurisdiction, including the United States, Mexico, Singapore, Panama, United Kingdom, Norway and any other jurisdiction or to be reimbursed to Integradora Oro Negro or to

Oro Negro:  Engagement Agreement
April 11, 2018

Perforadora Oro Negro or to be delivered to any other person as instructed by Integradora Oro Negro or Perforadora Oro Negro at any time.

This sum will be used to pay our fees, costs and other expenses incurred on Oro Negro's behalf. If the retainer balance is exceeded or drawn down to pay our monthly statements, we will expect our fees to be paid and the retainer replenished to its full amount of $250,000 within ten days of your receipt of our statement, so that the retainer balance is always at least $250,000 for each of Integradora Oro Negro and Perforadora Oro Negro.

We agree to apply and transfer the amounts kept by us in escrow pursuant to this section in accordance with the instructions of Integradora Oro Negro or Perforadora Oro Negro.

All retainer funds that Oro Negro deposits with us as an advance against our fees and charges will be deposited and maintained in the firm's client trust account.  Upon delivery of bills in accordance with the terms of this Engagement Letter, the retainer funds held up to the amount of such bills will be treated as property of QEU&S and may be withdrawn from our retainer account.  Any balance of the retainer then remaining will be credited toward the amount of our final bill on completion of our representation, and if the amount of the retainer exceeds the total charge for our final bill, we will refund any excess to Oro Negro, or if paid by another party to you or the payor as you and the payor agree.

In addition to the foregoing, Integradora Oro Negro or Perforadora Oro Negro may instruct QEU&S at any time to reimburse to Integradora Oro Negro or to Perforadora Oro Negro or to deliver to any person any amount held in escrow pursuant to this section as directed in the instruction; provided that, in any case, the balance of the amount held in escrow as retainer shall always be at least $250,000 for each of Integradora Oro Negro and Perforadora Oro Negro.

Please let us know promptly if you have any questions or concerns about the services provided by anyone at QEU&S or about any billing statement so that we can act appropriately.

*Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn or Bill Urquhart in our Los Angeles office at (213) 443-3000, to discuss it.  You may terminate this representation at any time, with or without cause.  Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical.  Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf.  In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

Oro Negro:  Engagement Agreement
April 11, 2018

### *Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is the date on which we first performed services.  The date at the beginning of this letter is for reference only.  If this letter is not signed and returned with the retainer for any reason, Oro Negro will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on Oro Negro's behalf.

QEU&S's representation of Oro Negro will be considered terminated at the earliest of (i) Oro Negro's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

### *File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement.  Oro Negro's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees.  QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format.  It is our practice to retain the permanent records of the matter, in accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended.  If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

### *Other Litigation or Proceedings*

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving Oro Negro or related persons or entities, Oro Negro shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates).  Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of Oro Negro in this matter  (including unmeritorious disqualification proceedings), Oro Negro agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result.  This paragraph is not intended to apply to any claim brought by or on behalf of Oro Negro alleging wrongdoing by QEU&S.

### *Arbitration*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you.  If the dispute cannot be resolved amicably through informal discussions, we believe that most, if not all, disputes can be resolved

Oro Negro:  Engagement Agreement
April 11, 2018

more expeditiously and with less expense by binding arbitration than in court.  This provision will explain under what circumstances such disputes shall be subject to binding arbitration.

NEW YORK AGREEMENT TO ARBITRATE:

(a)     Any dispute between QEU&S and Oro Negro as to attorneys' fees and/or costs in connection with the Engagement shall be resolved as follows:

1.     By signing this Engagement Letter, Oro Negro acknowledges that it has been provided a copy of the official written instructions and procedures for the fee arbitration program under Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR § 137) (the "Section 137 Arbitration Program"), and the rules and procedures in effect in the First Department. Oro Negro understands that not all disputes as to attorneys' fees and/or costs may be subject to the Section 137 Arbitration Program.

2.     By signing this Engagement Letter, Oro Negro acknowledges that it has been advised that (1) it has the right to use the fee arbitration procedures of Part 137, which includes the right to reject the arbitrator(s) award by commencing an action on the merits (trial de novo) in a court of law; (2) in the absence of this agreement, it would have the right to choose whether or not to participate in this program; and (3) signing this Engagement Letter does not foreclose the parties' attempting to resolve this fee dispute at any time through voluntary mediation.

