**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:24-cv-21926-ALTMAN/Sanchez**

**IN RE:**

**APPLICATION OF**
**ORO NEGRO PRIMUS PTE. LTD.,**
**ORO NEGRO LAURUS PTE. LTD.,**
**ORO NEGRO FORTIUS PTE. LTD.,**
**ORO NEGRO DECUS PTE. LTD.,**
**ORO NEGRO IMPETUS PTE. LTD., and**
**ORO NEGRO DRILLING PTE. LTD.**
**FOR AN ORDER TO TAKE DISCOVERY**
**PURSUANT TO 28 U.S.C. § 1782**

*Petitioners.*
_____/

**RESPONDENT QUINN EMANUEL'S OPPOSITION TO**
**PETITIONERS' MOTION FOR LEAVE TO TAKE EXPEDITED**
**DISCOVERY AND FILE A MOTION TO DISQUALIFY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

FACTUAL BACKGROUND ...................................................................................................4

    A.    The Ad-Hoc Group's Purported Control over Petitioners Violated the Mexican Bankruptcy Court's Orders...........................................................5

    B.    The Ad-Hoc Group's Purported Control over Petitioners Violated the U.S. Bankruptcy Court's Orders ...............................................................6

    C.    The Ad-Hoc Group's Purported Control over Petitioners Violates Mexican Law and Public Policy...........................................................8

    D.    Quinn Emanuel Did Not Obtain Any Confidential Information from Petitioners in the March 2021 Lawsuit...............................................9

    E.    Petitioners' § 1782 Application and Demand for a Wall Between Respondents' Counsel or for Expedited Discovery...........................9

ARGUMENT .......................................................................................................................10

    A.    Petitioners' Motion for Expedited Discovery Attempts to Circumvent the Requirements of § 1782 ...............................................................11

    B.    Petitioners Have No Standing to Bring a § 1782 Application and Thus No Standing to Seek Quinn Emanuel's Disqualification (or Discovery from Quinn Emanuel)...........................................................13

    C.    A Wall Between Respondents' Counsel Is Unnecessary Because Quinn Emanuel Did Not Obtain Any Confidential Information from Petitioners' 2021 Lawsuit...........................................................14

    D.    A Wall Between Respondents' Counsel Is Impractical Based on the Court's Order and Overlapping Issues ...................................................15

    E.    Petitioners' Cited Cases Are Not Binding and Inapposite ....................................16

    F.    Petitioners Are Not Entitled to Expedited Discovery.............................................17

CONCLUSION....................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Akerman LLP v. MSP Recovery Claims, Series LLC*,
    338 So. 3d 309 (Fla. 3d DCA 2022), *reh'g denied* (May 5, 2022), *review
    denied*, 2022 WL 4930534 (Fla. 2022) ....................................................................... 13

*Am. Can Co. v. Citrus Feed Co.*,
    436 F.2d 1125 (5th Cir. 1971) ........................................................................... 14, 16

*In re Application for an Order Seeking Discovery Under 28 U.S.C. § 1782*,
    2024 WL 2883293 (S.D.N.Y. 2024) ........................................................................ 12

*Baybrook Homes v. Banyan Constr. & Dev.*,
    991 F. Supp. 1440 (M.D. Fla. 1997) ................................................................... 14, 17

*In re Bellsouth Corp.*,
    334 F.3d 941 (11th Cir. 2003) ................................................................................ 10

*Burnett v. Olson*,
    2005 WL 711602 (E.D. La. Mar. 18, 2005) ............................................................ 17

*In re Cal. Canners & Growers*,
    74 B.R. 336 (Bankr. N.D. Cal. 1987) ...................................................................... 16

*Chammami v. Acropolis Mediterranean Food*,
    2020 WL 13119546 (M.D. Fla. 2020) .................................................................. 14, 15

*In re Chiquita Brands Int'l*,
    2015 WL 12601043 (S.D. Fla. 2015) .................................................................... 17, 18

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) .............................................................................. 11

*Del Val v. AMA Capital*,
    No. 18-ap-1693 (Bankr. S.D.N.Y.) ........................................................................... 7

*Est. of Jones ex rel. Gay v. Beverly Health & Rehab. Servs., Inc.*,
    68 F. Supp. 2d 1304 (N.D. Fla. 1999) ..................................................................... 14

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
    567 F.2d 225 (2d Cir. 1977) ................................................................................... 16

*Herrmann v. GutterGuard, Inc.*,
    199 F. App'x 745 (11th Cir. 2006) ...................................................................... 10, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................................... 11

*j2 Commc'ns Inc. v. Captaris Inc.*,
    2012 WL 6618272 (C.D. Cal. Dec. 19, 2012) ....................................................... 16

*Kleiman v. Wright*,
    662 F. Supp. 3d 1247 (S.D. Fla. 2023) ................................................................ 13

*Leathermon v. Grandview Mem'l Gardens, Inc.*,
    2010 WL 1381893 (S.D. Ind. Mar. 31, 2010) ....................................................... 16

