**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:24-cv-21926-ALTMAN/Lett**

IN RE:

**APPLICATION OF**
**ORO NEGRO PRIMUS PTE. LTD.,**
**ORO NEGRO LAURUS PTE. LTD.,**
**ORO NEGRO FORTIUS PTE. LTD.,**
**ORO NEGRO DECUS PTE. LTD.,**
**ORO NEGRO IMPETUS PTE. LTD., and**
**ORO NEGRO DRILLING PTE. LTD.**
**FOR AN ORDER TO TAKE DISCOVERY**
**PURSUANT TO 28 U.S.C. § 1782**

    *Petitioners*.

_____/


**RESPONDENTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DENY**
**PETITIONERS' APPLICATION FOR DISCOVERY UNDER 28 U.S.C. § 1782**

Petitioners' opposition makes it clear that they are not entitled to § 1782 discovery. While attaching a Tolstoyan amount of materials (nearly 2000 pages) to their application and opposition, Petitioners claim that the Court does not need to review the "minutiae" of Mexican law or the "convoluted" history of the Oro Negro cases to reach a decision. Respondents agree. Petitioners fail to adequately address three crucial statutory requirements under § 1782 that prevent discovery.

*First*, the Mexican criminal investigations are not a "proceeding" in a foreign "tribunal" under well-established law holding that criminal investigations in Mexico are not sufficient to invoke § 1782. Given this defect, Petitioners now advance several new reasons for why they need § 1782 discovery, based on additional investigatory orders and various appeals. The Court should not entertain Petitioners' moving target for the discovery. In any event, Petitioners' new reasons also fail because they still concern investigations and all of the appeals are concluded, and thus there is no "proceeding" (or reasonable contemplation of a proceeding) under § 1782.

*Second*, the discovery sought is not "for use" in the Mexican bankruptcy proceeding because Petitioners cannot bring a claim to introduce it through the intervenor (Mr. Villarruel) or the receiver (Mr. Badín). Petitioners ignore the undisputed fact that the transfers they seek § 1782 discovery for occurred *before* the final lookback period or were deemed proper, with these issues already decided by the Mexican bankruptcy and appellate courts. The Mexican courts also ruled that Petitioners' supposed representatives here do not act for Petitioners in Mexico.

*Third*, the discovery seeks information that would violate the individual Respondents' privilege against self-incrimination under the Fifth Amendment and Mexican law. Indeed, the individual Respondents fear prosecution in the United States, unlike in *United States v. Balsys*, 524 U.S. 666 (1998), and the Mexican prosecutor would receive the information.

Even if Petitioners' § 1782 request satisfied the statutory requirements, it does not meet the four discretionary factors.[1] For *factor 2*, Petitioners' latest declarations still do not show that the Mexican bankruptcy court or prosecutor would be receptive to the discovery. Indeed, Petitioners cannot bring a bankruptcy claim related to the transfers at issue given the lookback period and court rulings, and the discovery would violate the Mexican privilege against self-incrimination, so would be tainted and inadmissible in court. For *factor 3*, Petitioners' § 1782 request attempts to circumvent Mexican proof-gathering restrictions under the bankruptcy and criminal codes, which require that Mr. Villarruel or Mr. Badín obtain an order from the bankruptcy

---

[1] Respondents have separately briefed *Intel* factors 1 and 4. *See* Dkts. 69-70.

court before seeking third-party discovery, and prohibit prosecutors from obtaining documents or testimony protected by a Mexican or U.S. constitutional or legal right.  It also attempts to circumvent other Mexican or U.S. policies on *res judicata* and obtaining discovery related to other pending lawsuits.  Accordingly, the Court should deny Petitioners' application in full.

**I.      THE APPLICATION FAILS THE STATUTORY REQUIREMENTS OF § 1782**

        **A.      The Mexican Criminal Investigation Is Not a "Proceeding" in a Foreign "Tribunal"**

                1.      *Petitioners' Arguments for Discovery in Their Application Fail*

In their opposition, Petitioners attempt to obfuscate what is actually happening in the Mexican criminal investigation by flooding the Court with information regarding a multitude of inapplicable past and hypothetical matters.  In so doing, Petitioners still fail to identify any actual foreign tribunal where § 1782 discovery could be used.

Petitioners point to three criminal "proceedings" against the individual Respondents, *see* Opp. 22, but Petitioners cannot and do not dispute that the plain language of § 1782 requires the existence of a proceeding in a tribunal.  *See* Mot. 9.  As Respondents explained and courts consistently recognize, Mexican criminal proceedings at the investigation stage do not meet the "tribunal" requirement of § 1782.  *Id.* 10-11.  Petitioners attempt to distinguish those cases, *see* Opp. 27-28, but fail to confront their holdings and the simple logic that an investigation by prosecutors is not equivalent to a tribunal.