3.     By signing this Engagement Letter, Oro Negro acknowledges that it has had any questions answered concerning the applicability of the Section 137 Arbitration Program to any potential disputes.

4.     Oro Negro and QEU&S agree that they will resolve any fee dispute by arbitration before an arbitral forum outside of the Section 137 Arbitration Program, and that the arbitration shall be governed by the rules and procedures as outlined in ¶ (b) below.

Any other dispute arising in connection with the Engagement or with the provision of legal services by QEU&S including, without limitation, any claim for breach of contract, professional negligence or breach of a fiduciary duty, shall be resolved by confidential, binding arbitration as described in ¶ (b) below.

Oro Negro further acknowledges that this agreement to arbitrate results in a waiver of Oro Negro's right to a court or jury trial for any fee dispute and malpractice claim.  This also means that Oro Negro may be giving up its right to discovery and appeal, to compel witnesses and documents, to seek all available relief (except punitive damages which are provided for under state law), and to have the matter heard in a public forum.  If Oro Negro later refuses to submit to arbitration, Oro Negro may be ordered to do so.  Oro Negro acknowledges that, before signing this Engagement Letter and agreeing to binding arbitration, Oro Negro is entitled to, and has been given, a reasonable opportunity to seek the advice of independent counsel.

Oro Negro:  Engagement Agreement
April 11, 2018

(b)      ARBITRATION PROCEDURES:

In the event of any dispute that is subject to arbitration pursuant to ¶ (a) above, the initiating party will provide a written demand for arbitration to the other party setting forth the basis of the initiating party's claim and the dollar amount of damages sought.

The parties further agree that, if arbitration is necessary, each arbitration will:

1.      Be heard and determined by a panel of three arbitrators (all of whom will be retired state or federal judges), with one selected by each party to the arbitration, and the third selected by the first two from the panel of arbitrators of JAMS (or its successor);

2.      Take place in the city in the United States where the QEU&S attorneys who spent the most time on the Engagement are located (the "applicable city");

3.      Be conducted in accordance with JAMS Streamlined Arbitration Rules and Procedures (or any successor rules and procedures), in effect at the time the initiating party delivers to the other party the demand for arbitration required hereunder;

4.      Require the arbitrators to enforce the terms of this agreement, and they will lack authority to do otherwise;

5.      Apply the laws of the jurisdiction in the United States where the applicable city is located.  The arbitration proceedings and the decision of the arbitrator will be confidential. Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator; and

6.      Be final and binding on both parties, will not be subject to de novo review, and that no appeal may be taken.  The ruling of the arbitrator(s) may be entered and enforced as a judgment by a court of competent jurisdiction.  The arbitration provisions of this Agreement may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses.

### *Binding Agreement*

By signing below, Oro Negro agrees that Oro Negro has had enough time to review this letter, that we have advised you that Oro Negro has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to

Oro Negro:  Engagement Agreement
April 11, 2018

which Oro Negro may wish to avail itself of such advice, and that Oro Negro is satisfied that it understands this letter.  Oro Negro also agrees that Oro Negro has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that Oro Negro has freely determined, without any duress, to sign and agree to these terms.

*Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction of the State of New York, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

*Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

If Oro Negro later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

I am enclosing two executed copies of this letter.  If the foregoing accurately reflects our agreement, please confirm that by signing and returning one of the enclosed copies to me.  Please do not hesitate to call me to discuss any questions you may have regarding this agreement.  In

Oro Negro:  Engagement Agreement
April 11, 2018

conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you and your payment of the initial retainer.

Thank you again for this opportunity to be of service.  We look forward to working with you on this Engagement.

STATEMENT TO BE SIGNED BY CLIENT:

I have read the above Engagement Letter and understand and agree to its contents.  The parties to this engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V.

By: _____

Name: _____

Title: _____

Date: _____

Perforadora Oro Negro, S. de R.L. de C.V.

By: _____

Name: _____

Title: _____

Date: _____

Very truly yours,

Juan P. Morillo

15