*Oro Negro Primus v. Alterna Capital*,
    21-ap-1091 (Bankr. S.D.N.Y.) ............................................................................... 9

*In re Petition of the Republic of Turkey for an Order Directing Discovery from Hamit Çiçek*
    28 U.S.C. § 1782, 2020 WL 4035499, *9 ............................................................. 12

*Patriot Sciences v. Moore*,
    178 F. App'x 18 (Fed. Cir. Apr. 12, 2006) ........................................................... 17

*Pound v. DeMera DeMera Cameron*,
    135 Cal. App. 4th 70 (2005) ................................................................................. 16

*Sears, Roebuck & Co. v. Stansbury*,
    374 So. 2d 1051 (Fla. 5th DCA 1979) .................................................................. 16

*Sumpter v. Hungerford*,
    2013 WL 2181296 (E.D. La. May 20, 2013) ......................................................... 17

*State Farm Auto. Ins. v. K.A.W.*,
    575 So. 2d 630 (Fla. 1991) ................................................................................... 16

*Zarco Supply Co. v. Bonnell*,
    658 So. 2d 151 (Fla. 1st DCA 1995) ..................................................................... 13

## Statutes

28 U.S.C. § 1782 .................................................................. 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15

## Other Authorities

*Ley de Concursos Mercantiles*, Article 87 ................................................................... 8

R. Regul. Fla. Bar 4-1.10(b) ......................................................................................... 17

Petitioners' motion for expedited discovery (Dkt. 24) is yet another contrived attempt to distract the parties and the Court from addressing the substantial legal deficiencies with Petitioners' application for discovery for use in a foreign tribunal under 28 U.S.C. § 1782. Petitioners chose to name and serve discovery on Quinn Emanuel in this proceeding. As a Respondent, Quinn Emanuel is entitled to defend itself against the requested relief, and the firm must necessarily involve itself in the factual and legal issues raised by Petitioners' application. Knowing this to be the case—and having themselves created this situation—Petitioners have weaponized Quinn Emanuel's party status to gain a tactical advantage. The Court should deny Petitioners' motion in full.

*First*, Petitioners' motion for expedited discovery attempts to circumvent the statutory and discretionary factors of § 1782 where there is no conflict. In accordance with the Court's guidance at the June 18, 2024 status conference, Respondents other than Quinn Emanuel have retained separate, independent counsel (Gelber Schachter & Greenberg, P.A.). Dkt. 23. In compliance with an ethics opinion from a former Florida Supreme Court Justice, Respondent Quinn Emanuel is representing itself with respect to Petitioners' proposed subpoena on the firm. Dkt. 23-1. In response to these actions to comply with ethical obligations, Petitioners now demand impractically that Respondents' two law firms be walled off from each other, allegedly to prevent Quinn Emanuel from sharing confidential information about Petitioners. Petitioners otherwise seek expedited discovery from Quinn Emanuel, supposedly to support a contemplated motion to disqualify Quinn Emanuel, but which actually overlaps substantially with the very discovery Petitioners seek from the firm under § 1782. Dkt. 24 at 14-15 (showing numerous categories of overlapping document requests and deposition topics). For instance, requiring Quinn Emanuel to provide discovery that may be used in a Mexican criminal investigation into the individual

Respondents would not be for use in a foreign tribunal and would violate the individual Respondents' right against self-incrimination.  In short, Petitioners are using the supposed need to disqualify a firm that now *only* represents itself in this matter as a tool to receive the ultimate relief they seek in this litigation and to which they are not entitled as a matter of law.

**Second**, there is a predicate question of standing that Petitioners ignore.  Petitioners have no standing to bring a § 1782 application in this Court for discovery for use in a foreign tribunal, and thus no standing to seek Quinn Emanuel's disqualification (or discovery from Quinn Emanuel) in this proceeding.  The Mexican bankruptcy court overseeing Oro Negro's liquidation—the very court where Petitioners seek to introduce discovery under § 1782—and two Mexican appellate courts held that the alleged replacement of Petitioners' directors (Respondents Gonzalo Gil-White and Carlos Williamson Nasi) with the new individuals who purport to authorize Petitioners' § 1782 application was void because it violated the Mexican bankruptcy code and public policy.  Dkt. 1-6 at 128-34.  The Mexican bankruptcy court therefore does not recognize these individuals or their counsel as the proper representatives of Petitioners and would not accept any § 1782 discovery from them.  That decision remains valid while it is under appeal, and the Singaporean ruling on which Petitioners rely for the authority to file their § 1782 application is neither enforceable nor binding in Mexico.

**Third**, Quinn Emanuel did not obtain and certainly would not use or communicate to co-Respondents'-counsel any confidential information from Petitioners as part of the firm's 2021 lawsuit on Petitioners' behalf.  Indeed, Quinn Emanuel filed that lawsuit based on publicly available court filings and at the direction of Petitioners' authorized representative in Mexico.  The lawsuit was automatically stayed for two years pursuant to an order from the U.S. bankruptcy court, then dismissed as part of the dismissal of the Chapter 15 proceeding in May 2023.