As to *In re Lazo*, 2024 WL 3569022 (S.D.N.Y. July 12, 2024), Petitioners note that the defect there was later cured, but that was *only* where the petitioner "show[ed] that he is *currently* a party to [32 separate] *amparo* actions pending before at least one Mexican court."  *Id.* at *5 (emphasis added).  Indeed, Petitioners ignore the footnote at the end of that analysis where the court explicitly states it "has significant doubts" about whether the petitioner made a sufficient showing as to his other planned uses of the requested discovery, and that "nothing in the revised application alters the court's prior finding that the *criminal complaint Lazo filed … is insufficient to show the requisite proceeding before a foreign tribunal*."  *Id.* at *5 n.1 (emphasis added).  As outlined below, neither Petitioners nor Respondents are part of any ongoing *amparo*.

Likewise, Petitioners fail to distinguish *CFE Int'l v. Denham Capital Mgmt.*, 2023 WL 2988745 (D. Mass. Mar. 6, 2023), by arguing that "the extensive history of litigation" here somehow guarantees an advancement of the Mexican criminal investigations.  Opp. 28.  Indeed, in *CFE International*'s sister case, the court held that the petitioner's "description of the Mexican

investigation's procedural status appears to suggest that no criminal action may ever commence" where the prosecutor had requested a hearing to present an *imputación* (indictment) against the target and the hearing had not yet occurred. *CFE Int'l v. Antaeus Grp.*, 2022 WL 17731821, *5 (W.D. Tex. Aug. 26, 2022). The investigations in this case here are even further behind: an *imputación* has not, and may never be, requested by the prosecutor (Dkt. 75, Castro Decl. I ¶101), regardless of the prior litigation history between the parties.

Petitioners offer no authority of their own other than one case dealing with a Honduran proceeding. *See In re Inversiones y Gasolinera Petroleos Valenzuela*, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011). And in *Inversiones*, the attorney general's office found that "there are circumstances, documents and other evidence establishing the existence of intentional misconduct, which, therefore, might constitute a criminal offense," and thus there was a "reasonable contemplation" of a criminal proceeding before a tribunal. *Id.* at *9. Here, in contrast, there was no finding by anyone of the likelihood of a criminal offense and thus nothing to suggest reasonable contemplation of such a proceeding. *See* Mot. 11-13.

Applying the well-established law that a criminal investigation does not suffice, and that there must be a proceeding before a tribunal (or reasonable contemplation of such a proceeding), the undisputed facts establish that Petitioners fail to satisfy § 1782.

        2.    *Petitioners' New Arguments Also Fail*

Petitioners attempt to side-step the issue by pivoting to a new argument that "consistent with the initial application, all evidence gathered by the Petitioners in this § 1782 application will be used *to identify additional targets of criminal seizure orders*, including additional companies, bank accounts, assets, and individuals," so that "based on the new information obtained … Petitioners can *ask the Prosecutor* to seek a new seizure order." Opp. 24 (emphasis added); *see also* Dkt. 80 (Bribiesca Decl. II) ¶¶45-61. This is yet another admission that Petitioners seek discovery in support of prosecutorial investigations, which have been ongoing for years and still have not progressed to the level of a proceeding.[2] Similarly, the newly-discussed *orden de aseguramiento* (order of assurance) from a pre-trial judge in 2018, which froze the Mexican Trust's and Perforadora's bank accounts, is also (by its terms) based on the need of "the Public Prosecutor … *as part of the investigation*" and "authorize[d] the requested *investigative actions*." Dkt. 1-4 at

---

[2] Petitioners filed the criminal complaints against the individual Respondents, and the pre-trial judge issued the *ordenes de aprehensión*, from 2018 to 2020. A pre-trial judge also issued the *orden de aseguramiento* in 2018 and it continues to be extended annually as an investigation.

119.  The resolution further states that "the seizure is authorized for 300 calendar days … or earlier … *if criminal action is conducted on the investigation file*," *id.* at 120, further confirming that such orders are not in and of themselves a criminal proceeding.  *See also* Dkt. 80-3 (extension of the seizure order's "judicial-controlled investigation technique"); Castro Decl. II ¶¶18-24.[3]

Moreover, after failing make such arguments in their Application, Petitioners now rely heavily on Mr. Bribiesca's second declaration (and exhibit 1 thereto) to focus on challenges to the individual Respondents' orders of apprehension (*ordenes de aprehensión*).  Opp. 24; Dkt. 80 ¶¶7-18, 76-104; Dkt. 80-2 (chart of orders and appeals) at 2-18, 28.  Even if the Court were to entertain Petitioners' new reasons for the discovery, these investigatory orders from pre-trial judges and final rulings from years-old appeals do not change the fact that the relevant criminal matters remain in the investigation stage.  As Petitioners have conceded, the *ordenes de aprehensión* from a pre-trial judge (*juez de control*) were part of an investigation.  Dkt. 1-4 (Bribiesca Decl. I) ¶13 ("until these persons are arrested, the proceeding is suspended, but at the same time, the initial phase of the investigation (non-formal) continues"); *id.* ¶¶56, 61, 71, 80 ("the *investigation file* continues to be integrated, awaiting the opening of new lines of investigation, and the Public Prosecutor's Office is awaiting the execution of the active arrest warrants so that the *investigated parties* can face the judicial process in Mexico" (emphasis added).  Mr. Castro also explained that the *ordenes de aprehensión* are preventative measures meant to ensure the accused's presence at an initial hearing while investigations are underway.  Dkt. 75 ¶20.