Petitioners do not identify any supposed information in any filing by Quinn Emanuel in the relevant prior litigation that was based on confidential information.  That is because no such confidential information exists.

*Fourth*, the requested lack of communication between counsel is effectively impossible. Among other things, this Court has ordered Respondents to file a joint motion in response to Petitioners' discovery application (Dkt. 18), which necessitates coordination between counsel. Petitioners nowhere address how two law firms can file a joint motion without communicating with each other.  Indeed, during the parties' meet and confers, Petitioners conceded that several of the statutory and discretionary factors under § 1782 applied to all Respondents and would require coordination among Respondents' counsel to address Petitioners' discovery application. Petitioners similarly concede that Respondents' counsel should be allowed to jointly coordinate with experts for the supporting declarations on Mexican law.

*Fifth*, Petitioners fail to cite a single Florida case that would require a wall under these circumstances.  Petitioners' out-of-circuit authority is also inapposite, as it involved situations where counsel had actually shared (or presumptively shared, a presumption not available under Florida law) confidential information about a former client with co-counsel.  Petitioners thus have not shown the good cause necessary for expedited discovery.

Respondents' counsel cannot "simply" wall themselves off from sharing "any information" or coordinating in "any way" (Dkt. 24 at 2, 8), nor does any ethical principle require that under these circumstances.  Petitioners chose to seek discovery under § 1782 from Quinn Emanuel in the same proceeding as the other Respondents, the other Respondents have retained independent counsel, and the Court ordered a joint brief from all Respondents.  Petitioners' further issues with

standing, circumvention of the requirements of § 1782, and Quinn Emanuel's lack of confidential information requires that the Court deny Petitioners' motion for expedited discovery.

## **FACTUAL BACKGROUND**

Petitioners are wholly-owned subsidiaries of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora," and together with its subsidiaries, "Oro Negro"). Oro Negro is a Mexican oil services company, which operated five state-of-the-art jack-up rigs for offshore drilling in the Gulf of Mexico ("Rigs") and leased them to Petróleos Mexicanos ("Pemex"), the Mexican government oil monopoly. Integradora owns 100% of the equity of Petitioner Oro Negro Drilling Pte. Ltd. ("ON Drilling"), which in turn owns 100% of the equity in five entities that held the Rigs, Petitioners Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd., and Oro Negro Impetus Pte. Ltd. ("Rig Owners").

In 2014, to fund the purchase of the Rigs, Oro Negro issued $900 million in bonds ("Bonds"). The Bonds are governed by a Bond Agreement entered into between ON Drilling and Nordic Trustee ASA on behalf of all of the investors that own the Bonds ("Bondholders"). Nordic Trustee, a Norwegian financial services firm, is the trustee under the Bond Agreement and is responsible for acting on behalf of the Bondholders to collect on the Bonds. The Bonds are primarily secured by mortgages on the Rigs.

The "Ad-Hoc Group" is a group of investors that own the majority of the Bonds. AMA Capital Partners LLC ("AMA") is the Bondholder's financial advisor. Starting in at least 2017, the Ad-Hoc Group and AMA colluded with Pemex to destroy Oro Negro, so that the Ad-Hoc Group could take possession of the Rigs, which are much more valuable than the Bonds. Indeed, the Ad-Hoc Group's motive has been to extract as much cash as it could from Oro Negro via interest payments on the Bonds, and then to seize the Rigs.

A.   **The Ad-Hoc Group's Purported Control over Petitioners Violated the Mexican Bankruptcy Court's Orders**

In March 2017, Pemex sought to impose drastic amendments to Oro Negro's contracts that would have risked the company's solvency, including its ability to repay its Bonds.  To protect Oro Negro's shareholders, creditors, and employees, on September 11, 2017, Integradora's rig-operating subsidiary Perforadora Oro Negro, S.A.P.I. de C.V. ("Perforadora") filed for restructuring in Mexico, known as a *concurso mercantil* ("*Concurso* Proceeding").  Perforadora's *Concurso* Proceeding was assigned to the Second District Court for Civil Matters of Mexico City ("*Concurso* Court").  Perforadora requested that the *Concurso* Court issue injunctions to maintain its status quo, including expressly prohibiting Nordic Trustee, acting on behalf of the Ad-Hoc Group, from terminating the Rig Owners' agreements to lease the Rigs to Perforadora ("Bareboat Charters") and taking possession of the Rigs.

Despite knowing about Perforadora's *Concurso* Proceeding, on September 25, 2017, Nordic Trustee, acting on behalf of the Ad-Hoc Group, declared ON Drilling in default pursuant to Section 15.1(g)(i) of the Bond Agreement, solely because Perforadora filed for an insolvency proceeding.  As described in Section C below, the provision in the Bond Agreement regarding a declaration of an event of default was made against Mexican law and public policy and is thus invalid.  But in reliance on that provision, upon the declaration of the event of default, the Ad-Hoc Group, with AMA's help, replaced Petitioners' directors.  Because the declaration of an event of default was unlawful, the Ad-Hoc Group's replacement of Petitioners' directors was unauthorized.