In addition, for discovery to be "for use" in a "proceeding" in a foreign "tribunal" under § 1782, the proceeding cannot be *completed*.  "Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998) (affirming denial of § 1782 discovery where the intended use was to reopen a closed proceeding, and petitioners had conceded that was not likely to occur "absent newly discovered evidence").

---

[3] Petitioners argue that the Court should strike Respondents' declarations, which were filed just after midnight on the due date, minutes after their brief, to upload exhibits. Opp. 2 n.1. The Court should not consider this footnote argument. *E.g.*, *Marius v. Iberia Bank*, 2024 WL 3617478, *1 n.2 (S.D. Fla. Aug. 1, 2024).  It also would be enormously inequitable not to consider the declarations, which Petitioners still had 62 days to oppose. *E.g.*, *Kluge v. Smukler Servs.*, 2013 WL 6169214, *1 (S.D. Fla. Nov. 20, 2013) (denying motion to strike where "defendants missed the deadline by only 95 minutes in the deep of the night, when, presumably, counsel for plaintiff was not working, anyway, and [plaintiff] can point to no prejudice that she has suffered").

Without delving into the merits of whether each of the appeals Petitioners cite were indeed a "proceeding" in a foreign "tribunal" and not merely investigatory in nature because they may have considered evidence, Mr. Bribiesca's declaration clearly shows that those appeals are *over*, with the most recent ending in May 2025.  Dkt. 80-2 (chart of orders and appeals) at 7-28 For example, the appeals of the *ordenes de aprehensión* ended over two years ago in May 2023.  *Id.* at 7-18, 28; Castro Decl. II ¶14.  Despite the existence of past appeals of the orders, there is no ongoing criminal "tribunal" based on them.  That aligns with Interpol's decisions to not enforce the orders.  Dkt. 75 (Castro Decl. I) ¶¶96-98 & Exs. E-F; Castro Decl. II ¶¶16, 41.  Similarly, the newly-presented order of restitution and related appeals concluded over five years ago when the bondholders successfully obtained the rigs.  Dkt. 80-2 (chart of orders and appeals) at 2, 24; Castro Decl. II ¶¶52-55.  The single pending "other matter" (as characterized by Petitioners) involves Perforadora's (not the individual Respondents') challenge to the prosecutor's refusal to grant it access to the criminal investigation file.  Dkt. 80-2 at 25-26; Castro Decl. II ¶54-55.  Accordingly, none of these investigatory orders, concluded appeals, or irrelevant matters are a "proceeding" in a foreign "tribunal" that allow for the § 1782 discovery Petitioners seek from Respondents here.  Castro Decl. II ¶¶33-36.

*Finally*, lacking any other extant proceeding, Petitioners instead turn to hypothetical proceedings they claim are within reasonable contemplation.  However, they stretch this definition beyond its breaking point, as "the indicia of a successful § 1782 application involving the acquisition of discovery for the pre-filing of a proceeding are … the nature of the anticipated foreign proceeding, the court it will be filed in, when the proceeding will be filed, and the expected use of the materials sought in that proceeding."  *In re da Costa Pinto*, 2018 WL 6620905, *8 (S.D. Fla. Aug. 27, 2018).  Indeed, a proceeding must be "more than just a twinkle in counsel's eye" and "must be more than speculative … a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  *Id.* (quoting *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)).  Petitioners lay out four hypothetical scenarios:

- **Scenario 1**: The prosecutor decides to seek a new seizure order under Articles 229 and 467 of the Mexican criminal code.  For the reasons discussed above, this cannot qualify as an independent proceeding, given that a seizure order is an investigatory measure requested by the prosecutor.  Castro Decl. II ¶¶15-17.

- **Scenario 2**: <u>The prosecutor refuses to seek another seizure order, and Petitioners as offended parties challenge that decision before a pre-trial judge under Article 258 of the Mexican criminal code</u>.  This is a strictly hypothetical suit that cannot be within reasonable contemplation.  Even assuming such a challenge may exist in some unnamed court at an unknown future time, new evidence cannot be presented in such a challenge.  Castro Decl. II ¶35.  Instead, it first must be presented to the prosecutor, but (as discussed above) that use of evidence is not in a tribunal.

- **Scenario 3**: <u>Petitioners "bypass" the prosecutor and directly petition a pre-trial judge under Article 111 of the Mexican criminal code for a restitution of property</u>.  Petitioners did not raise this argument in their application, but even if this Court were to consider it, as Mr. Castro outlines in his declaration, such an order is only "provisional," or temporary and conditional, and thus merely part of an investigation.  Castro Decl. II ¶¶37-51.