On September 29, 2017, Integradora commenced its *Concurso* Proceeding before the *Concurso* Court.  Integradora also sought injunctive relief to prevent Nordic Trustee, under the Ad-Hoc Group's control, from continuing to act in furtherance of its declaration of an event of default of the Bond Agreement.

On October 5, 2017, the *Concurso* Court issued an order granting Perforadora's request to initiate the *Concurso* Proceeding (the "October 5 Order").  In the October 5 Order, the *Concurso* Court also granted Perforadora's request for injunctions, including enjoining Nordic Trustee from taking any action to terminate the Bareboat Charters.  Disregarding the injunction, on that same day, the Ad-Hoc Group and the purported new Rig directors, via their unlawful control of Petitioners, terminated the Bareboat Charters.  The Ad-Hoc Group then demanded that Perforadora turn over the Rigs to it.

On October 8, 2017, Perforadora informed the *Concurso* Court that the Ad-Hoc Group, via its unlawful control of Petitioners, had unlawfully terminated the Bareboat Charters.  As a result, on October 11, 2017, the *Concurso* Court issued an order confirming that Nordic Trustee, acting on behalf of the Ad-Hoc Group, was enjoined from taking any action to terminate the Bareboat Charters (the "October 11 Order").  The Ad-Hoc Group and purported new Rig directors ignored the injunction, continuing to exert unlawful control over Petitioners.

On October 31, 2017, the *Concurso* Court issued an order granting Integradora's request to initiate the *Concurso* Proceeding (the "October 31 Order").  In the October 31 Order, the *Concurso* Court also issued numerous injunctions, including enjoining Nordic Trustee from exercising or taking any actions in connection with the replacement of Petitioners' directors.  The Ad-Hoc Group and purported new Rig directors ignored this order as well, continuing to exert unlawful control over Petitioners.

### B.     The Ad-Hoc Group's Purported Control over Petitioners Violated the U.S. Bankruptcy Court's Orders

On March 15, 2018, the Ad-Hoc Group filed a lawsuit in the U.S. District Court for the Southern District of New York on behalf of the Rig Owners against Perforadora, demanding that Perforadora return the Rigs to the Rig Owners.  In response, on April 20, 2018, Oro Negro filed a

petition to recognize its Mexican bankruptcy proceedings under Chapter 15 of the U.S. Code (the "Chapter 15 Proceeding") with the U.S. Bankruptcy Court for Southern District of New York (the "U.S. Bankruptcy Court").  On July 11, 2018, the U.S. Bankruptcy Court issued an order ("Comity Order") in which it recognized, granted comity to, and extended full force and effect to the *Concurso* Court's October 5 Order, October 11 Order, and October 31 Order.

In further response to the actions taken by the Ad-Hoc Group, Alonso Del Val-Echeverria, then-Foreign Representative of Oro Negro, filed a complaint in the Chapter 15 Proceeding against AMA and Petitioners, who were acting under the unlawful control of the Ad-Hoc Group and purported new Rig directors (the "Rig Seizure Complaint").  *See* Compl., *Del Val v. AMA Capital*, No. 18-ap-1693 (Bankr. S.D.N.Y.), ECF 1.  The Rig Seizure Complaint sought declaratory relief, injunctive relief, specific performance, and damages arising out of the Ad-Hoc Group's and purported new Rig directors' attempts to physically seize the Rigs, in violation of the Comity Order and the *Concurso* Court's injunctions.  The Rig Seizure Complaint was accompanied by a motion for an *ex parte* temporary restraining order and order to show cause why a preliminary injunction should not be issued to enjoin defendants from taking any action to take over the Rigs, including attempting to physically board and abscond with the Rigs.

On October 23, 2018, the U.S. Bankruptcy Court granted the *ex parte* motion, and issued a temporary restraining order prohibiting the Ad-Hoc Group and its agents from continuing to attempt to take over the Rigs ("Temporary Restraining Order").  In issuing the Temporary Restraining Order, the U.S. Bankruptcy Court recognized that the Ad-Hoc Group's actions were "unlawful" and "placed in serious jeopardy" Oro Negro's ability to reorganize.

C. **The Ad-Hoc Group's Purported Control over Petitioners Violates Mexican Law and Public Policy**

The Ad-Hoc Group's declaration of an event of default and the subsequent unlawful actions taken by the Ad-Hoc Group and purported new Rig directors on behalf of Petitioners are not only a violation of the *Concurso* Court's injunctions and the U.S. Bankruptcy Court's Comity Order, but are also barred by Mexican law and public policy.  Indeed, the Mexican appellate courts have concluded on two occasions that Mexican law applies to the Bond Agreement and that the *Concurso* Court has jurisdiction over the dispute regarding the Bond Agreement.  Those rulings are no longer subject to appeal.