- **Scenario 4**: <u>The individual Respondents are extradited back to Mexico and the investigations move toward an eventual proceeding</u>.  This is another purely speculative outcome over which Petitioners have no control and which in all likelihood will not occur.  Both Mr. Bribiesca and Mr. Castro have affirmed that any proceeding cannot occur without the presence of the individual Respondents.  Dkt. 1-4 ¶13 ("until these persons are arrested, the proceeding is suspended"); Dkt. 75 ¶¶101, 114-18 (adding that Interpol denied extradition and the individual Respondents do not intend to return to Mexico).  Petitioners cannot articulate "an objective basis on which to conclude that the event will occur." *In re BonSens.org*, 95 F.4th 75, 80-81 (2d Cir. 2024).  As such, this cannot reasonably qualify as "for use" in a "proceeding" in a foreign "tribunal." *See CFE Int'l LLC v. Antaeus Grp., LLC*, 2023 WL 7218045, *5 (W.D. Tex. Sept. 5, 2023) (for use requirement not met where "the Mexican investigation still has not meaningfully progressed, further suggesting that no criminal action may ever commence, and no dispositive ruling is within reasonable contemplation").

In sum, all of these possibilities are so far removed from the current state of the criminal investigation and unlikely to occur that they cannot be said to be in reasonable contemplation.

B.      <u>The Discovery Sought Is Not "For Use" in the Mexican Bankruptcy Proceeding</u>

The proposed discovery is not "for use" in the Mexican bankruptcy proceeding because

Petitioners cannot "inject the requested information into a foreign proceeding" and it would not "be employed with some advantage or serve some use in the proceeding." *In re Rendon*, 2020 WL 8771274, *10 (S.D. Fla. July 3, 2020), *R&R adopted*, 519 F. Supp. 3d 1151 (S.D. Fla. 2021). Indeed, all the "paths" Petitioners propose to introduce documents are dead ends. Petitioners argue they can introduce § 1782 discovery into the Mexican bankruptcy proceeding through the interventor (i.e., auditor) Antonio Villarruel. Opp. 6. His declaration indicates that he is a certified public accountant whose role is to monitor the receiver (i.e., Mr. Badín) to ensure assets are sold for the highest possible value during Oro Negro's ongoing liquidation. Dkt. 81 ¶¶3, 11, 29. He discusses a laundry list of 28 bankruptcy code provisions that may implicate an interventor, but only one (Article 113) is relevant to his ability to introduce documents in the proceeding. *Id.* ¶¶6-27 & Ex. 1 at 2-13.

While an interventor may be able to introduce documents in a bankruptcy case through an ancillary proceeding for fraud on creditors under Article 113 (*id.* ¶¶20-21, 34), Mr. Villarruel has not brought such a proceeding against Respondents for *seven years* since his appointment in 2018 (*id.* ¶¶31, 56). That is a particularly striking delay given Petitioners' criminal complaints against the individual Respondents in 2018 and 2019 based on the same money transfers. The real reason he has not done so is because there are no grounds to do so. The Bankruptcy Court set the ***final lookback period*** to begin on December 14, 2017,[4] which precludes claims related to the $19 million transfer in October 2017 (of which Quinn Emanuel received $8.5 million for the Chapter 15 proceeding) and the transfers in 2014 to 2015. Flores Decl. II ¶¶111-24 & Ex. F at 4.

Moreover, the Bankruptcy Court and Amparo Tribunal held that Perforadora had already paid value-added tax (VAT) of $8 million on Petitioners' behalf and ***properly used the VAT credit*** to pay its ordinary business expenses in 2018, which are final decisions. Dkt. 74 (Flores Decl. I) ¶¶68-69. Indeed, Perforadora used the VAT credit to maintain the rigs and pay its legal fees during the conciliation (i.e., reorganization) phase of the bankruptcy process from September 2018 to January 2019. Dkt. 1-3 at 442-92 (Perforadora's bank statements showing the VAT credit and payments thereafter). Petitioners cite a "subsequent" ruling (Opp. 16), but that ruling involves a separate dispute over whether Perforadora's "charterer's assets" (amounts Perforadora was entitled to under the Mexican Trust) of $13 million should cover its legal fees from January to June 2019,

---

[4] Neither Petitioners, Mr. Villarruel, Mr. Badín, Mr. Díaz, nor Nordic Trustee sought to extend the lookback period, and are barred from doing so now under any circumstance. Flores Decl. II ¶114.

as the company entered the liquidation phase.  Dkt. 79-5 at 2, 6.[5]  None of the discovery at issue here is relevant to that dispute.  Accordingly, an ancillary proceeding by Mr. Villarruel is not within reasonable contemplation.

Petitioners also argue they can introduce documents through Mr. Badín.  However, Mr. Badín, as the *receiver* for Petitioners' parent company Integradora and its subsidiary Perforadora, should obtain information related to those entities under proper Bankruptcy Court procedures, rather than waiving privilege and trying to get documents through Petitioners as a subsidiary or affiliate of those entities.  Flores Decl. II ¶84.  In addition, before Mr. Badín can receive documents from third parties and introduce them into the bankruptcy proceeding, he must get approval from the Bankruptcy Court.  *Id.* ¶¶78-80.  He has received no such approval here.  *Id.* ¶¶81-82.