Subsequently, the *Concurso* Court applied Mexican law to the Bond Agreement to hold that the effects of the Ad-Hoc Group's declaration of the event of default pursuant to Section 15.1(g)(i) of the Bond Agreement are void.  Specifically, on February 22, 2021, the *Concurso* Court held that Section 15.1(g)(i) of the Bond Agreement is contrary to Article 87 of the *Ley de Concursos Mercantiles* ("LCM"), the Mexican statute that governs insolvency proceedings, and to Mexican public policy, because it worsens the condition of Oro Negro, prevents Oro Negro from being able to obtain the maximum value for its estate, and prevents Oro Negro from being able to successfully reorganize (the "February 2021 Decision").  Dkt. 1-6 at 128-32.  As a result, the *Concurso* Court found that the following actions taken by the Ad-Hoc Group are void:

(a) the notification of breach of the Bond Agreement;

(b) the change in directors of Petitioners;

(c) the revocation of powers of attorneys of the previous directors and lawyers of the Rig Owners and the granting of powers of attorney to the new Rig directors and the Ad-Hoc Group's lawyers;

(d) the letters of resignation of the previous directors of the Rig Owners from their positions as directors; and

(e) any actions carried out as a result of the above. *Id.* at 133-34.

The February 2021 Decision confirmed that the Ad-Hoc Group's seizure of Petitioners starting in September 2017 was invalid, unlawful, and void. The decision remains valid while it is under appeal. Accordingly, all subsequent actions taken by the Ad-Hoc Group and purported new Rig directors via their unlawful control of Petitioners are also void, including (1) the filing of Mexican criminal complaints on behalf of the Rig Owners against the individual Respondents; and (2) their § 1782 application before this Court.

### D.    Quinn Emanuel Did Not Obtain Any Confidential Information from Petitioners in the March 2021 Lawsuit

Pursuant to the February 2021 Decision, at the direction of Petitioners' authorized representative in Mexico, and based on publicly available court filings, Quinn Emanuel filed a lawsuit on Petitioners' behalf in March 2021 against the Ad-Hoc Group, AMA, and the individuals who purported to serve as Petitioners' new directors. Dkt. 1-6. Petitioners brought causes of action for conversion, breach of fiduciary duty, and tortious interference, among other claims, against defendants for seizing the Rigs and interfering with Oro Negro's contracts with Pemex. *Id.* at 56-69. The lawsuit was automatically stayed for two years pursuant to an order from the U.S. Bankruptcy Court, then dismissed as part of the dismissal of the Chapter 15 Proceeding in May 2023. *Oro Negro Primus v. Alterna Capital*, 21-ap-1091 (Bankr. S.D.N.Y.), Dkts. 4, 13.

### E.    Petitioners' § 1782 Application and Demand for a Wall Between Respondents' Counsel or for Expedited Discovery

Petitioners, through the Ad-Hoc Group, seek broad discovery from Respondents under § 1782 allegedly for use in a foreign tribunal. At the June 18, 2024 status conference, Petitioners asserted that Respondent Quinn Emanuel may have a conflict in representing both itself and the

other Respondents in this discovery proceeding based on Petitioners' position that they are a former client of the firm. *See* Dkt. 1 at 4, 7. In response, Respondents other than Quinn Emanuel retained Gelber Schachter & Greenberg, P.A. to represent them. Dkt. 23. Quinn Emanuel received an ethics opinion from former Florida Supreme Court Justice Alan Lawson confirming that its continued self-representation is ethically appropriate. Dkt. 23-1.

Still, Petitioners demand that that Respondents' counsel wall each other off. Dkt. 24 at 2. Petitioners otherwise demand that Quinn Emanuel disclose on an expedited basis the very discovery Petitioners seek from the firm under § 1782 before the Court considers any briefing on their application. *Compare* Dkt. 1-8 at 5-13 (seeking Quinn Emanuel's engagement agreements, receipt of retainers, due diligence and ethical analyses relating to representing Petitioners, individuals instructing the firm's representation of Petitioners, and communications with other lawyers relating to the firm's representation of Petitioners), *with* Dkt. 24 at 14-15 (showing numerous categories of overlapping document requests and deposition topics). For the reasons below, the Court should deny Petitioners' motion for expedited discovery.