Petitioners also have *no standing* to introduce § 1782 discovery into the Mexican bankruptcy proceeding.  The Mexican Bankruptcy Court held in two separate decisions, and the highest Mexican appellate court to review the issue (the Amparo Tribunal) held in two additional decisions (both of which were unanimous among the three appellate judges), that the bondholders' actions in Singapore to try take over Petitioners because Perforadora filed for bankruptcy were invalid and void under Mexican bankruptcy law and public policy.  Dkt. 74 (Flores Decl. I) ¶¶32, 36-38.  Those courts further held that Petitioners' alleged representatives here (the bondholders that appointed the directors who authorized the § 1782 application, Opp. 13) do not represent Petitioners in the Mexican bankruptcy proceeding.  Dkt. 74 (Flores Decl. I) ¶¶33-34, 37-38.  Petitioners therefore have no standing in the Southern District of Florida to seek § 1782 discovery on behalf of the bondholders to introduce in the Mexican bankruptcy proceeding.

That is a distinct issue from Petitioners' cited cases (Opp. 12), where courts declined to assess the viability of contemplated claims abroad, as opposed to considering a party's threshold ability to petition for § 1782 relief given controlling decisions in the specific proceeding where the party seeks to introduce the discovery.  It is also different than the scenario in *In re MTS Bank*, 2018 WL 3145806 (S.D. Fla. June 27, 2018).  There, the petitioner sought to be included in a foreign bankruptcy but the court stayed his creditor application for the "technical" reasons of not including postal receipts and corporate documents.  *Id.* at *5; *see also* Opp. 15-16.  Here, in contrast, the Mexican bankruptcy and appellate courts have formally held in four separate

---

[5] The bondholders' representative, Nordic Trustee, argued that the charterer's assets should not cover the legal fees because Perforadora had already received the VAT credit.  Dkt. 79-5 at 3.

decisions that Petitioners' alleged representatives do not represent Petitioners in the Mexican bankruptcy proceeding.

Petitioners cling to contrary rulings from a lower-level Mexican court (Opp. 15), but those rulings are **not effective** (and the Bankruptcy Court's decision remains effective) until the related appeals are decided. Dkt. 74 (Flores Decl. I) ¶¶48-51. Indeed, Petitioners do not try advance an argument that those contrary rulings are controlling. Opp. 15 ("these *amparo* decisions *would* restore the status quo" (emphasis added)); Dkt. 1-3 (Díaz Decl. I) ¶42 ("the new decision was also challenged and remains *sub judice*"). In any event, it is very likely that the Amparo Tribunal will rule against Petitioners' alleged representatives for a third time and reverse the lower court's rulings, which are based on the absurd holding that Mexico's own bankruptcy code is unconstitutional. Dkt. 74 (Flores Decl. I) ¶¶40, 52.

Knowing this, Petitioners' alleged representatives (the bondholders and Nordic Trustee) have intentionally delayed a resolution of this threshold issue for over **three years** by filing **seven frivolous petitions** to recuse the assigned appellate judges on supposed bias grounds. *Id.* ¶¶42-47; Flores Decl. II ¶¶49-68. The appellate courts dismissed all seven petitions as meritless, found that they were meant to harass and intimidate the judges, and **sanctioned counsel thousands of dollars**, which is extremely rare in Mexico. *Id.* Switching tactics, the bondholders' latest stunt is an international arbitration against Mexico under the Free Trade Agreement between Mexico and the European Union, which will delay resolution of this threshold issue at least another year. Flores Decl. II ¶¶69-72. Petitioners have no serious explanation for these delay tactics.

Petitioners also cling to a Singapore ruling that they argue applies "worldwide" (Opp. 13) despite the four controlling decisions in Mexico (the relevant country) holding the exact opposite. Indeed, Petitioners sat on the Singapore ruling for **15 months** before trying to get it recognized in Mexico. Dkt. 79 (Díaz Decl. III) ¶69. It is very likely that their recognition effort will fail because the Singapore ruling conflicts with numerous controlling Mexican decisions and violates Mexican public policy. Flores Decl. II ¶¶33-48. In any event, even if it is somehow recognized, it will have no effect on the controlling decisions. Mr. Díaz therefore will not have a means to introduce discovery. This Court should therefore hold that Petitioners have no standing in the Southern District of Florida to seek § 1782 discovery, or wait until the Amparo Tribunal decides the issue to avoid a conflicting ruling.

9

C.      The Discovery Would Violate Respondents' Privilege Against Self-Incrimination

The Fifth Amendment privilege against self-incrimination bars Petitioners' discovery requests.  Mot. 20-23.  Petitioners argue that the individual Respondents cannot invoke the Fifth Amendment privilege based on a fear of foreign prosecution under *United States v. Balsys*, 524 U.S. 666 (1998).  Opp. 29.  However, as indicated in their motion (at 21), the individual Respondents face a real and substantial fear of prosecution where they reside in the United States based on the discovery, including through U.S.-Mexico law enforcement cooperation.  In addition, Petitioners can use the discovery to report the individual Respondents to U.S. federal or state authorities.   Indeed, Petitioners allege that the individual Respondents engaged in "money laundering" by "conceal[ing] the destination of [$8 million in stolen] funds by routing them outside of Mexico, through a United States bank, and then having the funds return to Mexico to other individuals and entities."  App. 16.  The United States has jurisdiction over wire transfers through U.S. banks, and money laundering is a U.S. federal crime under 18 U.S.C. § 1956.  Petitioners seek documents and testimony related to those transfers.[6]