## ARGUMENT

Petitioners' alleged interest in expedited discovery—for the purpose of filing a motion for disqualification—should be denied because there are no justifiable grounds for disqualification and the discovery they seek would not aid any such motion for disqualification. Attorney disqualification is a "harsh sanction" that is "resorted to sparingly." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). This is "because a party is presumptively entitled to the counsel of his choice," and only compelling reasons can overcome that presumption. *In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). The party moving to disqualify bears the burden of proving the "compelling reasons" for disqualification. *Id.* Courts view motions for disqualification with skepticism because they not only infringe on the freedom to choose counsel

10

but can also be employed for tactical advantages.  *Herrmann*, 199 F. App'x at 752.  When brought by opposing counsel, disqualification motions are subject to heightened scrutiny because they may be used to harass or for tactical advantage.  *Id.*

### A.   Petitioners' Motion for Expedited Discovery Attempts to Circumvent the Requirements of § 1782

Title 28, United States Code, Section 1782 authorizes U.S. district courts under limited circumstances to order discovery from persons and companies found within the judicial district for use in a foreign tribunal.  The statute itself requires, among other factors, that (1) the requested discovery be "for use" in a foreign "tribunal"; (2) the party seeking discovery be an "interested person" in the foreign tribunal; and (3) the discovery not violate "any legally applicable privilege." 28 U.S.C. § 1782(a); *see also In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Section 1782 also requires the party seeking discovery to meet several discretionary factors, including: (1) "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (2) whether the § 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (3) whether the request is otherwise "unduly intrusive or burdensome."  *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Petitioners' motion for expedited discovery attempts to circumvent those explicit statutory and discretionary requirements of § 1782 where there is no conflict.  In accordance with the Court's guidance at the June 18, 2024 status conference, Respondents other than Quinn Emanuel have retained separate, independent counsel (Gelber Schachter & Greenberg, P.A.).  Dkt. 23.  In compliance with an ethics opinion from a former Florida Supreme Court Justice, Respondent

Quinn Emanuel is representing itself with respect to Petitioners' proposed subpoena on the firm. Dkt. 23-1.

In response to these actions to comply with ethical obligations, Petitioners now demand that Respondents' two law firms be walled off from each other. Dkt. 24 at 2. Petitioners otherwise seek expedited discovery from Quinn Emanuel, supposedly to support a contemplated motion to disqualify Quinn Emanuel, but which actually overlaps substantially with the very discovery Petitioners seek from the firm under § 1782 without meeting any of its requirements. *Id.* at 14-15 (showing numerous categories of overlapping document requests and deposition topics).

Petitioners should not be able to obtain expedited discovery from Quinn Emanuel without meeting the statutory and discretionary requirements of § 1782. For instance, Petitioners seek discovery under § 1782 to introduce in a Mexican criminal investigation into Respondents. Dkt. 1 at 34. As will be covered in further detail in the forthcoming brief responding to Petitioners' § 1782 application, a Mexican criminal investigation is not a tribunal under § 1782. *See In re Application for an Order Seeking Discovery Under 28 U.S.C. § 1782*, 2024 WL 2883293, *4-5 (S.D.N.Y. 2024). Moreover, requiring Quinn Emanuel to provide discovery that may be used in a Mexican criminal investigation into the individual Respondents would violate their right against self-incrimination. *See In re Petition of the Republic of Turkey for an Order Directing Discovery from Hamit Çiçek Pursuant to 28 U.S.C. § 1782*, 2020 WL 4035499, *9 (D.N.J. 2020). In short, Petitioners are using the supposed need to disqualify a firm that now *only* represents itself in this matter as a tool to receive the ultimate relief they seek in this litigation and to which they are not entitled as a matter of law.

**B.      Petitioners Have No Standing to Bring a § 1782 Application and Thus No Standing to Seek Quinn Emanuel's Disqualification (or Discovery from Quinn Emanuel)**

There is a predicate question that must be answered before this Court decides on Petitioners' request for expedited discovery from Respondent Quinn Emanuel, let alone the merits of the substantially overlapping request for discovery under § 1782.  If Petitioners do not have standing, then this Court has no jurisdiction to entertain their request and the case should be dismissed on that basis.  *See, e.g.*, *Kleiman v. Wright*, 662 F. Supp. 3d 1247, 1255 (S.D. Fla. 2023) ("Dr. Wright lacks Article III standing to disqualify the Firms."); *Zarco Supply Co. v. Bonnell*, 658 So. 2d 151, 154 (Fla. 1st DCA 1995) ("Having determined that Zarco has standing to seek disqualification, we now turn to the question of whether the trial court departed from the essential requirements of law in refusing to disqualify the two Powell firms."); *Akerman LLP v. MSP Recovery Claims, Series LLC*, 338 So. 3d 309, 311 (Fla. 3d DCA 2022), *reh'g denied* (May 5, 2022), *review denied*, 2022 WL 4930534 (Fla. 2022) (reversing disqualification where the appeals court found that a party was without standing to seek disqualification in the first instance).

Here, Petitioners' lack of standing is clear from the fact that they want to introduce discovery in a court that has held unequivocally that they are not a valid party.  The Mexican bankruptcy court overseeing Oro Negro's liquidation—the very court where Petitioners seek to introduce discovery under § 1782—and two Mexican appellate courts held that the alleged replacement of Petitioners' directors (Respondents Gonzalo Gil-White and Carlos Williamson Nasi) with the new individuals who purport to authorize Petitioners' § 1782 application was void because it violated the Mexican bankruptcy code and public policy.  Dkt. 1-6 at 128-34.  The Mexican bankruptcy court therefore does not recognize these individuals or their counsel as the proper representatives of Petitioners and would not accept any § 1782 discovery from them.