Petitioners also seek "all documents relating to [the individual Respondents'] accounts at U.S. … financial institutions including … wire transfer confirmations."  *See, e.g.*, *id.* at 28 (¶29).  Petitioners even request all of the individual Respondents' U.S. federal and state tax returns over a 12-year period.  *See, e.g.*, *id.* at 22 (¶16), 29 (¶34).  Given Petitioners' allegations and discovery targeting U.S. crimes such as money laundering, theft, fraud, and tax evasion, the individual Respondents rightly fear that the discovery could be used against them in a criminal prosecution where they reside in the United States. *See Hoffman v. United States*, 341 U.S. 479 (1951) (holding that an accused can invoke the right when there is a real and substantial danger of prosecution); *SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) ("A witness may invoke this privilege even where practically there is only a slight possibility of prosecution without regard to the practical possibility that prosecution would result from incriminatory answers").  That is particularly likely because Petitioners have not had success with the criminal investigations into the individual Respondents in Mexico because they do not reside there, and the individual Respondents have no immunity in the United States for such crimes.  Therefore, *Balsys* is inapposite, and the Fifth Amendment privilege protects the individual Respondents from having to produce such discovery.

---

[6] *E.g.*, Dkt. 1-8 at 26 (¶13) ("Documents … relating to the receipt and disposition through Perforadora of … $8 million … to pay value added tax in 2018 … includ[ing] documents … showing the purpose of each transfer sent from US Bank to each individual or entity"), 33 (¶34).

Petitioners argue that Respondent Axis Capital and the estate of Carlos Williamson cannot invoke the Fifth Amendment privilege.  Opp. 29-30.  However, both Axis and the estate have submitted declarations herewith that they have no Oro Negro documents or testimony relevant to Petitioners' subpoenas.  Petitioners argue that corporate records do not receive Fifth Amendment protection.  But the individual Respondents are being subpoenaed as individuals, not corporate custodians.

Petitioners also argue that Quinn Emanuel cannot invoke the Fifth Amendment privilege on behalf of the individual Respondents to refuse to produce documents it obtained during its representation of Integradora, Perforadora, and Petitioners.  Opp. 30-31.  However, Quinn Emanuel also represented the individual Respondents at that time, as Petitioners acknowledge. App. 21-22.  When an attorney receives records from a client to obtain legal advice, the attorney-client privilege mandates that the attorney cannot be compelled to produce the records if the client would have enjoyed Fifth Amendment protection against the same compulsion.  *Fisher v. United States*, 425 U.S. 391, 405 (1976).  Accordingly, Quinn Emanuel can withhold documents that may incriminate the individual Respondents.

The Mexican privilege against self-incrimination bars Petitioners' discovery requests. Mot. 23-26.  Like the Fifth Amendment, this privilege applies to both criminal matters and civil matters that may implicate an individual in a crime.  Castro Decl. II ¶¶57-75.  Also like the Fifth Amendment, and in contrast to Petitioners' arguments (Opp. 31), the privilege protects an individual outside of settings where they are being actively questioned by a prosecutor.  *Id.* ¶¶67-68.  Accordingly, the privilege bars Petitioners' discovery requests.  Indeed, courts have denied § 1782 requests based on respondents' invocation of their foreign right against self-incrimination. *See In re Petition of the Republic of Turkey for an Order Directing Discovery from Hamit Cicek Pursuant to 28 U.S.C. § 1782*, 2020 WL 4035499, *7-9 (D.N.J. July 17, 2020) (filling any gaps in foreign law by applying the Fifth Amendment).

The Mexican privilege against self-incrimination prevents the use of the discovery not only in the criminal investigation, but also in the bankruptcy proceeding because individuals must report suspected criminal conduct under Mexican law.  Dkt. 75 (Castro Decl. I. ) ¶¶119, 122; Castro Decl. II ¶¶76-80.  The duty is heightened for public servants, like the bankruptcy judge, clerks, and trustee, who have a duty to immediately report a crime.  Dkt. 75 (Castro Decl. I) ¶120; Castro Decl. II ¶76.  Petitioners attempt to dismiss this duty by arguing that it is a "procedural law" and

11

"the crimes have already been reported." Opp. 31-32. However, public officials face "sanctions" if they do not report a crime "immediately," and they are required to report "all available information" regarding the crime, not just that it occurred. Dkt. 75 (Castro Decl. I. ) ¶120.

## II.     THE DISCRETIONARY FACTORS WEIGH AGAINST THE APPLICATION[7]

### A.     <u>The Bankruptcy Court and Prosecutor Would Not Be Receptive to the Discovery</u>

Petitioners argue when there is no "authoritative proof" that a foreign tribunal would reject § 1782 discovery, a court should permit it. Opp. 36 (citing an S.D.N.Y. case). However, as Respondents stated in their motion (at 26), this Circuit does not apply a "rigid burden-shirting framework" on one side or the other for *Intel* factor 2. *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019) ("Some courts … hold that, in order to justify denial, the responding/objecting party must provide affirmative proof that the foreign tribunal would not accept the evidence … We decline to adopt this approach").