That decision remains valid while it is under appeal, and the Singaporean ruling on which Petitioners rely for the authority to file their § 1782 application is neither enforceable nor binding in Mexico.  The Singaporean ruling is therefore irrelevant to standing, as Petitioners' litigation here is based entirely on a supposed right to discovery under § 1782 to be introduced in Mexico. Petitioners therefore have no standing to bring a § 1782 application in this Court for discovery for use in a foreign tribunal.

### C.   A Wall Between Respondents' Counsel Is Unnecessary Because Quinn Emanuel Did Not Obtain Any Confidential Information from Petitioners' 2021 Lawsuit

In the case of firms acting as co-counsel, knowledge of one firm is not automatically imputed to another, which "could lead to extreme results in no way required to maintain public confidence in the bar." *Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971); *see also Est. of Jones ex rel. Gay v. Beverly Health & Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304, 1311 (N.D. Fla. 1999) (the fact that two law firms "have associated as co-counsel does not itself establish that their relationship is so close as to impute disqualification").  "That individual attorneys at separate firms are working together does not warrant disqualification if there is only a small risk of confidential information being exchanged."  *Chammami v. Acropolis Mediterranean Food*, 2020 WL 13119546, *9 (M.D. Fla. 2020).  The movant "must do something more than merely assert that the two firms associated themselves as co-counsel, or that the firm subject to disqualification had potential access to confidential records." *Baybrook Homes v. Banyan Constr. & Dev.*, 991 F. Supp. 1440, 1445 (M.D. Fla. 1997).

Quinn Emanuel did not obtain and certainly would not use or communicate to co-Respondents'-counsel any confidential information from Petitioners as part of the firm's 2021 lawsuit on Petitioners' behalf.  Dkt. 1-6.  Indeed, Quinn Emanuel filed that lawsuit based on publicly available court filings and at the direction of Petitioners' authorized representative in

Mexico.  The lawsuit was automatically stayed for two years pursuant to an order from the U.S. Bankruptcy Court, then dismissed as part of the dismissal of the Chapter 15 Proceeding in May 2023.  *Supra* Factual Background, Section D.  Petitioners do not identify any supposed information in any filing by Quinn Emanuel in the relevant prior litigation that was based on confidential information.  That is because no such confidential information exists.  Even if there were, such information would not automatically be imputed to co-counsel and does not warrant disqualification here.  *See Chammami*, 2020 WL 13119546, *9 (M.D. Fla. 2020)

> **D.      A Wall Between Respondents' Counsel Is Impractical Based on the Court's Order and Overlapping Issues**

Petitioners' requested lack of communication between Respondents' counsel is effectively impossible.  For instance, this Court has ordered Respondents to file a joint motion in response to Petitioners' discovery application (Dkt. 18), which necessitates coordination between counsel. Petitioners fail to address how two law firms can file a joint motion without communicating with each other.  Petitioners' demand is also unworkable given the overlapping arguments among Respondents against Petitioners' ability to obtain any § 1782 discovery and the needless additional costs Respondents would have to incur for duplicative expert declarations.

Indeed, during the parties' meet and confers, Petitioners conceded that several of the statutory and discretionary factors under § 1782 applied to all Respondents and would require coordination among Respondents' counsel to respond to Petitioners' application.  For instance, Petitioners agreed that Respondents could jointly brief the § 1782 statutory factors of (1) whether Petitioners are "interested persons"; and (2) whether the discovery is "for use" in a foreign "tribunal."  Petitioners also agreed that Respondents could jointly brief the § 1782 discretionary factors of (1) the "receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; and (2) whether the § 1782(a) request "conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  Petitioners similarly conceded that Respondents' counsel should be allowed to jointly coordinate with experts for the supporting declarations on Mexican law.  Ultimately, the parties could not reach consensus on the logistics of Respondents filing separate briefs given the Court's order for a joint brief.

### E.    Petitioners' Cited Cases Are Not Binding and Inapposite

Petitioners primarily rely (Dkt. 24 at 10-11) on the "seminal" case *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977).  *Fund of Funds* does not apply Florida law and involved a firm that was entirely conflicted from representing any party in the underlying litigation because it had represented both parties to the litigation and had confidential information about its former client.  *Id.* at 229.  The working relationship was so close that it was "inevitable" that an attorney, who dealt with a conflicted law firm throughout the entire period, was afforded the opportunity to benefit from the privileged information.  *Id.* at 236.  Here, in contrast, Quinn Emanuel is only representing itself and is not in possession of Petitioners' confidential information as a result of its alleged prior representation.  Thus, the conflicts at issue in *Fund of Funds* are not present here.