As stated above (at 7), in the bankruptcy proceeding, Petitioners cannot bring an ancillary proceeding related to the transfers at issue since they precede the lookback period or were deemed proper by the Bankruptcy Court. Even if Petitioners could bring an ancillary claim, they fail to explain why they waited nearly ***seven years*** since Perforadora filed for bankruptcy in September 2017 to seek § 1782 discovery. Petitioners claim they have tried to get documents in Mexico and the U.S. outside the § 1782 process. Opp. 37. The intervenor (not Petitioners) requested documents from the prior receiver, but the request was much more limited in scope than the § 1782 request (bank account statements for Perforadora from 2017 to 2019) and only came about in summer 2024 (still seven years after Perforadora filed for bankruptcy). Dkt. 81 (Villarruel Decl.) ¶35. While the receiver (not Petitioners) has made some efforts to collect documents from Quinn Emanuel, those did not start until October 2021 (still four years after Perforadora filed for bankruptcy) and have been without the authority of the Bankruptcy Court. Dkt. 78 (Badín Decl.) ¶25; Flores Decl. II ¶¶81-82.

Petitioners try justify their delay by saying that they needed the Singapore ruling in January 2024 before they could act. Opp. 37. But Petitioners took several actions before receiving the Singapore ruling. They filed a breach of contract lawsuit against Perforadora in the Southern District of New York in 2018. *Oro Negro Decus v. Perforadora*, 18-cv-2301 (S.D.N.Y. 2018). They filed four criminal complaints against the individual Respondents in Mexico from 2018 to

---

[7] Respondents have separately briefed *Intel* factors 1 and 4. *See* Dkts. 69-70.

2020.  Dkt. 1-4 (Bribiesca Decl. I) ¶¶46, 57, 62, 72.  And they filed several briefs in the Chapter 15 proceeding.  *E.g.*, Objection of Singapore Rig Owners to Enforcement of *Concurso* Court's Order, *In re Perforadora Oro Negro*, 18-bk-11094 (S.D.N.Y. Bankr. 2018), Dkt. 139.  Petitioners' years-long delay in bringing their § 1782 application while filing lawsuits, criminal complaints, and briefs in various matters weighs against discovery.  *Aventis Pharma v. Wyeth*, 2009 WL 3754191, *1 (S.D.N.Y. Nov. 9, 2009) (denying § 1782 application where applicant sought "discovery it could have requested in this same Court starting over five years ago"); Mot. 27 (collecting further cases).

The Bankruptcy Court therefore would not be receptive to discovery related to the transfers at issue.  Even if it were, under proper Bankruptcy Court procedures, Mr. Badín, as the receiver for Petitioners' parent company Integradora and its subsidiary Perforadora, should obtain information related to those entities, rather than waiving privilege and trying to get documents through Petitioners as a subsidiary or affiliate of those entities.  Flores Decl. II ¶84.  In addition, before Mr. Badín or Mr. Villarruel can receive documents from third parties and introduce them into the bankruptcy proceeding, they must get approval from the Bankruptcy Court.  *Id.* ¶¶75-82.  For all these reasons, the Bankruptcy Court would not be receptive to the proposed discovery.

Regarding the criminal investigation, the requested discovery would violate the Mexican privilege against self-incrimination, so any evidence would be tainted in the hands of the prosecutor and inadmissible in court.  Dkt. 75 (Castro Decl. I) ¶¶23-30, 109; Castro Decl. II ¶¶57-59, 67-68, 75.  It thus would be preferable for the prosecutor to obtain any documents and testimony he can through the mutual legal assistance treaty between the United States and Mexico.  The investigation is also suspended since the individual Respondents reside in the United States and have no intention of returning to Mexico due to mandatory pretrial detention.  Mot. 26.  As a practical matter, without the individual Respondents' presence, no criminal action may proceed against them.  *Id.*

With respect to the nature and character of the criminal investigations, Petitioners filed the criminal complaints with knowingly false allegations to help the bondholders seize Oro Negro's rigs.  Mot. 27; Dkt. 75 (Castro Decl. I) ¶¶40-41.  Petitioners' Mexican counsel, and the prosecutor who sought the *ordenes de aprehensión*, are widely known to be corrupt.  Dkt. 75 (Castro Decl. I) ¶39 & nn.11-13.  Petitioners cite a motion for sanctions in another case where counsel made similar allegations, but that court already rejected identical arguments raised earlier in the case.  Opp. to

Sanctions Mot., *Servicios Funerarios v. Advent Int'l*, 23-cv-10684 (D. Mass. 2023), Dkt. 355 at 10. Petitioners also have no basis for their supposition that the book by a Mexican investigative journalist alleging corruption of the prosecutor and Petitioners' Mexican criminal counsel[8] was "manufactured" by the brother of Respondent Gil's lawyer (Opp. 37; Dkt. 80 ¶169) simply because he is the author's attorney. The tenuous basis for the criminal investigations further weighs against discovery here.