The Florida cases that Petitioners cite (*State Farm* and *Sears*) do not address scenarios involving co-counsel.  575 So. 2d 630, 633; 374 So. 2d 1051, 1053.  Petitioners' other cases (Dkt. 24 at 11-12) are all out-of-Circuit, which is particularly relevant given that courts apply the ethics rules of the state where they sit.  For example, California law (applicable to *j2 Communications*, *Pound*, and *In re California Canners*) presumes access to confidential information when attorneys work together and share information, but that is not the approach taken in Florida.  *See Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971) (finding that knowledge of one firm is not automatically imputed to another).  Similarly, potential access to confidential information

was disqualifying in *Leathermon v. Grandview Memorial Gardens*.  2010 WL 1381893, *10 (S.D. Ind. Mar. 31, 2010).  Moreover, the disqualification test in Louisiana expressly includes weighing whether the public will lose confidence in the judicial system, and the court in *Sumpter v. Hungerford* found that co-counsel's continued participation would "raise public suspicion for the duration of this litigation."  2013 WL 2181296, *5, 10 (E.D. La. May 20, 2013).

Petitioners' remaining cases are further distinguishable.  In *Burnett v. Olson* (cited by Petitioners as *Long v. Lally*), co-counsel possessed actual confidential information that would disadvantage the adversary and his involvement was minor, such that the equities weighed in favor of disqualification.  2005 WL 711602, *7 (E.D. La. Mar. 18, 2005).  In *Patriot Sciences v. Moore*, a litigation consultant working in close coordination with counsel was found to be the functional equivalent of a former client on the material issue related to prior representation.  178 F. App'x 18, 22 (Fed. Cir. Apr. 12, 2006).  Accordingly, Respondents' counsel should not be forced to wall themselves off from one another.  *See Baybrook Homes*, 991 F. Supp. 1440, 1448 (M.D. Fla. 1997) (two attorneys in separate firms not considered a single firm under R. Regul. Fla. Bar 4-1.10(b) when collaboration did not involve access to confidential information held by one attorney and conversations between the attorneys were limited).

### F.    Petitioners Are Not Entitled to Expedited Discovery

"The party requesting expedited discovery has the burden of proving both the existence of good cause and that the need for discovery outweighs any prejudice to the opposing party."  *In re Chiquita Brands Int'l*, 2015 WL 12601043, *3 (S.D. Fla. 2015).  Good cause has been found where there is a showing of irreparable harm that can be addressed by limited, expedited discovery; where failing to allow expedited discovery would substantially impact the progress of the case on the court's docket; or where there is a need to preserve evidence that may be destroyed before it can

be obtained by ordinary discovery.  *Id.* (citations omitted).  In assessing good cause, the court should also consider whether the subject matter of the request is narrowly tailored in scope.  *Id.*

Petitioners seek expedited discovery into: (1) Quinn Emanuel's engagement agreement with them, (2) whether Petitioners are a current or former client, (3) payments for legal services, (4) diligence relating to representing Petitioners, (5) identification of the individuals instructing the firm's representation of Petitioners, (6) receipt of information relied on to represent Petitioners, and (7) communications with other lawyers relating to Quinn Emanuel's representation of Petitioners.  Dkt. 24 at 3.

Given that a wall is unnecessary under these circumstances for the reasons above, Petitioners cannot show good cause for expedited discovery.  Moreover, Quinn Emanuel has answered some of Petitioners' questions in this opposition.  *Supra* Factual Background, Section D (stating that Quinn Emanuel filed the 2021 lawsuit at the direction of Petitioners' authorized representative in Mexico and based on the February 2021 Decision and publicly available court filings).  Petitioners' other requested information, such as Quinn Emanuel's engagement agreements with other parties, is irrelevant to their contemplated motion to disqualify.  Moreover, Petitioners' request for all communications between Quinn Emanuel and other lawyers relating to the firm's representation of Petitioners is overbroad and privileged.

Petitioners cannot establish good cause for expedited discovery beyond Quinn Emanuel's disclosures herein, whether based on irreparable harm, substantial impact to the case, or the need to preserve evidence.  *In re Chiquita Brands*, 2015 WL 12601043, *3.  Petitioners' cases granting expedited discovery (Dkt. 24 at 18) are readily distinguishable, as there was no threshold question of whether the movants were entitled to discovery at all.  Accordingly, Petitioners' request for expedited documents and deposition testimony should be denied.

## <u>CONCLUSION</u>

For the reasons above, the Court should deny Petitioners' motion for expedited discovery.

Dated: September 18, 2024

Respectfully submitted,

*/s/ John F. O'Sullivan*

John F. O'Sullivan
(Fla. Bar No. 143154)
Daniel L. Humphrey
(Fla. Bar No. 1024695)
Quinn Emanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Dr., Suite 1550
Miami, FL 33133
Telephone: (786) 850-3629
johnosullivan@quinnemanuel.com
danielhumphrey@quinnemanuel.com

David H. Needham (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
davidneedham@quinnemanuel.com

*Attorneys for Respondent Quinn Emanuel
Urquhart & Sullivan, LLP*