   B. <u>The Request Tries to Circumvent Mexican Proof-Gathering Restrictions or Policies</u>

   Foreign proof-gathering restrictions, as courts have recognized, are "akin to privileges that prohibit the acquisition or use of certain materials." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015); *In re Bernal*, 2018 WL 6620085, *8 (S.D. Fla. Dec. 18, 2018) (same). Courts weigh the third Intel factor against discovery where the applicant "attempt[s] to obtain discovery that [it] was already denied by the foreign tribunal," *In re Kurbatova*, 2019 WL 2180704, *4 (S.D. Fla. May 20, 2019), or seeks to "jump the gun" on discovery it could obtain before the foreign tribunal, *In re Rendon*, 2020 WL 8771274, *15.

   Petitioners' § 1782 request attempts to circumvent Mexican proof-gathering restrictions under the bankruptcy code. The code requires that Mr. Villarruel or Mr. Badín obtain an order from the bankruptcy court before seeking third-party discovery. Flores Decl. II ¶¶76, 79. Petitioners thus appear to be "jump[ing] the gun" on discovery in the underlying foreign suit. *In re Rendon*, 2020 WL 8771274, *15. The request also attempts to circumvent Mexican proof-gathering restrictions under the criminal code, which prohibit prosecutors from obtaining documents or testimony protected by a Mexican or U.S. constitutional or legal right, such as the privilege against self-incrimination. Dkt. 75 (Castro Decl. I) ¶¶23-24.

   "The United States has a well-established policy in favor of the finality of judgments, a policy which both preserves judicial resources and protects parties from abusive litigation." *In re Grynberg*, 223 F. Supp. 3d 197, 202 (S.D.N.Y. 2017). As noted above (at 7), the Bankruptcy Court ruled that Perforadora properly spent the VAT credit, and recognized the $19 million loan from ON Drilling to Perforadora. The Bankruptcy Court further held that Mr. Badín is not currently entitled to the discovery Petitioners seek. Flores Decl. II ¶81. Petitioners' § 1782 request attempts to circumvent these court rulings. *See Grynberg*, 223 F. Supp. 3d at 202 ("[Petitioner's]

---

[8] *See* Translation of <u>Treason in the Palace</u> by Hernán Gómez, *Servicios Funerarios*, 23-cv-10684 (D. Mass. 2023), Dkt. 354-12 at 185, 221-22.

application appears to be yet another attempt to circumvent this policy and obtain discovery on the same set of claims that federal courts have repeatedly dismissed on the merits"); *In re Kurbatova*, 2019 WL 2180704, *4 (S.D. Fla. May 20, 2019) (denying § 1782 discovery where the applicant "attempt[s] to obtain discovery that [it] was already denied by the foreign tribunal").

The request also attempts to circumvent U.S. policies on obtaining discovery related to other pending lawsuits. There is a pending action in New York state court against the bondholders for breaching contractual release agreements by filing two of the criminal complaints at issue here—the September 2018 and December 2020 complaints based on transfers in 2014 and 2015. Plaintiffs have filed an amended complaint and the case has not yet reached discovery. The discovery in this § 1782 proceeding would provide defendants (the bondholders behind Petitioners' § 1782 application) in that action with pre-discovery. Petitioners should not be allowed to circumvent the discovery schedule in that case.

Finally, the request attempts to circumvent U.S. and Mexican laws on attorney-client privilege and professional secrecy. Petitioners claim that the privilege belongs to Mr. Badín and he waived it. However, Quinn Emanuel also represented the individual Respondents at that time, as Petitioners acknowledge. App. 21-22. Indeed, Quinn Emanuel represented Oro Negro's former shareholders in a NAFTA arbitration against Mexico. App. 23-24. Petitioners' request for a privilege log (Opp. 38) has been rejected by courts where the respondent invoked the right against self-incrimination because "requiring respondent to produce a privilege log describing the nature of the documents withheld may eviscerate the purpose of the privilege in the first instance." *See In re Petition of the Republic of Turkey*, 2020 WL 4035499, *9. In any event, it is premature before the Court rules on whether Petitioners are entitled to any § 1782 discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' § 1782 application.

Dated: December 24, 2025

Respectfully submitted,

*/s/ John F. O'Sullivan*

John F. O'Sullivan (Fla. Bar No. 143154)
Daniel L. Humphrey (Fla. Bar No. 1024695)
Quinn Emanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Dr., Suite 1550
Miami, FL 33133
Telephone:  (786) 850-3629
johnosullivan@quinnemanuel.com
danielhumphrey@quinnemanuel.com

David H. Needham (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
davidneedham@quinnemanuel.com

*Attorneys for Respondent Quinn Emanuel Urquhart & Sullivan, LLP*

*/s/ Barbara R. Llanes*

ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
BARBARA R. LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Counsel for Respondents Gonzalo Gil White, Jose Antonio Canedo White, Miguel Angel Villegas Vargas, and Axis Capital Management, Inc.*